| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | R2 Marketing & Consulting, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 8:25-bk-10631-SC |

Official Form 410

# Proof of Claim
04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
The Huntington National Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Huntington National Bank c/o Eudora Arthur
Name
555 Fayetteville Street, Suite 1100
Number    Street
Raleigh            NC        27601
City              State      ZIP Code

Contact phone (919) 755-2178
Contact email dorie.arthur@wbd-us.com

Where should payments to the creditor be sent? (if different)

Huntington National Bank c/o Bryan Punzel
Name
11100 Wayzata Blvd., Suite 700
Number    Street
Minnetonka         MN        55305
City              State      ZIP Code

Contact phone (952) 656-7562
Contact email Bryan.H.Punzel@financediv.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
__ __ __ __ - __ __ __ __ - __ __ __ __ - __ __ __ __

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                              Proof of Claim                              page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __5__ __7__ __6__ __1__ |
|---|---|
| 7. How much is the claim? | $_____441,634.40_____. **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Equipment Finance Agreement |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☑ Motor vehicle<br>☐ Other. Describe: Three (3) 2022 Ram Promaster Braun Ability Vans<br><br>**Basis for perfection:** Certificates of Titles<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 299,940.00<br>**Amount of the claim that is secured:** $ 299,940.00<br>**Amount of the claim that is unsecured:** $ 141,694.40 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ 0.00<br><br>**Annual Interest Rate** (when case was filed) 18.00 %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03/26/2025
    MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Eudora F. S. Arthur
            First name    Middle name    Last name

Title       Attorney

Company     Womble Bond Dickinson (US) LLP
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     555 Fayetteville Street, Suite 1100
            Number    Street
            Raleigh                              NC          27601
            City                                 State       ZIP Code

Contact phone  (919) 755-2178              Email  dorie.arthur@wbd-us.com

# ATTACHMENT TO PROOF OF CLAIM

**DEBTOR:** R2 Marketing and Consulting, LLC
**CASE NO.:** 8:25-bk-10631-SC
  Central District of California
**CLAIMANT:** The Huntington National Bank
**ACCOUNT NO:** xx5761-500

This proof of claim is submitted by The Huntington National Bank ("HNB") and sets forth HNB's claim against R2 Marketing and Consulting, LLC (the "Debtor").

## BASIS FOR CLAIM

The Debtor is indebted to HNB based on an equipment finance agreement (the "Agreement"), dated February 28, 2024, between R2 Marketing and Consulting, LLC and HNB, pursuant to which HNB agreed to finance the purchase of certain equipment. A true and accurate copy of the Agreement is attached hereto as **Exhibit A**. In connection with the Agreement, the Debtor granted HNB a security interest in three (3) 2022 Ram Promaster Braun Ability Vans with the following vehicle identification numbers: 3C6MRVUG4NE138805; 3C6MRVUG4NE138806; 3C6MRVUG6PE527643 (the "Vehicles"). HNB properly perfected its security interest noting its security interest on the Certificates of Title (the "Titles"). True and accurate copies of the Titles are attached here to **Exhibit B**.

## Amount of Claim

As of the Petition Date, the following amounts are owed to HNB under the Agreement:

| | |
|---|---:|
| Remaining Payments | $362,796.00 |
| Past Due Payments | $59,328.00 |
| Late Charges | $2,254.20 |
| Unamortized Financed Amount: | $17,256.20 |
| Total: | $441,634.40 |

## Right to Supplement or Amend Proof of Claim

This proof of claim supplants all of the Debtor's various records of claims by or amounts owed to HNB, including but not limited to the amount, if any, set forth in the Debtor's Schedule of Liabilities. Although HNB has made every effort to identify all claims that it may have against the Debtor, HNB reserves the right to amend, modify, or supplement this claim with respect to any additional liability or indebtedness of the Debtor, including but not limited to any further liquidated amounts. HNB does not intend to waive any claim that it may possess against the Debtor.

HNB has attached documents supporting this proof of claim and reserves the right to assert and attach additional documents evidencing its claim.

WBD (US) 4859-9916-6189v1

## Reservation of Rights

This proof of claim is filed with full reservation of rights, including the right to assert additional, supplementary, and/or amended proofs of claim based on events, information, and/or documents obtained from the Debtor or others through discovery or otherwise.

## No Setoff

To the best of HNB's knowledge, the claim is not subject to any valid setoff, recoupment, or counterclaim by the Debtor not mentioned herein; provided, however, that any setoff or recoupment rights that HNB possesses are expressly reserved and are not waived. Furthermore, all procedural and substantive defenses and rights with respect to any claim that may be asserted against HNB by the Debtor or any other party in interest in these bankruptcy cases or otherwise, or by any other person or entity whatsoever, are specifically preserved.

To the extent that HNB is secured by collateral, the value of which exceeds the amount of the claim, HNB claims interest, fees and costs (including attorney fees) allowed under its loan and security documents, pursuant to 11 U.S.C. § 506(b).

Any questions should be directed to Eudora F. S. Arthur or James S. Livermon, III, counsel for HNB.

# EXHIBIT A

EXHIBIT A

DocuSign Envelope ID: 0C16D1C1-ADCF-4DE0--E157A5B9EE89



**Equipment Finance Agreement (Vehicles)**

| "EFA": Equipment Finance Agreement No ▮▮▮▮-500 dated February 28, 2024 |||
|---|---|---|
| "Debtor": R2 Marketing & Consulting, LLC dba R2 Transportation, 19800 Macarthur Boulevard, Irvine, CA 92612 |||
| Business Type: LLC    State of Organization:    Fax:    E-mail: ▮▮▮@r2transportation.com |||
| "Creditor": The Huntington National Bank, 11100 Wayzata Blvd, Suite 700, Minnetonka, MN 55305 |||
| Fax:(800) 844-3577    E-mail: EFCustomerService@huntington.com |||

**SUMMARY OF TERM AND PAYMENTS:**

| Funding Date | Financed Amount | Monthly Payment Date | Number of Payments | Payment Amount | Document Fee | Advance Payment(s) |
|---|---|---|---|---|---|---|
|  | $345,124.93 |  | 60 | $7,404.00 | $300.00 | N/A |
|  |  |  |  |  | Security Deposit N/A | For Month(s): N/A |

**Total Amount Due Upon Delivery of this EFA: $300.00**

**DESCRIPTION AND LOCATION OF EQUIPMENT, PERSONAL PROPERTY, SERVICES AND/OR SOFTWARE:**

| Equipment Description: (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6NE141950 together with all attachments and accessories thereto | Location : 19800 Macarthur Boulevard, Irvine, CA 92612 |
|---|---|
| Mileage: | |

Your Equipment Finance Agreement provides for an option to choose your Monthly Payment Date which is the due date of the installment payments. Please choose one of the following (if a box is not selected the default Monthly Payment Date is the same day as the Funding Date):

☐ Monthly Payment Date is the same day as the Funding Date (the date we pay for the Equipment)
☒ Monthly Payment Date of the __28__ day of the month (See Important Notice Below)

**IMPORTANT NOTICE**; If you choose the second option above, you are obligated to pay interest in accordance with Section 2 of the Equipment Finance Agreement. For example, if the Funding Date is April 25 and you choose a Monthly Payment Date of the 5th of each month, you are obligated to pay per diem interest from April 25th to and including May 5th. If you choose the first option above, no additional interest is payable by you.

1. **Financing.** Debtor has requested that Creditor provide financing to enable Debtor to purchase the equipment, personal property, services and/or software described above and/or on any exhibit hereto (together with all accessories, attachments, parts, replacements, repairs and additions thereto and all proceeds of the foregoing, collectively the "Collateral"). Upon Creditor's acceptance and execution of this EFA, receipt of any amounts due upon signing of this EFA, receipt of other documentation required by Creditor and confirmation that the Collateral has been delivered to and accepted by Debtor, Creditor agrees to finance the purchase of the Collateral on the terms set forth in this EFA, including all of Debtor's obligations, covenants and agreements hereunder. Upon satisfaction of all conditions to funding, Creditor will pay the Financed Amount, as adjusted in accordance with Section 2 below, directly to the vendor(s) of the Collateral. Debtor authorizes Creditor to complete the Funding Date set forth above based on the date of actual funding.

2. **Payments.** In consideration of the financing provided by Creditor, Debtor agrees to pay to Creditor the Financed Amount, together with interest thereon, by paying to Creditor each of the following amounts when specified: (a) the amount of any Advance Payment(s) set forth above, due and payable on the date Debtor delivers this EFA, (b) consecutive monthly installments each equal to the Payment Amount set forth above for the Number of Payments set forth above less the number of Advance Payments made upon delivery of this EFA, with such consecutive monthly Payments beginning on the Monthly Payment Date specified above that is at least one month, but less than two months, after the Funding Date and then on each Monthly Payment Date thereafter, and (c) if the Monthly Payment Date specified above is a day of the month other than the Funding Date, the amount of interest accrued on the outstanding Financed Amount from the Funding Date to and including the date that is one month before the first Monthly Payment Date to occur after the Funding Date, at the per annum interest rate equal to the implicit interest rate for this EFA, as conclusively determined pursuant to the books and records of Creditor and calculated on the basis of a year of twelve 30-day months. For purposes of this EFA, "Monthly Payment Date" means the day of the applicable calendar month which is to be specified above (e.g. the 1st, 10th or 20th day of such month) or, if "Same as Funding Date" is specified above, the same day of the applicable calendar month as the day of the month that is the Funding Date. Debtor hereby authorizes Creditor to determine and fill in the Monthly Payment Date above after Debtor signs this EFA, and to notify Debtor of the Monthly Payment Date pursuant to Creditor's monthly invoices to Debtor. Debtor also agrees to pay to Creditor on the date Debtor delivers this EFA the amount of any Security Deposit and Document Fee set forth above. The Total Amount Due Upon Delivery of this EFA, as set forth above, reflects any Security Deposit, any Document Fee and the amount of any Advance Payments required hereunder. If, for any reason, the final amount that Creditor finances (all amounts Creditor pays in connection with the purchase, delivery and installation of the Collateral, including any trade-up and buy out amounts, and any other amounts financed, before application of any subsidies or like amounts) is more or less than the Financed Amount set forth above (which is based on an estimate), the Payment Amount will be adjusted to provide Creditor the same yield it would have obtained if the final amount financed had been equal to the Financed Amount set forth above. Debtor agrees that this EFA will be amended to reflect the adjusted Financed Amount and Payment Amount, and the adjusted Advance Payment(s) and Security Deposit, if applicable, by (i) written notice from Creditor to Debtor for adjustments of 10% or less; or (ii) signed Amendment. In the event that Creditor applies any portion of the Security Deposit to Obligations hereunder, Debtor shall pay to Creditor on demand the amount necessary to restore the full amount of the Security Deposit set forth above. If any amount payable hereunder is not paid within ten (10) days of its due date, Creditor may impose a late fee of up to 10% of the amount of the Payment and may, in addition, charge interest on the unpaid amount at eighteen percent (18%) per annum or, if less, the maximum rate permitted by applicable law. Creditor may apply payments hereunder and any Security Deposit to Debtor's Obligations hereunder in such order as it deems appropriate and will return any unapplied balance to Debtor, without interest, when all Obligations are satisfied. Debtor may from time to time make telephonic requests for, and hereby authorizes, Creditor or its agents to make and draw checks or drafts on a checking account to be designated by Debtor, payable to Creditor or order, to pay amounts due hereunder, plus Creditor's standard per item fee for making and drawing such check or draft. Creditor may rely on such request made by any person it believes has authority to make such request on behalf of Debtor. Debtor will pay Creditor a fee, in an amount determined by Creditor, not to exceed the maximum amount from time to time permitted by applicable law on demand for any check or automatic payment request returned due to insufficient funds or stop payment. This EFA shall be construed so that interest, the applicable interest rate, fees and other charges shall not exceed the maximum time price differential, rate, interest or amount allowed by applicable law, and any excess payment will be applied first to prepay principal hereunder and then as a refund to Debtor. If Debtor is an individual and the Financed Amount is $100,000 or more, this EFA is made under Minn. Stat. Sec. 334.01.

3. **Prepayment.** Debtor may not prepay this EFA or any of the Payments due hereunder.

4. **Security Interest.** Debtor grants Creditor a security interest in the Collateral (the "Security Interest") to secure all its obligations under this EFA and all other indebtedness and obligations of Debtor to Creditor, of whatever type or description, now or hereafter arising (together, the "Obligations"). Debtor authorizes Creditor to file such financing statements, title certificates and instruments as Creditor deems necessary to perfect and protect the Security Interest, without Debtor's signature, and, if such signature is needed, Debtor appoints Creditor as Debtor's attorney-in-fact to sign such items in Debtor's name. Debtor further authorizes Creditor to add to or change the Collateral description for the purpose of completing or correcting any serial numbers or other specific identification when known.

5. **Representations and Warranties.** Debtor represents and warrants that (a) Debtor is the type of entity set forth above and, if a legal entity, is duly organized, validly existing and in good standing under the laws of the state set forth above; (b) Debtor's exact legal name is as shown above, and: (i) if Debtor is an individual, such legal name is exactly as stated on Debtor's valid and unexpired state driver's license, or alternative state identification, issued by Debtor's primary state of residence ("Debtor State ID"); or (ii) if Debtor is a legal entity, such legal name is as stated on Debtor's applicable organizational documents; (c) its execution, delivery and performance of this EFA will not violate or create a default under any law, regulation, order, agreement or charter document binding on Debtor or its property; (d) this EFA has been duly authorized, executed, and delivered by Debtor; (e) Debtor's signatory of this EFA has the authority to bind Debtor to this

EFA; (f) Debtor, if an individual, is a citizen or lawful permanent resident of the United States; (g) the Collateral will be used solely for business purposes and not for agricultural, personal, family or household purposes; (h) the Collateral is and shall remain garaged at the Location set forth above which Location is owned or leased by Debtor; (i) at the time that Debtor requests Creditor to fund any portion of the Financed Amount, the Collateral shall have been delivered to the Location, shall be in good working order, Debtor shall have irrevocably accepted the Collateral and Debtor shall have good and marketable title to the Collateral, free and clear of any liens, claims, security interests or rights, other than the Security Interest; and (j) if Debtor is a legal entity, Debtor shall not allow any Blocked Person(s) to have an ownership interest in or control of Debtor. "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government, or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Creditor, to be a person with whom Creditor is not permitted to extend credit to or with regard to whom, a debtor-creditor relationship may result in penalties against Creditor or limitations on Creditor's ability to enforce a transaction.

6. **Covenants.** Debtor shall maintain the Collateral in good repair, condition and working order, ordinary wear and tear excepted, and shall furnish all needed parts, services, tires, gasoline, oil, grease and other items required to operate the Collateral and make all modifications and improvements required by law. The Collateral shall be operated in a safe and reasonable manner so as to prevent loss or damage to the Collateral or other property and injury to third parties. Debtor shall be responsible for the cost of delivery, installation, operation and maintenance of the Collateral. Debtor also is responsible for any loss, theft or destruction of, or damage to, the Collateral from any cause at all (collectively "Loss"), whether or not insured, and no Loss shall relieve Debtor of its Obligations hereunder. Debtor shall promptly notify Creditor in writing of any Loss to the Collateral and shall promptly repair or replace any Collateral after a Loss. Debtor shall comply with all applicable laws and regulations related to the Collateral and its use. Creditor is financing Debtor's purchase of the Collateral and, notwithstanding anything contained in this EFA to the contrary, Debtor and Creditor hereby agree and acknowledge that Debtor owns and holds legal title to the Collateral and, pursuant to Section 4 of this EFA, Debtor grants to Creditor the Security Interest in the Collateral. Debtor represents, warrants and agrees with and to Creditor that Debtor shall not sell, transfer, lease, grant a security interest in, or otherwise encumber the Collateral, and will at all times own and hold good legal title to the Collateral. Debtor shall not permit or suffer the Collateral to have imposed, and shall bear the cost of keeping the Collateral free from or removing, any lien, claim or encumbrance, except for the valid, perfected and enforceable first priority Security Interest in the Collateral and proceeds thereof, that Creditor will at all times hold, subject to no other security interest, mortgage, lien or encumbrance. Debtor shall permit Creditor to inspect the Collateral and Debtor's records related thereto at any time during business hours. Debtor shall pay when due all property, sales, use, excise and other taxes now or hereafter levied on or assessed against the Collateral or this transaction. Debtor shall not change its legal name or state of organization (if a legal entity) or legal name or principal residence (if an individual), and will not permit its Debtor State ID to expire, become invalid, or fail to be properly renewed, (if an individual) without, in each case, at least 30 days' prior written notice to Creditor of any such event. During this EFA, upon the request of Creditor, Debtor will provide copies of its Debtor State ID (if an individual) or applicable organizational documents (if a legal entity), and Debtor will execute and deliver to Creditor such other documents and provide such information, including information identifying the owners of Debtor and its affiliates and their respective ownership interests, as Creditor may reasonably deem necessary to comply with laws or regulations applicable to Debtor or Creditor, including laws and regulations requiring Creditor to obtain Debtor's certification of its beneficial owner(s) prior to making payment(s) to Debtor during or after the term of this EFA. Debtor will, at its sole expense: (a) before operating the Collateral, obtain all titles, registrations, registration plates, permits and licenses, including renewals, required for the lawful ownership, use and operation of the Collateral; (b) cause the Collateral to be titled in Debtor's name as owner, with Creditor's lien noted thereon; (c) furnish all certificates of title, lien registration notices and related documentation to Creditor; and (d) retain all certificates of registration (and if legally required, a copy of this EFA) in the Collateral. If within 10 days of Debtor's receipt of the Collateral Debtor has not properly titled the Collateral and provided Creditor with such evidence thereof as Creditor shall require, Creditor, in its discretion and in addition to all other remedies hereunder, may charge Debtor late titling fees in the amount of $25, payable at the end of such 10-day period, and $25 for and payable at the end of each 30-day period thereafter until Creditor has received all required evidence of proper titling for all Collateral hereunder.

7. **Insurance.** Debtor will obtain and maintain physical damage insurance issued by responsible insurance companies acceptable to Creditor, insuring the Collateral against damage and loss by theft, fire, collision, and such other risks as are usually carried by owners of similar properties or as may be requested by Creditor, in such amounts and payable in such manner as Creditor shall request (including naming Creditor and assigns as loss payee), and in any event in an amount no less than the greater of the outstanding Financed Amount or the full replacement value of the Collateral, and will furnish evidence of such insurance to Creditor upon request. Each such policy shall contain a clause requiring the insurer to give Creditor at least 30 days' prior written notice of any alteration in the terms of the policy or the cancellation thereof, and a clause specifying that no act or misrepresentation by Debtor shall invalidate such policy against Creditor. Creditor may apply the proceeds of such insurance toward payment of the Obligations, whether or not due, in such order as Creditor shall determine. If Debtor defaults, Debtor hereby appoints Creditor as Debtor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts for loss or damage under any such physical damage insurance policy. In the event Debtor fails to procure, maintain, pay for or provide Creditor with evidence of the insurance required hereby, Creditor shall have the right, but not be obligated, to obtain insurance covering Creditor's interest in the Collateral from an insurer of Creditor's choice. In that event, Debtor shall reimburse Creditor on demand for the cost thereof, including Creditor's fees for services in placing and maintaining such insurance, together with interest until paid at the interest rate then in effect under this EFA, and the amount thereof shall be secured by the Security Interest. At Creditor's discretion, Creditor may add all costs of acquiring and maintaining any insurance provided for herein, including without limitation all premiums therefor and all premium finance charges, documentation fees, tracking fees and all other fees and charges incurred by Creditor in connection therewith, plus fees for Creditor's services in placing and maintaining such insurance (all such premiums, costs, fees and charges are referred to herein, collectively, as the "Insurance Charge"), to the amounts due hereunder. Debtor will pay the Insurance Charge, together with interest thereon at the interest rate set forth in Section 2 above for amounts due but unpaid under this EFA and calculated on the basis of a year of twelve 30-day months, in equal installments allocated to the remaining Payments due hereunder. NOTHING IN THIS AGREEMENT WILL CREATE AN INSURANCE RELATIONSHIP OF ANY TYPE BETWEEN CREDITOR AND ANY OTHER PERSON.

8. **Indemnity.** Debtor shall indemnify and hold harmless Creditor, its successors and assigns, employees, officers, directors and agents from and against any and all claims or suits for any loss, damage or injury sustained by any person whatsoever by reason of the sale, financing, use, possession or disposition of the Collateral and, in this connection, Debtor shall pay the costs of all reasonable legal fees and all other reasonable expenses incurred by Creditor, its successors and assigns.

9. **Events of Default.** Each of the following is an "Event of Default" hereunder: (a) Debtor fails to pay any Payment or other amount due hereunder when due; (b) Debtor fails to comply with any other covenant or agreement hereunder and such failure continues for 10 days after notice by Creditor; (c) any representation or warranty by Debtor set forth in or made in connection with this EFA shall prove materially false or misleading (d) Debtor defaults under any other Obligation to Creditor; (e) Debtor or any guarantor of this EFA ("Guarantor"), or any partner of Debtor ("Partner") if Debtor is a partnership, ceases doing business as a going concern or makes an assignment for the benefit of creditors; (f) Debtor or any Guarantor or Partner admits in writing an inability to pay debts as they come due, voluntarily files or has filed against it involuntarily a petition under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver or liquidator is appointed for it or for all or a substantial part of its assets; (g) any individual Debtor, Guarantor or Partner dies; (h) any material indebtedness of Debtor or any Guarantor is accelerated or payment in full thereof is demanded; or (i) Debtor or any Guarantor shall divide or shall consolidate with, merge into or transfer all or substantially all its assets to another entity or individual.

10. **Remedies.** Upon the occurrence of an Event of Default, and at any time thereafter until the same is cured or waived to the written satisfaction of Creditor, Creditor may, in its sole discretion, exercise any one or more of the following rights and remedies: (a) declare immediately due and payable and recover from Debtor, as liquidated damages and not as a penalty, the entire outstanding unamortized Financed Amount, plus all accrued and unpaid interest and any late charges, fees and other unpaid amounts owing under this EFA, as conclusively determined pursuant to the books and records of Creditor, plus a fee equal to 5% of the unamortized Financed Amount, and the same shall thereupon be and become immediately due and payable in full without presentment, notice of dishonor, or protest, all of which Debtor hereby waives; (b) charge interest on the unpaid amount of liquidated damages due hereunder at eighteen percent (18%) per annum, but in no event greater than the maximum rate permitted under applicable law, and all interest accrued hereunder shall be due and payable on demand by Creditor; (c) exercise any and all of the rights and remedies available to a secured creditor under the Uniform Commercial Code as in effect in the State of Minnesota, and in connection therewith, Debtor agrees at its expense to assemble the Collateral and make it available to Creditor at a place or places to be designated by Creditor in the continental United States, and agrees that any notice of intended disposition of the Collateral required by law shall be deemed reasonable if such notice is given to Debtor in the manner provided in this EFA before the date of such disposition.; (d) recover from Debtor, and Debtor agrees to pay, all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under this EFA, including expenses of repossession, repair, storage, transportation, and disposition of the Collateral, costs of obtaining money damages and attorneys' fees and expenses for any purpose related to this EFA, including consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration; (e) exercise any and all other rights and remedies available to it by law or in equity or by any other agreement. Debtor grants to Creditor the right to enter into or on any premises where Collateral may be located for the purpose of repossessing Collateral upon the occurrence of an Event of Default hereunder. Creditor has no obligation to clean up or otherwise prepare or process the Collateral for sale or other disposition. Creditor may do any of the following in connection with a disposition of the Collateral without adversely affecting the commercial reasonableness thereof: (i) comply with any applicable state or federal law requirements; and (ii) refrain from giving and specifically disclaim any and all warranties, including without limitation warranties of title, quality, condition, merchantability, fitness or otherwise. If Creditor sells any of the Collateral on credit, or leases any of the Collateral, Debtor will be credited only with payments actually received by Creditor and applied to the indebtedness of such purchaser or lessee and in the event such purchaser or lessee defaults in its obligation to pay for the Collateral, Creditor may resell or otherwise dispose of the Collateral and Debtor shall be credited with the proceeds of that sale or other disposition. No remedy permitted hereunder shall be exclusive and all remedies shall be cumulative but only to the extent necessary to recover amounts for which Debtor is liable hereunder.

11. **Assignment.** Without Creditor's prior written consent, Debtor will not sell, assign, transfer (via merger, division, or otherwise), sublet, pledge or otherwise encumber or permit a lien arising through Debtor to exist against any interest in this EFA or the Collateral. Creditor may assign or grant a security interest in its interest in this EFA and in all or any part of the Collateral without notice to or consent of Debtor, and Debtor agrees not to assert against any assignee any claim or defense Debtor may have against Creditor. Any assignee of Creditor shall have all the rights, but none of the obligations, of Creditor under this EFA. Debtor agrees not to assert against any assignee of Creditor any claim or defense Debtor may have against Creditor or any other party.

12. **Non-Cancelable, Unconditional Obligation, Disclaimer.** This EFA cannot be canceled or terminated except as expressly provided herein. All representations, warranties and indemnities of Debtor made or agreed to in or in connection with this EFA shall survive expiration or termination of this EFA. Debtor agrees that its obligations to pay amounts due under this EFA are absolute and unconditional and shall not be subject to any defenses, setoffs, abatement, reduction or counterclaims of any kind regardless of whether or not (a) any vendor or manufacturer (including Creditor) has breached any of its warranties or other covenants relating to the Collateral, or (b) any maintenance, support or other services provided in connection with the Collateral has been breached, revoked or otherwise terminated for any reason whatsoever. Except for any express warranty provided by Creditor in its capacity as manufacturer or vendor of any of the Collateral (which warranties are separate and distinct from this EFA), CREDITOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE COLLATERAL INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR OF MERCHANTABILITY. ANY WARRANTY OR RELATED CLAIM THAT DEBTOR MAY ASSERT AGAINST CREDITOR IN ITS CAPACITY AS MANUFACTURER OR VENDOR OF ANY OF THE COLLATERAL SHALL BE SEPARATE AND DISTINCT FROM DEBTOR'S OBLIGATIONS UNDER THIS AGREEMENT, AND DEBTOR MAY NOT ASSERT ANY SUCH CLAIM AS A DEFENSE TO THE ENFORCEMENT OF CREDITOR'S RIGHTS UNDER THIS AGREEMENT.

13. **GOVERNING LAW; JURY TRIAL WAIVER.** THIS EFA AND ALL MATTERS ARISING FROM THIS EFA, INCLUDING ALL INTEREST AND FINANCE CHARGES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, FEDERAL LAW AND, TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, BY THE LAWS OF THE STATE OF MINNESOTA (EXCLUDING CONFLICTS LAWS. DEBTOR HEREBY CONSENTS TO JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS SITTING IN THE STATE OF MINNESOTA FOR RESOLUTION OF ALL DISPUTES OF ANY NATURE WHATSOEVER REGARDING THIS EFA OR ANY TRANSACTION CONTEMPLATED HEREBY. DEBTOR AGREES THAT, AT CREDITOR'S SOLE ELECTION AND DETERMINATION, CREDITOR MAY SELECT AN ALTERNATIVE FORUM, INCLUDING ARBITRATION OR MEDIATION, TO ADJUDICATE ANY DISPUTE ARISING OUT OF THIS EFA. THE PARTIES HERETO, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, INCLUDING ANY ACTION TO ENFORCE THIS AGREEMENT OR ANY RELATED AGREEMENTS.

14. **Miscellaneous.** This EFA constitutes the entire agreement between Debtor and Creditor with respect to the subject matter hereof, there is no other oral or written agreement or understanding. This EFA may not be amended or modified except by a writing signed by the parties. In Creditor's sole discretion, this EFA and certain documents related to or required in connection with this EFA may be electronically copied and/or delivered by telecopier or other electronic means of transmission ("e-copy") and the e-copy of any such document shall be deemed an original and admissible as such in any court or other proceeding. Without limiting the foregoing, Debtor will send Creditor, on request, any document bearing Debtor's original "wet ink" signature; provided that neither delivery nor failure to deliver the document bearing Debtor's original signature shall limit or modify the agreements set forth above. Debtor consents to the use of electronic signatures and represents and warrants that its electronic signature on this EFA and any related document shall be unconditionally valid and legally enforceable, and agrees not to contest, call into question or otherwise challenge the validity or enforceability of any electronic signature (or the authority of the electronic signer to sign) or raise any of the foregoing as a defense or counterclaim. There shall be only one original of this EFA, and it shall bear the original ink or electronic signature of Creditor and be marked "Original." To the extent this EFA is "chattel paper", a security or ownership interest may only be created herein by transfer of such originally signed counterpart; provided that, if the "Paper Out" process shall have occurred, then the "Paper Out" version bearing the legend "Original" shall constitute the sole chattel paper original. No delay or omission on the part of Creditor in exercising any right hereunder shall operate as a waiver of such right or of any other right under this EFA or under any other document or instrument executed or delivered in connection with this EFA. Debtor shall pay, on demand, Creditor's costs, fees and expenses incurred in connection with this EFA, any amendment, waiver, release or termination of this EFA or any related document, financing statement, title certificate or instrument, including but not limited to filing and recording fees. This EFA is binding on and inures to the benefit of the parties hereto, their permitted successors and assigns. Any written notice hereunder shall be deemed given when delivered personally, deposited with a nationally recognized overnight courier (with all fees pre-paid), delivered via facsimile or e-mail (with confirmation of transmission), or deposited in the United States mails, certified or registered mail, addressed to recipient at its address set forth above or such other address as may be substituted therefor by notice given pursuant to the terms hereof. Debtor hereby agrees that Creditor, including its vendors, service providers, partners, affiliates successors and assigns, may contact Debtor at any telephone number provided to Creditor, by placing voice telephone calls (including use of automatic telephone dialing systems or prerecorded voice messaging) or, in the case of wireless telephones or other wireless devices, by sending e-mail or automated (SMS) text messages. If more than one Debtor is named herein, the obligations of each shall be joint and several. Debtor authorizes Creditor to obtain such credit bureau reports and make such other credit inquiries as Creditor deems appropriate; and on written request, Creditor will identify any reporting agency used for such a report. Under federal law, Creditor must obtain, verify and record identifying information for each person opening an account. Creditor will ask for Debtor's name, address, date of birth and other identifying information. Creditor may also ask for Debtor's driver's license or other identifying documents.

**ACCEPTANCE CERTIFICATE:** Debtor hereby represents, warrants and certifies that (i) all of the Collateral has been delivered to Debtor and has been tested and inspected by Debtor or duly authorized representatives of Debtor, (ii) the Description of the Equipment, Personal Property, Services and/or Software comprising the Collateral as set forth on the first page of this EFA is complete and correct, (iii) the Collateral is exactly what Debtor ordered, is in good working order, is satisfactory in all respects and has been accepted by Debtor as of the Acceptance Date set forth below, and (iv) there has been no adverse change in the business or financial condition of Debtor or any guarantor of this EFA since the day the most recent financial statement of Debtor or any guarantor was submitted to Creditor. Debtor acknowledges that Creditor shall have the sole security interest in the Collateral.

IMPORTANT: DEBTOR SHOULD SIGN THIS EFA AND CERTIFICATE ONLY AFTER DEBTOR HAS RECEIVED AND IS COMPLETELY SATISFIED WITH THE COLLATERAL. BY SIGNING THIS EFA AND CERTIFICATE, DEBTOR (1) CONFIRMS TO CREDITOR THAT DEBTOR HAS IRREVOCABLY ACCEPTED THE COLLATERAL AND ALL OF THE TERMS AND CONDITIONS OF THIS EFA, (2) AUTHORIZES CREDITOR, SHOULD CREDITOR ACCEPT THIS EFA, TO PAY THE VENDOR(S) OF THE COLLATERAL ON DEBTOR'S BEHALF FOR THE PURCHASE OF THE COLLATERAL, (3) BECOMES ABSOLUTELY AND IRREVOCABLY OBLIGATED TO CREDITOR UNDER THIS EFA, AND (4) MAY NOT AT ANY TIME CANCEL OR TERMINATE THIS EFA OR DENY ANY STATEMENT MADE IN THIS CERTIFICATE, FOR ANY REASON WHATSOEVER.

**Acceptance Date:** 4/7/2024

Creditor: The Huntington National Bank         By: _____        Title: _____

Debtor: R2 Marketing & Consulting, LLC dba R2 Transportation         By: *Ryan Morris* (DocuSigned) EC6BCB8923147A...        Ryan Morris-Managing Member



# Additional Information
### Regarding Your Account and the Equipment

| | |
|---|---|
| The "Contract": Equipment Finance Agreement ▆▆▆5761-500 dated February 28, 2024 | |
| "Debtor" | |
| R2 Marketing & Consulting, LLC dba R2 Transportation, 19800 Macarthur Boulevard, Irvine, CA 92612 | |
| "Creditor" | |
| The Huntington National Bank, 11100 Wayzata Blvd, Suite 700, Minnetonka, MN 55305 | |

Equipment Description and Location:

| Description (including features) | Location |
|---|---|
| (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6NE141950 together with all attachments and accessories thereto | 19800 Macarthur Boulevard, Irvine, CA 92612 |

### ***PLEASE COMPLETE ALL SECTIONS BELOW ***

**Automated Clearing House ("ACH") Payments (check one box below):**

☐ Previous contracts are on ACH, please continue ACH on this Contract.

☐ Do NOT setup this Contract on ACH (this option may be selected unless ACH is required by Lessor)

☒ Please setup ACH on this Contract (this option to be selected if you would like ACH to apply to this Contract or if Lessor requires ACH.)
If Lessor requires ACH, the box will automatically be checked.

**Billing Address:** 19800 Macarthur Boulevard, Irvine, CA, 92612

☒ If billing address is different than above, list the correct billing address: _19800 MacArthur Blvd #360 Irvine Ca 92612_

☐ Billing Email Address: ▆▆▆@r2transportation.com If Different, Enter Correct Email Address: _____

☐ For this contract only   ☒ All contracts

**Equipment Location and Vehicle Titling Location:**

☒ The Equipment will be located at the Equipment Location(s) stated above or on Exhibit A; provided that if any Equipment is motor vehicles, such vehicles will be titled in the titling office for the Equipment Location stated above or on Exhibit A.

☐ The Equipment will be located at: _530 Technology Dr Suite 104, Irvine CA 92618_
(If multiple locations, attach a list indicating by item of Equipment the City, State and County where such item will be located)
and the vehicles will be titled in: _____ (State) _____ (City) _____ (County)
(If multiple vehicles titled in multiple states, attach a list indicating by VIN the State, City and County each vehicle will be titled)

**Tax Status (LEASE TRANSACTIONS ONLY):**

1. **Sales/Use Tax:** (check one)

   ☐ Subject to Sales and Use Tax. (Tax will be based on the state where the Equipment/Vehicle is located).

   ☐ Exempt from sales and use tax, for the following reason: _____

   ☐ Exemption Certificate Attached

   ☐ Valid Exemption Certificate already on file with Creditor.
   ***If you are exempt from sales tax, you MUST provide exemption certificate or you will automatically be charged sales tax***

2. **Heavy Vehicle Use Tax:** Some vehicles are liable for Heavy Vehicle Use Tax, filed on Federal Form 2290. Creditor does not file this return. If you determine the vehicle(s) is liable for this tax, you should include it on your own Form 2290. Failure to report a taxable vehicle may prevent you from obtaining licenses or tabs.

**Acknowledged by:**

| Debtor: | R2 Marketing & Consulting, LLC dba R2 Transportation | By: | *Ryan Morris* (DocuSigned by: 1EC6BCB8923147A...) | Ryan Morris-Managing Member |
|---|---|---|---|---|

Page 1

# Huntington | M MODEL1 COMMERCIAL VEHICLES

**Correction Notification**

| | |
|---|---|
| The "Contract": | Equipment Finance Agreement ▓▓▓▓▓761-500 dated **February 28, 2024** |
| "Debtor" | |
| R2 Marketing & Consulting, LLC dba R2 Transportation, 19800 Macarthur Boulevard, #360, Irvine, CA 92612 | |
| "Creditor" | |
| The Huntington National Bank, 11100 Wayzata Blvd, Suite 700, Minnetonka, MN 55305 | |

This letter will serve as Creditor's Notification to Debtor that the following correction(s) have been made to the above-referenced Contract, and all Schedules and Addenda thereto and all related documents (collectively the "Contract Documents"):

This letter will serve as Creditor's Notification to Debtor that the following correction(s) have been made to the above-referenced Contract, and all Schedules and Addenda thereto and all related documents (collectively the "Contract Documents"):

Due to a replacement, the vehicle identification number for one or more items of Collateral covered by the EFA was incorrectly stated on one or more Documents. Pursuant to the authority granted by Debtor to Creditor in the EFA, we hereby give you written notification that the description of the following Collateral has been corrected in the Documents to be and read as follows:

From:   Equipment Description: (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6NE141950 together with all attachments and accessories thereto

To:     Equipment Description: (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6PE527643 together with all attachments and accessories thereto

All Collateral described in the EFA that is not specifically identified herein remains unchanged and subject to the EFA, as described in the EFA.

Pursuant to the authority granted by Debtor to Creditor in the EFA, we hereby give you written notification that the following adjustments have been made to the EFA: Financed Amount: $345,124.93 has been changed to Financed Amount: $345,124.94.

If you have any objections to the foregoing corrections or are aware of any other nonmaterial errors that exist in your Contract Documents, please notify us immediately.

All capitalized terms used herein and not defined shall have the meanings set forth or referred to in the Contract or any Schedule thereto. Except for the correction(s) specifically set forth herein, all of the terms and conditions of the Contract Documents shall remain in full force and effect. To the extent that the provisions of this notification conflict with any provisions contained in any Contract Document, the provisions of this notification shall control.

Thank You,

*Kim Haydostian*

Kimberly Haydostian
The Huntington National Bank

# EXHIBIT B

dt

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Huntington National Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| Account Number | 003-0805761-500 | Financed Date | 4/8/2024 |
| Loan Number | | Perfected Date | 5/9/2024 |
| Branch | | Payoff Date | |
| Borrower 1 | R2 MKTG AND CONSULTING LLC | Dealer ID | |
| Borrower 2 | | Dealer | |
| Borrower Address | 530 TECHNOLOGY DRIVE 104 IRVINE, CA 92618 | Dealer Address | |

### Lienholder

| | |
|---|---|
| ELT Lien ID | FWS |
| Lienholder | HUNTINGTON NATL BK |
| Lienholder Address | 5555 CLEVELAND AVE COLUMBUS, OH 43231 |
| Lien Release Date | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| VIN | 3C6MRVUG4NE138805 | Issuance Date | 4/17/2024 |
| Title Number | | Received Date | 4/19/2024 |
| Title State | CA | ELT/Paper | ELECTRONIC |
| Year | 2022 | Odometer Reading | 49 03/28/2024 |
| Make | BRAU | Branding | |
| Model | | | |
| Owner 1 | R2 MKTG AND CONSULTING LLC | | |
| Owner 2 | | | |
| Owner Address | 530 TECHNOLOGY DRIVE 104 IRVINE, CA 92618 | | |

Printed: Wednesday, September 11, 2024 8:05:05 AM PST

dt-

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Huntington National Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| Account Number | 003-0805761-500 | Financed Date | 4/28/2024 |
| Loan Number | | Perfected Date | 5/9/2024 |
| Branch | | Payoff Date | |
| Borrower 1 | R2 MKTG AND CONSULTING LLC | Dealer ID | |
| Borrower 2 | | Dealer | |
| Borrower Address | 530 TECHNOLOGY DRIVE 104<br>IRVINE, CA 92618 | Dealer Address | |

### Lienholder

| | |
|---|---|
| ELT Lien ID | FWS |
| Lienholder | HUNTINGTON NATL BK |
| Lienholder Address | 5555 CLEVELAND AVE<br>COLUMBUS, OH 43231 |
| Lien Release Date | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| VIN | 3C6MRVUG6NE138806 | Issuance Date | 4/17/2024 |
| Title Number | | Received Date | 4/19/2024 |
| Title State | CA | ELT/Paper | ELECTRONIC |
| Year | 2022 | Odometer Reading | 330 03/28/2024 |
| Make | BRAU | Branding | |
| Model | | | |
| Owner 1 | R2 MKTG AND CONSULTING LLC | | |
| Owner 2 | | | |
| Owner Address | 530 TECHNOLOGY DRIVE 104<br>IRVINE, CA 92618 | | |

**Printed:** Wednesday, September 11, 2024 8:05:55 AM PST

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Huntington National Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| Account Number | 003-0805761-500 | Financed Date | 4/28/2024 |
| Loan Number | | Perfected Date | 5/9/2024 |
| Branch | | Payoff Date | |
| Borrower 1 | R2 MKTG AND CONSULTING LLC | Dealer ID | |
| Borrower 2 | | Dealer | |
| Borrower Address | 530 TECHNOLOGY DRIVE 104<br>IRVINE, CA 92618 | Dealer Address | |

### Lienholder

| | |
|---|---|
| ELT Lien ID | FWS |
| Lienholder | HUNTINGTON NATL BK |
| Lienholder Address | 5555 CLEVELAND AVE<br>COLUMBUS, OH 43231 |
| Lien Release Date | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| VIN | 3C6MRVUG6PE527643 | Issuance Date | 4/17/2024 |
| Title Number | | Received Date | 4/19/2024 |
| Title State | CA | ELT/Paper | ELECTRONIC |
| Year | 2023 | Odometer Reading | 54 03/28/2024 |
| Make | BRAU | Branding | |
| Model | | | |
| Owner 1 | R2 MKTG AND CONSULTING LLC | | |
| Owner 2 | | | |
| Owner Address | 530 TECHNOLOGY DRIVE 104<br>IRVINE, CA 92618 | | |

**Printed:** Wednesday, September 11, 2024 8:06:31 AM PST

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **PROOF OF CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 26, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Brian S Healy    brian@tw2law.com
- Garry A Masterson    BnkEcf-CA@weltman.com, gmasterson@weltman.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Michael R Totaro    Ocbkatty@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

[x] Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) March 26, 2025 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

R2 Marketing & Consulting, LLC.
19800 MacArthur Boulevard #300
Irvine, CA 92612

[x] Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

[ ] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 26, 2025 | Sul Lee | *(signature)* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014    Page 12    F 4001-1.RFS.PP.MOTION