| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| David A. Berkley (SBN 260105)<br>WOMBLE BOND DICKINSON (US) LLP<br>400 Spectrum Center Drive, Suite 1700<br>Irvine, CA 92618<br>Tel: (714) 557-3800<br>Fax: (714) 557-3347<br>Email: David.Berkley@wbd-us.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* The Huntington National Bank | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  SANTA ANA DIVISION**

| In re:<br><br>R2 Marketing and Consulting, LLC<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:25-bk-10631-SC<br><br>CHAPTER: 11 |
|---|---|
| | **AMENDED NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** |
| | DATE:04/23/2025<br>TIME: 1:30 pm<br>COURTROOM: 5C |

**Movant:** The Huntington National Bank

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012       ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice and remains pending.  After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  03/25/2025

Womble Bond Dickinson (US) LLP
Printed name of law firm (if applicable)

David A. Berkley
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 2                                F 4001-1.RFS.PP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☒ Vehicle (*year, manufacturer, type, and model*): Three (3) 2022 Ram Promaster Braun Ability Vans

      *Vehicle Identification Number:* 3C6MRVUG4NE138805; 3C6MRVUG4NE138806; 3C6MRVUG6PE527643
      *Location of vehicle (if known)*:

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s)*:

      *Location (if known)*:

   c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition ☐ An involuntary bankruptcy petition
      under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13  was filed on (*date*) 03/12/2025 .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant
            sufficient to protect Movant's interest against that decline.

         (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
            obligation to insure the collateral under the terms of Movant's contract with Debtor.

         (D) ☐ Other (*see attached continuation page*).

      (2) ☒ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
            commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 3                          **F 4001-1.RFS.PP.MOTION**

(B) ☐  The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐  A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☒  Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐  The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐  (*Chapter 12 or 13 cases only*)  All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due
☐ postpetition preconfirmation    ☐ postpetition postconfirmation.

(4) ☐  The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐  The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐  Movant regained possession of the Property on (*date*) _____, which is
☐ prepetition ☐ postpetition.

(7) ☐  For other cause for relief from stay, see attached continuation page.

b. ☒  Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

**5. Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

a. ☐  These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐  Other (*specify*):

**6. ☒  Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a.  The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐  Supplemental declaration(s).

c. ☐  The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) _____.

d. ☐  Other:

**7. An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                                    **F 4001-1.RFS.PP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)

2.  ☒  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3.  ☐  Confirmation that there is no stay in effect.

4.  ☐  The stay is annulled retroactive to the petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.  ☒  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.  ☐  The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8.  ☐  The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9.  ☐  The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐  The order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    ☐  without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒  If relief from stay is not granted, the court orders adequate protection.

12. ☐  See continuation page for other relief requested

Date:   03/25/2025 

Womble Bond Dickinson (US) LLP
Print name of law firm

David A. Berkley
Print name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 5                        **F 4001-1.RFS.PP.MOTION**

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) Bryan Punzel              , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property (*specify*):

    a. ☐ I am the Movant.

    b. ☒ I am employed by Movant as (*title and capacity*): Bryan Punzel, Financial Recovery Representative

    c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other (see attached):

3. The Property is:

    a. ☒ Vehicle (*year, manufacturer, type, model and year*): Three (3) 2022 Ram Promaster Braun Ability Vans

        *Vehicle Identification Number*: 3C6MRVUG4NE138805; 3C6MRVUG4NE138806; 3C6MRVUG6PE527643
    *Location of vehicle (if known)*:

    b. ☐ Equipment (*manufacturer, type, and characteristics*):

        *Serial number(s)*:
    *Location (if known)*:

    c. ☐ Other personal property (*type, identifying information, and location*):

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*          Page 6          **F 4001-1.RFS.PP.MOTION**

4.  The nature of Debtor's interest in the Property is:

    a. ☒ Sole owner

    b. ☐ Co-owner (*specify*):

    c. ☐ Lessee

    d. ☐ Other (*specify*):

    e. ☐ Debtor ☐ did ☐ did not   list the Property in the schedules filed in this case.

5.  ☐ The lease matured or was rejected on (*date*) _____:

    a. ☐ rejected

        (1) ☐ by operation of law.

        (2) ☐ by order of the court.

    b. ☐ matured.

6.  Movant has a perfected security interest in the Property.

    a. ☒ A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit __A__.

    b. ☒ The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law.  True and correct copies of the following items are attached to this motion:

        (1) ☒ Certificate of title ("pink slip") (Exhibit __B__).

        (2) ☐ Vehicle or other lease agreement (Exhibit _____).

        (3) ☐ Security agreement (Exhibit _____).

        (4) ☐ Other evidence of a security interest (Exhibit _____).

    c. ☐ The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law.  True and correct copies of the following items are attached to this motion:

        (1) ☐ Security agreement (Exhibit _____).

        (2) ☐ UCC-1 financing statement (Exhibit _____).

        (3) ☐ UCC financing statement search results (Exhibit _____).

        (4) ☐ Recorded or filed leases (Exhibit _____).

        (5) ☐ Other evidence of perfection of a security interest (Exhibit _____).

    d. ☐ The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

        (1) ☐ Credit application (Exhibit _____).

        (2) ☐ Purchase agreement (Exhibit _____).

        (3) ☐ Account statement showing payments made and balance due (Exhibit _____).

        (4) ☐ Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

    e. ☐ Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

7. Status of Movant's debt:

    a.   The amount of the monthly payment: $ _7,404.00_____.

    b.   Number of payments that became due and were not tendered:  ☒ prepetition  ☐ postpetition.

    c.   Total amount in arrears: $ _59,328.00_____.

    d.   Last payment received on (*date*): _10/18/2024_.

    e.   Future payments due by the anticipated hearing date (*if applicable*): _03/28/2025_
       An additional payment of $ _7,404.00_____ will come due on (*date*) _04/28/2025_, and on
       the _28_____ day of each month thereafter.  If the payment is not received by the _____
       day of the month, a late charge of $ _____ will be charged under the terms of the loan.

8.  ☐  Attached as Exhibit _____ is a true and correct copy of a POSTPETITION payment history that accurately
       reflects the dates and amounts of all payments made by the Debtor since the petition date.

9. Amount of Movant's debt:

    a.   Principal:...................................................................................................... $ _422,124.00_____
    b.   Accrued interest: ........................................................................................ $ _____
    c.   Costs (attorney's fees, late charges, other costs):.................................... $ _19,510.40_____
    d.   Advances (property taxes, insurance): ...................................................... $ _____
    e.   TOTAL CLAIM as of _03/12/2025_:............................................................ $ _455,573.00_____

10. ☒  (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ _299,940.00_____.
       This valuation is based upon the following supporting evidence:

    a.  ☒  This is the value stated for property of this year, make, model, and general features in the reference guide
         most commonly used source for valuation data used by Movant in the ordinary course of its business for
         determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
         recent edition of the reference guide are attached as Exhibit _C_____.

    b.  ☐  This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
         expert's report and/or declaration are attached as Exhibit _____.

    c.  ☐  The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
         portions of the Debtor's schedules are attached as Exhibit _____.

    d.  ☐  Other basis for valuation (*specify*):

> **NOTE:**  If valuation is contested, supplemental declarations providing additional foundation for the
>          opinions of value should be submitted.

11. Calculation of equity in Property:

    a.  ☒  **11 U.S.C. § 362(d)(1) - Equity Cushion:**

         I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
         senior to Movant's debt is $ _(141,694.40)_____ and is _-47.24_ % of the fair market value of the
         Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 8                      **F 4001-1.RFS.PP.MOTION**

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ (141,694.40) _____ .

12. ☒ The fair market value of the Property is declining because:
Debtor is continuing to use the vehicles in operation of its business without making payments.  The Vehicles are highly depreciating assets due to increased mileage and wear and tear.

13. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (*date*) _____, which is:  ☐ prepetition.  ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                        $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                                              $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                          $ [                    ]

TOTAL POSTPETITION DELINQUENCY:                          $

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                        Page 9                          **F 4001-1.RFS.PP.MOTION**

g.  ☐  The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____.  See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16.  ☒  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17.  ☒  The bankruptcy case was filed in bad faith:

a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c.  ☐  The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d.  ☐  Other (*specify*):
The loan was obtained in April 2024 and only one payment was made (May 2024) before the first case was filed in August 2024. Debtor made one payment during that case. Debtor was aware of its distressed financial condition at the time the loan was acquired yet the same was never disclosed to Huntington.

18.  ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b.  ☐  Multiple bankruptcy cases affecting the Property:

(1)  Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(2)  Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(3)  Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was  ☐ was not  granted.

☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐  See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19.  ☐  Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐  These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed
with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.  ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/08/2024 | Bryan Punzel | *Bryan Punzel* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT A



**Correction Notification**

| |
|---|
| The "Contract": **Equipment Finance Agreement ⬛⬛⬛⬛8761-500 dated February 28, 2024** |
| "Debtor" |
| **R2 Marketing & Consulting, LLC dba R2 Transportation, 19800 Macarthur Boulevard, #360, Irvine, CA 92612** |
| "Creditor" |
| **The Huntington National Bank, 11100 Wayzata Blvd, Suite 700, Minnetonka, MN 55305** |

This letter will serve as Creditor's Notification to Debtor that the following correction(s) have been made to the above-referenced Contract, and all Schedules and Addenda thereto and all related documents (collectively the "Contract Documents"):

This letter will serve as Creditor's Notification to Debtor that the following correction(s) have been made to the above-referenced Contract, and all Schedules and Addenda thereto and all related documents (collectively the "Contract Documents"):

Due to a replacement, the vehicle identification number for one or more items of Collateral covered by the EFA was incorrectly stated on one or more Documents. Pursuant to the authority granted by Debtor to Creditor in the EFA, we hereby give you written notification that the description of the following Collateral has been corrected in the Documents to be and read as follows:

From:   **Equipment Description: (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6NE141950 together with all attachments and accessories thereto**

To:   **Equipment Description: (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6PE527643 together with all attachments and accessories thereto**

All Collateral described in the EFA that is not specifically identified herein remains unchanged and subject to the EFA, as described in the EFA.

Pursuant to the authority granted by Debtor to Creditor in the EFA, we hereby give you written notification that the following adjustments have been made to the EFA:  Financed Amount: $345,124.93 has been changed to Financed Amount: $345,124.94.

If you have any objections to the foregoing corrections or are aware of any other nonmaterial errors that exist in your Contract Documents, please notify us immediately.

All capitalized terms used herein and not defined shall have the meanings set forth or referred to in the Contract or any Schedule thereto. Except for the correction(s) specifically set forth herein, all of the terms and conditions of the Contract Documents shall remain in full force and effect.  To the extent that the provisions of this notification conflict with any provisions contained in any Contract Document, the provisions of this notification shall control.

Thank You,

*Kim Haydostian*

Kimberly Haydostian
The Huntington National Bank



**Equipment Finance Agreement
(Vehicles)**

| "EFA":  Equipment Finance Agreement No. ⬤⬤5761-500 dated **February 28, 2024** |
|---|
| "Debtor": R2 Marketing & Consulting, LLC dba R2 Transportation, 19800 Macarthur Boulevard, Irvine, CA  92612 |
| Business Type: **LLC**     State of Organization:     Fax:     E-mail: ⬤⬤@r2transportation.com |
| "Creditor": The Huntington National Bank, 11100 Wayzata Blvd, Suite 700, Minnetonka, MN 55305 |
| Fax:(800) 844-3577     E-mail: EFCustomerService@huntington.com |

**SUMMARY OF TERM AND PAYMENTS:**

| Funding Date | Financed Amount | Monthly Payment Date | Number of Payments | Payment Amount | Document Fee | Advance Payment(s) |
|---|---|---|---|---|---|---|
| _____ | **$345,124.93** | | **60** | **$7,404.00** | **$300.00**  Security Deposit **N/A** | **N/A**  For Month(s): **N/A** |

**Total Amount Due Upon Delivery of this EFA: $300.00**

**DESCRIPTION AND LOCATION OF EQUIPMENT, PERSONAL PROPERTY, SERVICES AND/OR SOFTWARE:**

| **Equipment Description: (3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6NE141950 together with all attachments and accessories thereto**  Mileage: _____ | **Location : 19800 Macarthur Boulevard, Irvine, CA 92612** |
|---|---|

Your Equipment Finance Agreement provides for an option to choose your Monthly Payment Date which is the due date of the installment payments. Please choose one of the following (if a box is not selected the default Monthly Payment Date is the same day as the Funding Date):

☐    Monthly Payment Date is the same day as the Funding Date (the date we pay for the Equipment)

☒    Monthly Payment Date of the __28__ day of the month (See Important Notice Below)

**IMPORTANT NOTICE:** If you choose the second option above, you are obligated to pay interest in accordance with Section 2 of the Equipment Finance Agreement. For example, if the Funding Date is April 25 and you choose a Monthly Payment Date of the 5th of each month, you are obligated to pay per diem interest from April 25th to and including May 5th. If you choose the first option above, no additional interest is payable by you.

**1. Financing.** Debtor has requested that Creditor provide financing to enable Debtor to purchase the equipment, personal property, services and/or software described above and/or on any exhibit hereto (together with all accessories, attachments, parts, replacements, repairs and additions thereto and all proceeds of the foregoing, collectively the "Collateral"). Upon Creditor's acceptance and execution of this EFA, receipt of any amounts due upon signing of this EFA, receipt of other documentation required by Creditor and confirmation that the Collateral has been delivered to and accepted by Debtor, Creditor agrees to finance the purchase of the Collateral on the terms set forth in this EFA, including all of Debtor's obligations, covenants and agreements hereunder. Upon satisfaction of all conditions to funding, Creditor will pay the Financed Amount, as adjusted in accordance with Section 2 below, directly to the vendor(s) of the Collateral. Debtor authorizes Creditor to complete the Funding Date set forth above based on the date of actual funding.

**2. Payments.** In consideration of the financing provided by Creditor, Debtor agrees to pay to Creditor the Financed Amount, together with interest thereon, by paying to Creditor each of the following amounts when specified: (a) the amount of any Advance Payment(s) set forth above, due and payable on the date Debtor delivers this EFA, (b) consecutive monthly installments each equal to the Payment Amount set forth above for the Number of Payments set forth above less the number of Advance Payments made upon delivery of this EFA, with such consecutive monthly Payments beginning on the Monthly Payment Date specified above that is at least one month, but less than two months, after the Funding Date and then on each Monthly Payment Date thereafter, and (c) if the Monthly Payment Date specified above is a day of the month other than the Funding Date, the amount of interest accrued on the outstanding Financed Amount from the Funding Date to and including the date that is one month before the first Monthly Payment Date to occur after the Funding Date, at the per annum interest rate equal to the implicit interest rate for this EFA, as conclusively determined pursuant to the books and records of Creditor and calculated on the basis of a year of twelve 30-day months. For purposes of this EFA, "Monthly Payment Date" means the day of the applicable calendar month which is to be specified above (e.g. the 1st, 10th or 20th day of such month) or, if "Same as Funding Date" is specified above, the same day of the applicable calendar month as the day of the month that is the Funding Date. Debtor hereby authorizes Creditor to determine and fill in the Monthly Payment Date above after Debtor signs this EFA, and to notify Debtor of the Monthly Payment Date pursuant to Creditor's monthly invoices to Debtor. Debtor also agrees to pay to Creditor on the date Debtor delivers this EFA the amount of any Security Deposit and Document Fee set forth above. The Total Amount Due Upon Delivery of this EFA, as set forth above, reflects any Security Deposit, any Document Fee and the amount of any Advance Payments required hereunder. If, for any reason, the final amount that Creditor finances (all amounts Creditor pays in connection with the purchase, delivery and installation of the Collateral, including any trade-up and buy out amounts, and any other amounts financed, before application of any subsidies or like amounts) is more or less than the Financed Amount set forth above (which is based on an estimate), the Payment Amount will be adjusted to provide Creditor the same yield it would have obtained if the final amount financed had been equal to the Financed Amount set forth above. Debtor agrees that this EFA will be amended to reflect the adjusted Financed Amount and Payment Amount, and the adjusted

Advance Payment(s) and Security Deposit, if applicable, by (i) written notice from Creditor to Debtor for adjustments of 10% or less; or (ii) signed Amendment. In the event that Creditor applies any portion of the Security Deposit to Obligations hereunder, Debtor shall pay to Creditor on demand the amount necessary to restore the full amount of the Security Deposit set forth above. If any amount payable hereunder is not paid within ten (10) days of its due date, Creditor may impose a late fee of up to 10% of the amount of the Payment and may, in addition, charge interest on the unpaid amount at eighteen percent (18%) per annum or, if less, the maximum rate permitted by applicable law. Creditor may apply payments hereunder and any Security Deposit to Debtor's Obligations hereunder in such order as it deems appropriate and will return any unapplied balance to Debtor, without interest, when all Obligations are satisfied. Debtor may from time to time make telephonic requests for, and hereby authorizes, Creditor or its agents to make and draw checks or drafts on a checking account to be designated by Debtor, payable to Creditor or order, to pay amounts due hereunder, plus Creditor's applicable per item fee for making and drawing such check or draft. Creditor may rely on such request made by any person it believes has authority to make such request on behalf of Debtor. Debtor will pay Creditor a fee, in an amount determined by Creditor, not to exceed the maximum amount from time to time permitted by applicable law on demand for any check or automatic payment request returned due to insufficient funds or stop payment. This EFA shall be construed so that interest, the applicable interest rate, fees and other charges shall not exceed the maximum time price differential, rate, interest or amount allowed by applicable law, and any excess payment will be applied first to prepay principal hereunder and then as a refund to Debtor. If Debtor is an individual and the Financed Amount is $100,000 or more, this EFA is made under Minn. Stat. Sec. 334.01.

**3. Prepayment.** Debtor may not prepay this EFA or any of the Payments due hereunder.

**4. Security Interest.** Debtor grants Creditor a security interest in the Collateral (the "Security Interest") to secure all its obligations under this EFA and all other indebtedness and obligations of Debtor to Creditor, of whatever type or description, now or hereafter arising (together, the "Obligations"). Debtor authorizes Creditor to file such financing statements, title certificates and instruments as Creditor deems necessary to perfect and protect the Security Interest, without Debtor's signature, and, if such signature is needed, Debtor appoints Creditor as Debtor's attorney-in-fact to sign such items in Debtor's name. Debtor further authorizes Creditor to add to or change the Collateral description for the purpose of completing or correcting any serial numbers or other specific identification when known.

**5. Representations and Warranties.** Debtor represents and warrants that (a) Debtor is the type of entity set forth above and, if a legal entity, is legally existing, validly existing and in good standing under the laws of the state set forth above; (b) Debtor's exact legal name is as shown above, and: (i) if Debtor is an individual, such legal name is exactly as stated on Debtor's valid and unexpired state driver's license, or alternative state identification, issued by Debtor's primary state of residence ("Debtor State ID"); or (ii) if Debtor is a legal entity, such legal name is as stated on Debtor's applicable organizational documents; (c) its execution, delivery and performance of this EFA will not violate or create a default under any law, regulation, order, agreement or charter document binding on Debtor or its property; (d) this EFA has been duly authorized, executed, and delivered by Debtor; (e) Debtor's signatory of this EFA has the authority to bind Debtor to this

EFA; (f) Debtor, if an individual, is a citizen or lawful permanent resident of the United States; (g) the Collateral will be used solely for business purposes and not for agricultural, personal, family or household purposes; (h) the Collateral is and shall remain garaged at the Location set forth above which Location is owned or leased by Debtor; (i) at the time that Debtor requests Creditor to fund any portion of the Financed Amount, the Collateral shall have been delivered to the Location, shall be in good working order, Debtor shall have irrevocably accepted the Collateral and Debtor shall have good and marketable title to the Collateral, free and clear of any liens, claims, security interests or rights, other than the Security Interest; and (j) if Debtor is a legal entity, Debtor shall not allow any Blocked Person(s) to have an ownership interest in or control of Debtor. "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government, or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Creditor, to be a person with whom Creditor is not permitted to extend credit to or with regard to whom, a debtor-creditor relationship may result in penalties against Creditor or limitations on Creditor's ability to enforce a transaction.

**6.  Covenants.** Debtor shall maintain the Collateral in good repair, condition and working order, ordinary wear and tear excepted, and shall furnish all needed parts, services, tires, gasoline, oil, grease and other items required to operate the Collateral and make all modifications and improvements required by law. The Collateral shall be operated in a safe and reasonable manner so as to prevent loss or damage to the Collateral or other property and injury to third parties. Debtor shall be responsible for the cost of delivery, installation, operation and maintenance of the Collateral. Debtor also is responsible for any loss, theft or destruction of, or damage to, the Collateral from any cause at all (collectively "Loss"), whether or not insured, and no Loss shall relieve Debtor of its Obligations hereunder. Debtor shall promptly notify Creditor in writing of any Loss to the Collateral and shall promptly repair or replace any Collateral after a Loss. Debtor shall comply with all applicable laws and regulations related to the Collateral and its use. Creditor is financing Debtor's purchase of the Collateral and, notwithstanding anything contained in this EFA to the contrary, Debtor and Creditor hereby agree and acknowledge that Debtor owns and holds legal title to the Collateral and, pursuant to Section 4 of this EFA, Debtor grants to Creditor the Security Interest in the Collateral. Debtor represents, warrants and agrees with and to Creditor that Debtor shall not sell, transfer, lease, grant a security interest in, or otherwise encumber the Collateral, and will at all times own and hold good legal title to the Collateral. Debtor shall not permit or suffer the Collateral to have imposed, and shall bear the cost of keeping the Collateral free from or removing, any lien, claim or encumbrance, except for the valid, perfected and enforceable first priority Security Interest in the Collateral and proceeds thereof, that Creditor will at all times hold, subject to no other security interest, mortgage, lien or encumbrance. Debtor shall permit Creditor to inspect the Collateral and Debtor's records related thereto at any time during business hours. Debtor shall pay when due all property, sales, use, excise and other taxes now or hereafter levied on or assessed against the Collateral or this transaction. Debtor shall not change its legal name or state of organization (if a legal entity) or legal name or principal residence (if an individual), and will not permit its Debtor State ID to expire, become invalid, or fail to be properly renewed, (if an individual) without, in each case, at least 30 days' prior written notice to Creditor of any such event. During this EFA, upon the request of Creditor, Debtor will provide copies of its Debtor State ID (if an individual) or applicable organizational documents (if a legal entity), and Debtor will execute and deliver to Creditor such other documents and provide such information, including information identifying the owners of Debtor and its affiliates and their respective ownership interests, as Creditor may reasonably deem necessary to comply with laws or regulations applicable to Debtor or Creditor, including laws and regulations requiring Creditor to obtain Debtor's certification of its beneficial owner(s) prior to making payment(s) to Debtor during or after the term of this EFA. Debtor will, at its sole expense: (a) before operating the Collateral, obtain all titles, registrations, registration plates, permits and licenses, including renewals, required for the lawful ownership, use and operation of the Collateral; (b) cause the Collateral to be titled in Debtor's name as owner, with Creditor's lien noted thereon; (c) furnish all certificates of title, lien registration notices and related documentation to Creditor; and (d) retain all certificates of registration (and if legally required, a copy of this EFA) in the Collateral. If within 10 days of Debtor's receipt of the Collateral Debtor has not properly titled the Collateral and provided Creditor with such evidence thereof as Creditor shall require, Creditor, in its discretion and in addition to all other remedies hereunder, may charge Debtor late titling fees in the amount of $25, payable at the end of such 10-day period, and $25 for and payable at the end of each 30-day period thereafter until Creditor has received all required evidence of proper titling for all Collateral hereunder.

**7.  Insurance.** Debtor will obtain and maintain physical damage insurance issued by responsible insurance companies acceptable to Creditor, insuring the Collateral against damage and loss by theft, fire, collision, and such other risks as are usually carried by owners of similar properties or as may be requested by Creditor, in such amounts and payable in such manner as Creditor shall request (including naming Creditor and assigns as loss payee), and in any event in an amount no less than the greater of the outstanding Financed Amount or the full replacement value of the Collateral, and will furnish evidence of such insurance to Creditor upon request. Each such policy shall contain a clause requiring the insurer to give Creditor at least 30 days' prior written notice of any alteration in the terms of the policy or the cancellation thereof, and a clause specifying that no act or misrepresentation by Debtor shall invalidate such policy against Creditor. Creditor may apply the proceeds of such insurance toward payment of the Obligations, whether or not due, in such order as Creditor shall determine. If Debtor defaults, Debtor hereby appoints Creditor as Debtor's attorney-in-fact to make claim for, receive payment

of, and execute and endorse all documents, checks or drafts for loss or damage under any such physical damage insurance policy. In the event Debtor fails to procure, maintain, pay for or provide Creditor with evidence of the insurance required hereby, Creditor shall have the right, but not be obligated, to obtain insurance covering Creditor's interest in the Collateral from an insurer of Creditor's choice. In that event, Debtor shall reimburse Creditor on demand for the cost thereof, including Creditor's fees for services in placing and maintaining such insurance, together with interest until paid at the interest rate then in effect under this EFA, and the amount thereof shall be secured by the Security Interest. At Creditor's discretion, Creditor may add all costs of acquiring and maintaining any insurance provided for herein, including without limitation all premiums therefor and all premium finance charges, documentation fees, tracking fees and all other fees and charges incurred by Creditor in connection therewith, plus fees for Creditor's services in placing and maintaining such insurance (all such premiums, costs, fees and charges are referred to herein, collectively, as the "Insurance Charge"), to the amounts due hereunder. Debtor will pay the Insurance Charge, together with interest thereon at the interest rate set forth in Section 2 above for amounts due but unpaid under this EFA and calculated on the basis of a year of twelve 30-day months, in equal installments allocated to the remaining Payments due hereunder. NOTHING IN THIS AGREEMENT WILL CREATE AN INSURANCE RELATIONSHIP OF ANY TYPE BETWEEN CREDITOR AND ANY OTHER PERSON.

**8.  Indemnity.** Debtor shall indemnify and hold harmless Creditor, its successors and assigns, employees, officers, directors and agents from and against any and all claims or suits for any loss, damage or injury sustained by any person whatsoever by reason of the sale, financing, use, possession or disposition of the Collateral and, in this connection, Debtor shall pay the costs of all reasonable legal fees and all other reasonable expenses incurred by Creditor, its successors and assigns.

**9.  Events of Default.** Each of the following is an "Event of Default" hereunder: (a) Debtor fails to pay any Payment or other amount due hereunder when due; (b) Debtor fails to comply with any other covenant or agreement hereunder and such failure continues for 10 days after notice by Creditor; (c) any representation or warranty by Debtor set forth in or made in connection with this EFA shall prove materially false or misleading (d) Debtor defaults under any other Obligation to Creditor; (e) Debtor or any guarantor of this EFA ("Guarantor"), or any partner of Debtor ("Partner") if Debtor is a partnership, ceases doing business as a going concern or makes an assignment for the benefit of creditors; (f) Debtor or any Guarantor or Partner admits in writing an inability to pay debts as they come due, voluntarily files or has filed against it involuntarily a petition under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver or liquidator is appointed for it or for all or a substantial part of its assets; (g) any individual Debtor, Guarantor or Partner dies; (h) any material indebtedness of Debtor or any Guarantor is accelerated or payment in full thereof is demanded; or (i) Debtor or any Guarantor shall divide or shall consolidate with, merge into or transfer all or substantially all its assets to another entity or individual.

**10.  Remedies.** Upon the occurrence of an Event of Default, and at any time thereafter until the same is cured or waived to the written satisfaction of Creditor, Creditor may, in its sole discretion, exercise any one or more of the following rights and remedies: (a) declare immediately due and payable and recover from Debtor, as liquidated damages and not as a penalty, the entire outstanding unamortized Financed Amount, plus all accrued and unpaid interest and any late charges, fees and other unpaid amounts owing under this EFA, as conclusively determined pursuant to the books and records of Creditor, plus a fee equal to 5% of the unamortized Financed Amount, and the same shall thereupon be and become immediately due and payable in full without presentment, notice of dishonor, or protest, all of which Debtor hereby waives; (b) charge interest on the unpaid amount of liquidated damages due hereunder at eighteen percent (18%) per annum, but in no event greater than the maximum rate permitted under applicable law, until such accelerated hereunder shall be due and payable on demand by Creditor; (c) exercise any and all of the rights and remedies available to a secured creditor under the Uniform Commercial Code as in effect in the State of Minnesota, and in connection therewith, Debtor agrees at its expense to assemble the Collateral and make it available to Creditor at a place or places to be designated by Creditor in the continental United States, and agrees that any notice of intended disposition of the Collateral required by law shall be deemed reasonable if such notice is given to Debtor in the manner provided in this EFA before the date of such disposition.; (d) recover from Debtor, and Debtor agrees to pay, all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under this EFA, including expenses of repossession, repair, storage, transportation, and disposition of the Collateral, costs of obtaining money damages and attorneys' fees and expenses for any purpose related to this EFA, including consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration; (e) exercise any and all other rights and remedies available to it by law or in equity or by any other agreement. Debtor grants to Creditor the right to enter into or on any premises where Collateral may be located for the purpose of repossessing Collateral upon the occurrence of an Event of Default hereunder. Creditor has no obligation to clean up or otherwise prepare or process the Collateral for sale or other disposition. Creditor may do any of the following in connection with a disposition of the Collateral without adversely affecting the commercial reasonableness thereof: (i) comply with any applicable state or federal law requirements; and (ii) refrain from giving and specifically disclaim any and all warranties, including without limitation warranties of title, quality, condition, merchantability, fitness or otherwise. If Creditor sells any of the Collateral on credit, or leases any of the Collateral, Debtor will be credited only with payments actually received by Creditor and applied to the indebtedness of such purchaser or lessee and in the event such purchaser or lessee defaults in its obligation to pay for the Collateral, Creditor may resell or otherwise dispose of the Collateral and Debtor shall be credited with the proceeds of that sale or other disposition. No remedy permitted hereunder shall be exclusive and all remedies shall be cumulative but only to the extent necessary to recover amounts for which Debtor is liable hereunder.

11. **Assignment.** Without Creditor's prior written consent, Debtor will not sell, assign, transfer (via merger, division, or otherwise), sublet, pledge or otherwise encumber or permit a lien arising through Debtor to exist against any interest in this EFA or the Collateral. Creditor may assign or grant a security interest in its interest in this EFA and in all or any part of the Collateral without notice to or consent of Debtor, and Debtor agrees not to assert against any assignee any claim or defense Debtor may have against Creditor. Any assignee of Creditor shall have all the rights, but none of the obligations, of Creditor under this EFA. Debtor agrees not to assert against any assignee of Creditor any claim or defense Debtor may have against Creditor or any other party.

12. **Non-Cancelable, Unconditional Obligation, Disclaimer.** This EFA cannot be canceled or terminated except as expressly provided herein. All representations, warranties and indemnities of Debtor made or agreed to in or in connection with this EFA shall survive expiration or termination of this EFA. Debtor agrees that its obligations to pay amounts due under this EFA are absolute and unconditional and shall not be subject to any defenses, setoffs, abatement, reduction or counterclaims of any kind regardless of whether or not (a) any vendor or manufacturer (including Creditor) has breached any of its warranties or other covenants relating to the Collateral, or (b) any maintenance, support or other services provided in connection with the Collateral has been breached, revoked or otherwise terminated for any reason whatsoever. Except for any express warranty provided by Creditor in its capacity as manufacturer or vendor of any of the Collateral (which warranties are separate and distinct from this EFA), CREDITOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE COLLATERAL INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR OF MERCHANTABILITY. ANY WARRANTY OR RELATED CLAIM THAT DEBTOR MAY ASSERT AGAINST CREDITOR IN ITS CAPACITY AS MANUFACTURER OR VENDOR OF ANY OF THE COLLATERAL SHALL BE SEPARATE AND DISTINCT FROM DEBTOR'S OBLIGATIONS UNDER THIS AGREEMENT, AND DEBTOR MAY NOT ASSERT ANY SUCH CLAIM AS A DEFENSE TO THE ENFORCEMENT OF CREDITOR'S RIGHTS UNDER THIS AGREEMENT.

13. **GOVERNING LAW; JURY TRIAL WAIVER. THIS EFA AND ALL MATTERS ARISING FROM THIS EFA, INCLUDING ALL INTEREST AND FINANCE CHARGES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, FEDERAL LAW AND, TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, BY THE LAWS OF THE STATE OF MINNESOTA (EXCLUDING CONFLICTS LAWS. DEBTOR HEREBY CONSENTS TO JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS SITTING IN THE STATE OF MINNESOTA FOR RESOLUTION OF ALL DISPUTES OF ANY NATURE WHATSOEVER REGARDING THIS EFA OR ANY TRANSACTION CONTEMPLATED HEREBY. DEBTOR AGREES THAT, AT CREDITOR'S SOLE ELECTION AND DETERMINATION, CREDITOR MAY SELECT AN ALTERNATIVE FORUM, INCLUDING ARBITRATION OR MEDIATION, TO ADJUDICATE ANY DISPUTE ARISING OUT OF THIS EFA. THE PARTIES HERETO, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND**

**VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, INCLUDING ANY ACTION TO ENFORCE THIS AGREEMENT OR ANY RELATED AGREEMENTS.**

14. **Miscellaneous.** This EFA constitutes the entire agreement between Debtor and Creditor with respect to the subject matter hereof, there is no other oral or written agreement or understanding. This EFA may not be amended or modified except by a writing signed by the parties. In Creditor's sole discretion, this EFA and certain documents related to or required in connection with this EFA may be electronically copied and/or delivered by telecopier or other electronic means of transmission ("e-copy") and the e-copy of any such document shall be deemed an original and admissible as such in any court or other proceeding. Without limiting the foregoing, Debtor will send Creditor, on request, any document bearing Debtor's original "wet ink" signature; provided that neither delivery nor failure to deliver the document bearing Debtor's original signature shall limit or modify the agreements set forth above. Debtor consents to the use of electronic signatures and represents and warrants that its electronic signature on this EFA and any related document shall be unconditionally valid and legally enforceable, and agrees not to contest, call into question or otherwise challenge the validity or enforceability of any electronic signature (or the authority of the electronic signer to sign) or raise any of the foregoing as a defense or counterclaim. There shall be only one original of this EFA, and it shall bear the original ink or electronic signature of Creditor and be marked "Original." To the extent this EFA is "chattel paper", a security or ownership interest may only be created herein by transfer of such originally signed counterpart; provided that, if the "Paper Out" process shall have occurred, then the "Paper Out" version bearing the legend "Original" shall constitute the sole chattel paper original. No delay or omission on the part of Creditor in exercising any right hereunder shall operate as a waiver of such right or of any other right under this EFA or under any other document or instrument executed or delivered in connection with this EFA. Debtor shall pay, on demand, Creditor's costs, fees and expenses incurred in connection with this EFA, any amendment, waiver, release or termination of this EFA or any related document, financing statement, title certificate or instrument, including but not limited to filing and recording fees. This EFA is binding on and inures to the benefit of the parties hereto, their permitted successors and assigns. Any written notice hereunder shall be deemed given when delivered personally, deposited with a nationally recognized overnight courier (with all fees pre-paid), delivered via facsimile or e-mail (with confirmation of transmission), or deposited in the United States mails, certified or registered mail, addressed to recipient at its address set forth above or such other address as may be substituted therefor by notice given pursuant to the terms hereof. Debtor hereby agrees that Creditor, including its vendors, service providers, partners, affiliates successors and assigns, may contact Debtor at any telephone number provided to Creditor, by placing voice telephone calls (including use of automatic telephone dialing systems or prerecorded voice messaging) or, in the case of wireless telephones or other wireless devices, by sending e-mail or automated (SMS) text messages. If more than one Debtor is named herein, the obligations of each shall be joint and several. Debtor authorizes Creditor to obtain such credit bureau reports and make such other credit inquiries as Creditor deems appropriate; and on written request, Creditor will identify any reporting agency used for such a report. Under federal law, Creditor must obtain, verify and record identifying information for each person opening an account. Creditor will ask for Debtor's name, address, date of birth and other identifying information. Creditor may also ask for Debtor's driver's license or other identifying documents.

**ACCEPTANCE CERTIFICATE:** Debtor hereby represents, warrants and certifies that (i) all of the Collateral has been delivered to Debtor and has been tested and inspected by Debtor or duly authorized representatives of Debtor, (ii) the Description of the Equipment, Personal Property, Services and/or Software comprising the Collateral as set forth on the first page of this EFA is complete and correct, (iii) the Collateral is exactly what Debtor ordered, is in good working order, is satisfactory in all respects and has been accepted by Debtor as of the Acceptance Date set forth below, and (iv) there has been no adverse change in the business or financial condition of Debtor or any guarantor of this EFA since the day the most recent financial statement of Debtor or any guarantor was submitted to Creditor. Debtor acknowledges that Creditor shall have the sole security interest in the Collateral.

IMPORTANT: DEBTOR SHOULD SIGN THIS EFA AND CERTIFICATE ONLY AFTER DEBTOR HAS RECEIVED AND IS COMPLETELY SATISFIED WITH THE COLLATERAL. BY SIGNING THIS EFA AND CERTIFICATE, DEBTOR (1) CONFIRMS TO CREDITOR THAT DEBTOR HAS IRREVOCABLY ACCEPTED THE COLLATERAL AND ALL OF THE TERMS AND CONDITIONS OF THIS EFA, (2) AUTHORIZES CREDITOR, SHOULD CREDITOR ACCEPT THIS EFA, TO PAY THE VENDOR(S) OF THE COLLATERAL ON DEBTOR'S BEHALF FOR THE PURCHASE OF THE COLLATERAL, (3) BECOMES ABSOLUTELY AND IRREVOCABLY OBLIGATED TO CREDITOR UNDER THIS EFA, AND (4) MAY NOT AT ANY TIME CANCEL OR TERMINATE THIS EFA OR DENY ANY STATEMENT MADE IN THIS CERTIFICATE, FOR ANY REASON WHATSOEVER.

Acceptance Date: 4/7/2024 _____

| | | | |
|---|---|---|---|
| Creditor: | The Huntington National Bank | By: _____ | Title: _____ |
| Debtor: | R2 Marketing & Consulting, LLC dba R2 Transportation | By: _Ryan Morris_ (DocuSigned by: 1EC8BCB8923147A...) | Ryan Morris-Managing Member |

**DocuSign**

## Certificate Of Completion

Envelope Id: 0C16D1C1ADCF4DE08EC6E157A5B9EE89
Subject: Acceptance Date with DocuSign: R2 Marketing Acceptance & Correction.pdf
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 4 | Signatures: 0 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Kim Haydostian |
| AutoNav: Enabled | | 11100 Wayzata Blvd |
| EnvelopeId Stamping: Enabled | | Ste 700 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | Minnetonka, MN 55305 |
| | | kim.m.haydostian@huntington.com |
| | | IP Address: 170.128.108.193 |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Kim Haydostian | Location: DocuSign |
|     4/2/2024 12:28:17 PM |     kim.m.haydostian@huntington.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ryan Morris | **Completed** | Sent: 4/2/2024 12:33:05 PM |
| ryan@r2transportation.com | | Resent: 4/5/2024 7:58:01 AM |
| Director | Using IP Address: 136.52.88.106 | Viewed: 4/7/2024 9:11:58 AM |
| Security Level: Email, Account Authentication (None), Authentication | Signed using mobile | Signed: 4/7/2024 9:12:07 AM |
| **Authentication Details** | | |
| ID Check: | | |
|   Transaction: 31028888847171 | | |
|   Result: passed | Question Details: | |
|   Vendor ID: LexisNexis | failed   county.lived.single.real | |
|   Type: iAuth | passed  person.known.single.fake | |
|   Recipient Name Provided by: Recipient | passed  corporate.association.real | |
|   Information Provided for ID Check: Address, DOB | passed  vehicle.historical.color.real | |
|   Performed: 4/7/2024 9:11:42 AM | passed  property.association.single.real | |
| **Electronic Record and Signature Disclosure:** | passed  vehicle.historical.association.real | |
|   Accepted: 4/7/2024 9:11:58 AM | | |
|   ID: dc6acc63-249d-4eac-bb68-b448e29e0376 | | |
|   Company Name: The Huntington National Bank | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Dan Boie | **COPIED** | Sent: 4/2/2024 12:33:05 PM |
| daniel.m.boie@huntington.com | | |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
|   Not Offered via DocuSign | | |
| Tracy Leopold | **COPIED** | Sent: 4/2/2024 12:33:05 PM |
| tracy.leopold@huntington.com | | |
| Security Level: Email, Account Authentication (None) | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| **Electronic Record and Signature Disclosure:** Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/2/2024 12:33:05 PM |
| Certified Delivered | Security Checked | 4/7/2024 9:11:58 AM |
| Signing Complete | Security Checked | 4/7/2024 9:12:07 AM |
| Completed | Security Checked | 4/7/2024 9:12:07 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 4/24/2024 6:02:13 PM
Parties agreed to: Ryan Morris

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, The Huntington National Bank (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact The Huntington National Bank:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: customerservice@financediv.com

**To advise The Huntington National Bank of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at customerservice@financediv.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from The Huntington National Bank**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to customerservice@financediv.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with The Huntington National Bank**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to customerservice@financediv.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify The Huntington National Bank as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by The Huntington National Bank during the course of your relationship with The Huntington National Bank.

DocuSign Envelope ID: B66AE58A-15A1-43C8-8291-F9C1A0C3AD5A

**Huntington**  **M** MODEL1 COMMERCIAL VEHICLES

**Additional Information**
**Regarding Your Account and the Equipment**

| | |
|---|---|
| The "Contract": **Equipment Finance Agreement** 5761-500 dated **February 28, 2024** | |
| "Debtor" | |
| **R2 Marketing & Consulting, LLC dba R2 Transportation, 19800 Macarthur Boulevard, Irvine, CA 92612** | |
| "Creditor" | |
| **The Huntington National Bank, 11100 Wayzata Blvd, Suite 700, Minnetonka, MN 55305** | |

Equipment Description and Location:

| Description (including features) | Location |
|---|---|
| **(3) 2022 Ram Promaster Braun Ability Vans: VINS: 3C6MRVUG4NE138805, 3C6MRVUG6NE138806, 3C6MRVUG6NE141950 together with all attachments and accessories thereto** | **19800 Macarthur Boulevard, Irvine, CA 92612** |

### ***PLEASE COMPLETE ALL SECTIONS BELOW ***

**Automated Clearing House ("ACH") Payments (check one box below):**

☐ Previous contracts are on ACH, please continue ACH on this Contract.

☐ Do NOT setup this Contract on ACH (this option may be selected unless ACH is required by Lessor)

☒ Please setup ACH on this Contract (this option to be selected if you would like ACH to apply to this Contract or if Lessor requires ACH.) If Lessor requires ACH, the box will automatically be checked.

**Billing Address: 19800 Macarthur Boulevard, Irvine, CA, 92612**

☒ If billing address is different than above, list the correct billing address:_____ 19800 MacArthur Blvd #360 Irvine Ca 92612

☐ Billing Email Address: ████@r2transportation.com If Different, Enter Correct Email Address: _____

    ☐ For this contract only    ☒ All contracts

**Equipment Location and Vehicle Titling Location:**

☒ The Equipment will be located at the Equipment Location(s) stated above or on Exhibit A; provided that if any Equipment is motor vehicles, such vehicles will be titled in the titling office for the Equipment Location stated above or on Exhibit A.

☐ The Equipment will be located at: _____ 530 Technology Dr Suite 104, Irvine CA 92618 _____
(If multiple locations, attach a list indicating by item of Equipment the City, State and County where such item will be located)
and the vehicles will be titled in: _____ (State) _____ (City)_____ (County)
(If multiple vehicles titled in multiple states, attach a list indicating by VIN the State, City and County each vehicle will be titled)

**Tax Status (LEASE TRANSACTIONS ONLY):**

1. **Sales/Use Tax:** (check one)

    ☐ Subject to Sales and Use Tax. (Tax will be based on the state where the Equipment/Vehicle is located).

    ☐ Exempt from sales and use tax, for the following reason: _____

    ☐ Exemption Certificate Attached

    ☐ Valid Exemption Certificate already on file with Creditor.
    ***If you are exempt from sales tax, you MUST provide exemption certificate or you will automatically be charged sales tax***

2. **Heavy Vehicle Use Tax:** Some vehicles are liable for Heavy Vehicle Use Tax, filed on Federal Form 2290. Creditor does not file this return. If you determine the vehicle(s) is liable for this tax, you should include it on your own Form 2290. Failure to report a taxable vehicle may prevent you from obtaining licenses or tabs.

Acknowledged by:

Debtor: R2 Marketing & Consulting, LLC dba R2 Transportation

By: _____*Ryan Morris*_____    Ryan Morris-Managing Member
      DocuSigned by:
      1EC6BCB8923147A...

**DocuSign**

## Certificate Of Completion

Envelope Id: B66AE58A15A143C88291F2CEB8C77119
Subject: R2 Marketing & Consulting, LLC Documents- 522987.pdf
Source Envelope:
Document Pages: 8       Signatures: 5
Certificate Pages: 5       Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-06:00) Central Time (US & Canada)

Status: Completed

Envelope Originator:
Alicia Catton
11100 Wayzata Blvd
Ste 700
Minnetonka, MN  55305
alicia.catton@huntington.com
IP Address: 170.128.236.193

## Record Tracking

Status: Original
      2/28/2024 3:31:45 PM

Holder: Alicia Catton
      alicia.catton@huntington.com

Location: DocuSign

## Signer Events

**Signature**

**Timestamp**

Ryan Morris
ryan@r2transportation.com
Director
Security Level: Email, Account Authentication
(None), Authentication

*Ryan Morris*
EC0BCB8923147A...

Signature Adoption: Pre-selected Style
Using IP Address: 4.71.109.134

Sent: 2/28/2024 3:35:06 PM
Viewed: 2/28/2024 3:37:18 PM
Signed: 2/28/2024 3:43:00 PM

**Authentication Details**
ID Check:
      Transaction: 31028092328421
      Result: passed
      Vendor ID: LexisNexis
      Type: iAuth
      Recipient Name Provided by: Recipient
      Information Provided for ID Check: Address,
SSN9, SSN4, DOB
      Performed: 2/28/2024 3:37:10 PM

Question Details:
passed   vehicle.historical.association.real
passed   corporate.association.fake
passed   vehicle.historical.color.real
passed   county.lived.single.real
passed   corporate.association.real
passed   property.association.single.real

**Electronic Record and Signature Disclosure:**
      Accepted: 2/28/2024 3:37:18 PM
      ID: 6b4bc564-65f8-4600-8f63-824ec7d15ee0
      Company Name: The Huntington National Bank

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

Dan Boie
daniel.m.boie@huntington.com
Security Level: Email, Account Authentication
(None)

**COPIED**

Sent: 2/28/2024 3:35:06 PM

**Electronic Record and Signature Disclosure:**
      Not Offered via DocuSign

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Mike Stoller<br>MStoller@model1.com<br>Director of Finance<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | **COPIED** | Sent: 2/28/2024 3:35:07 PM |
| Tracy Leopold<br>Tracy.Leopold@huntington.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | **COPIED** | Sent: 2/28/2024 3:35:07 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/28/2024 3:35:07 PM |
| Certified Delivered | Security Checked | 2/28/2024 3:37:18 PM |
| Signing Complete | Security Checked | 2/28/2024 3:43:00 PM |
| Completed | Security Checked | 2/28/2024 3:43:00 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on

Parties agreed to: Ryan Morris

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, The Huntington National Bank (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

### How to contact The Huntington National Bank:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: customerservice@financediv.com

### To advise The Huntington National Bank of your new email address

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at customerservice@financediv.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

### To request paper copies from The Huntington National Bank

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to customerservice@financediv.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

### To withdraw your consent with The Huntington National Bank

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to customerservice@financediv.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify The Huntington National Bank as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by The Huntington National Bank during the course of your relationship with The Huntington National Bank.

# MODEL1

(FKA Creative Bus Sales, Inc.)

**INVOICE**

**Please Remit Payment To:**
Model 1 Commercial Vehicles, Inc.
PO Box 713176
Chicago, IL 60677-0376
model1.com

ELECTRONIC PAYMENTS: PNC Bank - A~~~~~~~~~~~~~~~
**INCLUDE LAST 8 DIGITS OF VIN ON PAYMENT REMITTANCE**
Please call (463) 222-9050 to request further instructions.

| BILL TO | CUSTOMER # | | SOLD TO | CUSTOMER # |
|---|---|---|---|---|
| R2 Marketing & Consulting, LLC | | | R2 Marketing & Consulting, LLC | |
| 530 Technology Dr, #104 | | | 530 Technology Dr, #104 | |
| IRVINE, CA 92618 | | | IRVINE, CA 92618 | |
| P: (949) 266-7873 | | | P: (949) 266-7873 | |

**INVOICE: VA101002938**

| CUST PO | INVOICE DATE | DELIVERY DATE | SALESPERSON | TERMS |
|---|---|---|---|---|
| | 2/28/2024 | | AArnold | NET UPON RECEIPT |

**NEW**

| YR - MAKE - MODEL | VEHICLE IDENTIFICATION NUMBER | UNIT#: 1710926 | PRICE |
|---|---|---|---|
| 2022 - BraunAbility - ProMaster | 3C6MRVUG4NE138805 | | |
| Side Entry | | | |
| | | | |
| Vehicle - Price | Vehicle - Price | | 79,990.00 |
| CADMVF | CA - DMV Electronic Filing Fee | | 33.00 |
| DMV | DMV Fee | | 1,500.00 |
| CATIRE | CA - Waste Tire Fee | | 10.50 |
| CADOC | CA - Doc Prep Fee | | 85.00 |
| PARA | Paratransit (ADA) Equipment (Non-Taxable) | | 40,000.00 |
| Cash Down | DEPOSIT | | -12,782.66 |
| | TAX | | 6,205.81 |
| | | Total Price | **$115,041.65** |

DELIVER TO: R2 Transportation Services 19800 MacArthur Blvd Suite 360 IRVINE, CA 92612

**INCLUDE LAST 8 DIGITS OF VIN ON PAYMENT REMITTANCE**

14740 Ramona Ave
Chino, CA 91710
P: (909) 203-4810
F: (909) 465-5529
TF: (888) 993-5032
model1.com

| | | |
|---|---|---|
| SALES PRICE | | $121,618.50 |
| TAX | + | $6,205.81 |
| | | $0.00 |
| TOTAL PRICE | = | $127,824.31 |
| LESS-TRADE IN(S) | - | $0.00 |
| LESS PAYMENT(S) | - | $12,782.66 |
| UNPAID BALANCE | = | **$115,041.65** |

Model 1 Corporate Address    9225 Priority Way W Drive, Suite 300, Indianapolis, IN 46240    model1.com

# MODEL1

(FKA Creative Bus Sales, Inc.)

**INVOICE**

**Please Remit Payment To:**
Model 1 Commercial Vehicles, Inc.
PO Box 713176
Chicago, IL 60677-0376
model1.com

ELECTRONIC PAYMENTS: PNC Bank - ACCT #
INCLUDE LAST 8 DIGITS OF VIN ON PAYMENT REMITTANCE
Please call (463) 222-9050 to request further instructions.

| BILL TO                CUSTOMER # | SOLD TO                CUSTOMER # |
|---|---|
| R2 Marketing & Consulting, LLC | R2 Marketing & Consulting, LLC |
| 530 Technology Dr, #104 | 530 Technology Dr, #104 |
| IRVINE, CA 92618 | IRVINE, CA 92618 |
| P: (949) 266-7873 | P: (949) 266-7873 |

**INVOICE: VA101002936**

| CUST PO | INVOICE DATE | DELIVERY DATE | SALESPERSON | TERMS |
|---|---|---|---|---|
| | 2/28/2024 | | AFreer | NET UPON RECEIPT |

**NEW**

| YR - MAKE - MODEL | VEHICLE IDENTIFICATION NUMBER | UNIT#: 1710934 | PRICE |
|---|---|---|---|
| 2022 - BraunAbility - ProMaster | 3C6MRVUG6NE138806 | | |
| Side Entry | | | |
| Vehicle - Price | Vehicle - Price | | 79,990.00 |
| CADMVF | CA - DMV Electronic Filing Fee | | 33.00 |
| DMV | DMV Fee | | 1,500.00 |
| CATIRE | CA - Waste Tire Fee | | 10.50 |
| CADOC | CA - Doc Prep Fee | | 85.00 |
| PARA | Paratransit (ADA) Equipment (Non-Taxable) | | 40,000.00 |
| Cash Down | DEPOSIT | | -12,782.67 |
| | TAX | | 6,205.81 |
| | | Total Price | **$115,041.64** |

DELIVER TO: R2 Transportation Services 19800 MacArthur Blvd Suite 360 IRVINE, CA 92612

**INCLUDE LAST 8 DIGITS OF VIN ON PAYMENT REMITTANCE**

14740 Ramona Ave
Chino, CA 91710
P: (909) 203-4810
F: (909) 465-5529
TF: (888) 993-5032
model1.com

| SALES PRICE | | $121,618.50 |
|---|---|---|
| TAX | + | $6,205.81 |
| | | $0.00 |
| TOTAL PRICE | = | $127,824.31 |
| LESS-TRADE IN(S) | - | $0.00 |
| LESS PAYMENT(S) | - | $12,782.67 |
| UNPAID BALANCE | = | **$115,041.64** |

Model 1 Corporate Address                9225 Priority Way W Drive, Suite 300, Indianapolis, IN 46240                model1.com


**MODEL 1**
(FKA Creative Bus Sales, Inc.)

**INVOICE**

**Please Remit Payment To:**
Model 1 Commercial Vehicles, Inc.
PO Box 713176
Chicago, IL 60677-0376
model1.com

ELECTRONIC PAYMENTS: PNC Bank - ACCT # XXXXXXXXX
INCLUDE LAST 8 DIGITS OF VIN ON PAYMENT REMITTANCE
Please call (463) 222-9050  to request further instructions

| BILL TO | CUSTOMER # XXXX | SOLD TO | CUSTOMER # XXXX |
|---|---|---|---|
| R2 Marketing & Consulting, LLC | | R2 Marketing & Consulting, LLC | |
| 530 Technology Dr, #104 | | 530 Technology Dr, #104 | |
| IRVINE, CA 92618 | | IRVINE, CA 92618 | |
| P: (949) 266-7873 | | P: (949) 266-7873 | |

**INVOICE: VA101002937**

| CUST PO | INVOICE DATE | DELIVERY DATE | SALESPERSON | TERMS |
|---|---|---|---|---|
| | 2/28/2024 | | AFreer | NET UPON RECEIPT |

**NEW**

| YR - MAKE - MODEL | VEHICLE IDENTIFICATION NUMBER | UNIT#: 1715032 | PRICE |
|---|---|---|---|
| **2023 - BraunAbility - ProMaster** Side Entry | 3C6MRVUG6PE527643 | | |
| Vehicle - Price | Vehicle - Price | | 79,990.00 |
| CADMVF | CA - DMV Electronic Filing Fee | | 33.00 |
| DMV | DMV Fee | | 1,500.00 |
| CATIRE | CA - Waste Tire Fee | | 10.50 |
| CADOC | CA - Doc Prep Fee | | 85.00 |
| PARA | Paratransit (ADA) Equipment (Non-Taxable) | | 40,000.00 |
| Cash Down | DEPOSIT | | -12,782.66 |
| | TAX | | 6,205.81 |
| | | Total Price | $115,041.65 |

DELIVER TO: R2 Transportation Services 19800 MacArthur Blvd Suite 360 IRVINE, CA 92612

**INCLUDE LAST 8 DIGITS OF VIN ON PAYMENT REMITTANCE**

14740 Ramona Ave
Chino, CA 91710
P: (909) 203-4810
F: (909) 465-5529
TF: (888) 993-5032
model1.com

| SALES PRICE | | $121,618.50 |
|---|---|---|
| TAX | + | $6,205.81 |
| | | $0.00 |
| TOTAL PRICE | = | $127,824.31 |
| LESS-TRADE IN(S) | - | $0.00 |
| LESS PAYMENT(S) | - | $12,782.66 |
| UNPAID BALANCE | = | $115,041.65 |

Model 1 Corporate Address                9225 Priority Way W Drive, Suite 300, Indianapolis, IN 46240                model1.com



# INVOICE

| | |
|---|---|
| Invoice # | RMC31224 |
| Date: | 3/12/2024 |

**Bill To:**

The Huntington National Bank
11100 Wayzata Blvd, Suite 801
Minnetonka, MN 55305

**Ship To:**

The Huntington National Bank
11100 Wayzata Blvd, Suite 801
Minnetonka, MN 55305

| Quantity | Ordered | Cust # | PO # | Ship Date | Terms |
|---|---|---|---|---|---|
| 1 | | | | | Due Upon Receipt |

| Unit # | Item Description | Price |
|---|---|---|
| | R2 Marketing & Consulting, LLC | |
| | Referral Fee | $20,546.00 |

| | |
|---|---|
| **Total Price per Unit** | **$20,546.00** |
| **Doc Prep Fee (taxable)** | **$0.00** |
| **Sales Tax** | **$0.00** |
| **Est. DMV Fees per Unit** | **$0.00** |
| **DMV Electronic Filing Fee** | **$0.00** |
| **California Tire Fee** | **$0.00** |
| **Delivery Fee** | **$0.00** |
| **Total Invoice Per Unit** | **$20,546.00** |
| **Quantity** | **1** |
| **Total Invoice Amount** | **$20,546.00** |
| **Less Credits:** | |
| **Trade In Vehicle** | **$0.00** |
| **Deposit Received** | **$0.00** |

| | |
|---|---|
| Taxable Amount | $0.00 |
| Sales Tax Rate | 0.000% |
| Tax Per Unit | $0.00 |

| **AMOUNT DUE:** | **$20,546.00** |
|---|---|

**Remit Payment To:**
**Model 1 Commercial Vehicles, Inc.**
**PO Box 713176**
**Chicago, IL 60677-0376**

Phone: (463) 234-9400

**ACH: PNC Bank - ACCT #: ~~xxxxxxxxx~~ - ABA #: ~~xxxxxxxxx~~**

# EXHIBIT B

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Huntington National Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | 003-0805761-500 | **Financed Date** | 4/8/2024 |
| **Loan Number** | | **Perfected Date** | 5/9/2024 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | R2 MKTG AND CONSULTING LLC | **Dealer ID** | |
| **Borrower 2** | | **Dealer** | |
| **Borrower Address** | 530 TECHNOLOGY DRIVE 104 IRVINE, CA 92618 | **Dealer Address** | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | FWS |
| **Lienholder** | HUNTINGTON NATL BK |
| **Lienholder Address** | 5555 CLEVELAND AVE COLUMBUS, OH 43231 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 3C6MRVUG4NE138805 | **Issuance Date** | 4/17/2024 |
| **Title Number** | | **Received Date** | 4/19/2024 |
| **Title State** | CA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2022 | **Odometer Reading** | 49 03/28/2024 |
| **Make** | BRAU | **Branding** | |
| **Model** | | | |
| **Owner 1** | R2 MKTG AND CONSULTING LLC | | |
| **Owner 2** | | | |
| **Owner Address** | 530 TECHNOLOGY DRIVE 104 IRVINE, CA 92618 | | |

**Printed:** Wednesday, September 11, 2024 8:05:05 AM PST

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Huntington National Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | 003-0805761-500 | **Financed Date** | 4/28/2024 |
| **Loan Number** | | **Perfected Date** | 5/9/2024 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | R2 MKTG AND CONSULTING LLC | **Dealer ID** | |
| **Borrower 2** | | **Dealer** | |
| **Borrower Address** | 530 TECHNOLOGY DRIVE 104 | **Dealer Address** | |
| | IRVINE, CA 92618 | | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | FWS |
| **Lienholder** | HUNTINGTON NATL BK |
| **Lienholder Address** | 5555 CLEVELAND AVE |
| | COLUMBUS, OH 43231 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 3C6MRVUG6NE138806 | **Issuance Date** | 4/17/2024 |
| **Title Number** | | **Received Date** | 4/19/2024 |
| **Title State** | CA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2022 | **Odometer Reading** | 330 03/28/2024 |
| **Make** | BRAU | **Branding** | |
| **Model** | | | |
| **Owner 1** | R2 MKTG AND CONSULTING LLC | | |
| **Owner 2** | | | |
| **Owner Address** | 530 TECHNOLOGY DRIVE 104 | | |
| | IRVINE, CA 92618 | | |

**Printed:** Wednesday, September 11, 2024 8:05:55 AM PST

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Huntington National Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | 003-0805761-500 | **Financed Date** | 4/28/2024 |
| **Loan Number** | | **Perfected Date** | 5/9/2024 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | R2 MKTG AND CONSULTING LLC | **Dealer ID** | |
| **Borrower 2** | | **Dealer** | |
| **Borrower Address** | 530 TECHNOLOGY DRIVE 104 | **Dealer Address** | |
| | IRVINE, CA 92618 | | |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | FWS |
| **Lienholder** | HUNTINGTON NATL BK |
| **Lienholder Address** | 5555 CLEVELAND AVE |
| | COLUMBUS, OH 43231 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 3C6MRVUG6PE527643 | **Issuance Date** | 4/17/2024 |
| **Title Number** | | **Received Date** | 4/19/2024 |
| **Title State** | CA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2023 | **Odometer Reading** | 54 03/28/2024 |
| **Make** | BRAU | **Branding** | |
| **Model** | | | |
| **Owner 1** | R2 MKTG AND CONSULTING LLC | | |
| **Owner 2** | | | |
| **Owner Address** | 530 TECHNOLOGY DRIVE 104 | | |
| | IRVINE, CA 92618 | | |

**Printed:** Wednesday, September 11, 2024 8:06:31 AM PST

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 28, 2025  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Brian S Healy     brian@tw2law.com
Garry A Masterson     BnkEcf-CA@weltman.com, gmasterson@weltman.com
Kenneth Misken     Kenneth.M.Misken@usdoj.gov
Michael R Totaro     Ocbkatty@aol.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

[x]  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) March 28, 2025  served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

R2 Marketing & Consulting, LLC.
19800 MacArthur Boulevard #300
Irvine, CA 92612

[x]  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

[ ]  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 28, 2025 | Sul Lee | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.