Andy C. Warshaw, CA SBN No. 263880
Direct Phone: (949) 345-1455
Email: andy@dimarcowarshaw.com
**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674

General Bankruptcy Counsel
for the Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In Re | Case No.: 8:25-bk-10631-SC |
| R2 Marketing and Consulting, LLC, | Chapter 11 |
| Debtor in Possession. | **CONFIRMATION BRIEF FOR DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION WITH BALLOT SUMMARY** |
| | **Plan Confirmation Hearing** <br> Date: October 29, 2025 <br> Time: 1:30 p.m. <br> Place: U.S. Bankruptcy Court <br> Ronald Reagan Federal Building <br> 411 W. Fourth Street <br> Santa Ana, CA 92701 <br> Courtroom: 5C in person or via Zoom/Gov |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

R2 Marketing and Consulting, LLC, the debtor and debtor in possession ("Debtor"), submits this CONFIRMATION BRIEF FOR DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION WITH BALLOT SUMMARY ("Motion") relating to Debtor's Chapter 11 Plan of Reorganization ("Plan") that was filed on August 18, 2025, as ECF No. 51.

## I.      Introduction

Debtor filed for Chapter 11 bankruptcy protection on May 20, 2025 ("Petition Date"). Debtor continues to manage affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A summary of certain docket events is summarized below:

| Date | Docket No. | Event |
|------|-----------|-------|
| March 12, 2025 | 1 | Chapter 11 Voluntary Petition Filed |
| May 07, 2025 | 93 | March 2025 Monthly Operating Report Filed |
| May 21, 2025 | 125 | MFRS by American National Bank – Granted by Stipulation |
| May 21, 2025 | 126 | Scheduling Order – Plan and Claims Deadlines Set |
| May 23, 2025 | 138 | Order Authorizing Use of Cash Collateral (Final Hearing 8/20) |
| June 04, 2025 | 175 | MFRS by First Citizens Bank (4 Chrysler Voyagers) – Resolved |
| June 04, 2025 | 176 | MFRS by First Citizens Bank (2021 Voyager) – Resolved |
| June 18, 2025 | 185 | MFRS by Santander (Voyager) – Granted |
| June 18, 2025 | 186 | MFRS by IWG (530 Technology Dr) – Granted |
| June 18, 2025 | 187 | MFRS by IWG (19800 MacArthur) – Continued to 7/16/2025 |
| July 07, 2025 | 201 | Order Granting MFRS to Santander (2023 Voyager) |
| July 10, 2025 | 203 | Motion to Assume Lease Filed |
| July 18, 2025 | 206 | MFRS Filed – 2019 Dodge Caravan (Santander) |
| July 18, 2025 | 207 | MFRS Filed – 2023 Chrysler Voyager (Santander) |
| July 18, 2025 | 208 | June 2025 Monthly Operating Report Filed |
| July 23, 2025 | 211 | MFRS Filed – Receivables (InstaFunding) |
| July 23, 2025 | 212 | Fee Application Filed – Penny Fox CPA ($36,809.50) |
| July 23, 2025 | 214 | Fee Application Filed – Andy Warshaw ($56,938.25) |
| July 23, 2025 | 216 | Status Report Filed by Ford (Doc. 166) |
| July 29, 2025 | 221 | Order Granting Motion to Assume Lease (Doc. 203) |
| August 05, 2025 | 224 | Stipulation for Adequate Protection – IWG |
| August 05, 2025 | 226 | Order Granting MFRS – IWG (19800 MacArthur, Doc. 129) |
| August 13, 2025 | 232 | July 2025 Monthly Operating Report Filed |
| August 13, 2025 | 235 | Declaration re: Postpetition Payment Cure (Doc. 229) |
| August 13, 2025 | 236 | Joint Status Report – Ford MFRS (Docs. 166 and 188) |
| August 19, 2025 | 243 | Order Granting MFRS – Ford (Doc. 166) – Hearing Vacated |
| August 19, 2025 | 244 | Order Granting MFRS – Ford (Doc. 188) – Hearing Vacated |
| August 20, 2025 | 245 | Stipulation by Santander Consumer USA Inc. dba Chrysler Capital for Adequate Protection re: § 362 Stay (Dkt. No. 207). |
| August 21, 2025 | 247 | Order Granting Motion Authorizing Use Of Cash Collateral (Doc 80). |
| August 21, 2025 | 248 | Order Granting Motion for Relief from Stay (2019 Caravan) (Doc 206). |
| August 27, 2025 | 260 | Order Granting Motion for Relief from Stay (Chrysler Voyager, Doc 207) - Settled by Stipulation. |
| August 28, 2025 | 261 | Order Denying Motion for Relief from Stay (InstaFunding Receivables, Doc 211) - Without Prejudice. |
| September 5, 2025 | 265 | Chapter 11 Plan of Reorganization filed by Debtor. |
| September 10, 2025 | 270 | Order on Application for Interim Fees (Penny Fox) - Fees Awarded $36,809.50. |
| September 19, 2025 | 272 | Declaration re: Revised Billing Statements (Doc 269). |
| September 22, 2025 | 273 | MOR for period ending 08/31/2025 filed by Debtor. |

| August 20, 2025 | 245 | Stipulation by Santander Consumer USA Inc. dba Chrysler Capital for Adequate Protection re: Â§ 362 Stay (Dkt. No. 207). |
| August 21, 2025 | 247 | Order Granting Motion Authorizing Use Of Cash Collateral (Doc 80). |
| August 21, 2025 | 248 | Order Granting Motion for Relief from Stay (2019 Caravan) (Doc 206). |

Debtor's Plan is an operating, pot plan for the benefit of creditors of the bankruptcy estate. The Plan provides for thirty-six quarterly distributions totaling $213,579.56. A projected disbursement schedule is provided as Exhibit 4 of the Plan.

**II.      The Plan Satisfies the Elements of 11 U.S.C. §1129 and Should be Confirmed**

      **a.  The Debtor's Plan Complies with Applicable Provisions of Chapter 11 (§1129(a)(1))**

Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if "[t]he plan complies with the applicable provisions of this title."  11 U.S.C. §1129(a)(1). The Plan satisfies the elements of Section 1129 and the interwoven requirements of Sections 1122 and 1123 as provided in this Motion.

**B.  Classification of Claims and Interests Under 11 U.S.C. § 1122**

Section 1122 of the Bankruptcy Code provides:

**(a)** Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

**(b)** A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Debtor's Plan separates creditors into classes that are illustrated below in **Chart 1**.

| Chart 1 | |
|---|---|
| **Type of claim** | Classification |
| Unclassified Claims | Certain types of claims are not placed into voting classes; instead, they are unclassified.  They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment |

|  | provided for them in the Bankruptcy Code. These claims include Debtor's bankruptcy counsel, Debtor's CPA, the Office of the United States Trustee, the IRS, and the California Franchise Tax Board. |
|---|---|
| Class 1- Unimpaired, Secured Claims | Unimpaired, secured claims do not exist in this case and the class indicates that there are none. |
| Class 2-A- Impaired, Secured Claims | Impaired, secured claim of the U.S. Small Business Administration |
| Class 2-B- Impaired, Secured Claims | Impaired, secured claim of Santander Consumer USA Inc. |
| Class 2-C- Impaired, Secured Claims | Impaired, secured claim of Santander Consumer USA Inc. and American National Bank |
| Class 2-D- Impaired, Secured Claims | Impaired, secured claim of American National Bank |
| Class 2-E- Impaired, Secured Claims | Impaired, secured claim of American National Bank |
| Class 2-F- Impaired, Secured Claims | Impaired, secured claim of American National Bank |
| Class 2-G- Impaired, Secured Claims | Impaired, secured claim of Santander Consumer USA Inc. |
| Class 2-H- Impaired, Secured Claims | Impaired, secured claim of Santander Consumer USA Inc. |
| Class 2-I- Impaired, Secured Claims | Impaired, secured claim of Ally Bank |
| Class 2-J- Impaired, Secured Claims | Impaired, secured claim of American National Bank |
| Class 2-K- Impaired, Secured Claims | Impaired, secured claim of Ally Bank |
| Class 2-L- Impaired, Secured Claims | Impaired, secured claim of American National Bank |
| Class 2-M- Impaired, Secured Claims | Impaired, secured claim of American National Bank |
| Class 2-N- Impaired, Secured Claims | Impaired, secured claim of Ally Bank |
| Class 2-O- Impaired, Secured Claims | Impaired, secured claim of Ally Bank |

| Class 2-P-Impaired, Secured Claims | Impaired, secured claim of Ally Bank |
|---|---|
| Class 2-Q-Impaired, Secured Claims | Impaired, secured claim of Santander Consumer USA Inc. |
| Class 2-R-Impaired, Secured Claims | Impaired, secured claim of Santander Consumer USA Inc. |
| Class 2-S-Impaired, Secured Claims | Impaired, secured claim of Ford Motor Credit Company LLC |
| Class 2-T-Impaired, Secured Claims | Impaired, secured claim of Ford Motor Credit Company LLC |
| Class 2-U-Impaired, Secured Claims | Impaired, secured claim of CIT Bank |
| Class 2-V-Impaired, Secured Claims | Impaired, secured claim of The Huntington National Bank |
| Class 3 | All general unsecured claims that are not administrative convenience claims or are otherwise contingent or unliquidated are treated in Class 3 |
| Class 4 | This class consists of leases and executory contracts, primarily those of Regus Management Group LLC. |
| Class 5 | This class consists of interest holds of Debtor. |
| Class 6 | This class is for unfiled claims subject to discharge that were originally listed as disputed, contingent, or unliquidated. |

Each unsecured creditor is classified in the same class while the sole secured claim is in its own class. The classification set forth in the Plan allows each class of impaired creditors the opportunity to cast meaningful votes on Debtor's Plan, satisfying the basic purposes of classification under section 1122 of the Bankruptcy Code.

**C. Contents of the Plan Under 11 U.S.C. § 1123**

Section 1123(a) of the Bankruptcy Code identifies requirements for the contents of a plan of reorganization. Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (administrative expense claims), section 507(a)(3) of the Bankruptcy Code (claims arising during the "gap" period in an involuntary bankruptcy case), and section 507(a)(8) of the Bankruptcy Code (priority tax claims). 11 U.S.C. § 1123(a)(1).

The Plan complies with this requirement by expressly classifying all claims and equity interests, other than administrative claims and priority tax claims.

Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan."  The Plan describes how each class and specific claim is treated. Each class in the Plan indicates whether the claim is impaired or unimpaired.  For example, the classification in Class 1 indicates that it is unimpaired while Classes 2 and 3 indicate that they are impaired classes.

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan."  The Plan provides a plan treatment column for each class. The Plan includes section on voting with a title, "Who May Vote or Object to Confirmation of the Plan."  There is a chart below the title with a summary of impairment and voting rights, as follows:

| Class | Impairment | Claim or Creditor | Class Voting Right |
|---|---|---|---|
| Unclassified | No | Unsecured Priority Tax Claims of Governmental Entities | No |
| 1 | - | - | - |
| 2A | Yes | U.S. Small Business Administration | Yes |
| 2B | Yes | Santander Consumer USA Inc. | Yes |
| 2C | Yes | Santander Consumer USA Inc. and American National Bank | Yes |
| 2D | Yes | American National Bank | Yes |
| 2E | Yes | American National Bank | Yes |
| 2F | Yes | American National Bank | Yes |
| 2G | Yes | Santander Consumer USA Inc. | Yes |
| 2H | Yes | Santander Consumer USA Inc. | Yes |
| 2I | Yes | Ally Bank | Yes |
| 2J | Yes | American National Bank | Yes |
| 2K | Yes | Ally Bank | Yes |
| 2L | Yes | American National Bank | Yes |
| 2M | Yes | American National Bank | Yes |
| 2N | Yes | Ally Bank | Yes |
| 2O | Yes | Ally Bank | Yes |
| 2P | Yes | Ally Bank | Yes |
| 2Q | Yes | Santander Consumer USA Inc. | Yes |
| 2R | Yes | Santander Consumer USA Inc. | Yes |
| 2S | Yes | Ford Motor Credit Company LLC | Yes |
| 2T | Yes | Ford Motor Credit Company LLC | Yes |
| 2U | Yes | CIT Bank | Yes |
| 2V | Yes | The Huntington National Bank | Yes |

| 3 | Yes | General Unsecured | Yes |
|---|-----|------------------|-----|
| 4 | Yes | Lease Assumptions | Yes |
| 5 | - | Interest Holder | - |
| 6 | Yes | Disputed, Contingent, and Unliquidated Claims | No |

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provides the same treatment for each claim or interest of a particular class." The Plan provides that the U.S. Small Business Administration is in its own secured class while general unsecured creditors are placed in the same class. Each general unsecured claim receives the same pro-rata distribution from the pot Plan.

Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provides "adequate means" for implementation. 11 U.S.C. § 1123(a)(5). Adequate means for implementation of a plan may include retention by the debtor of all or part of its property; the transfer of property of the estate to one or more entities; cancelation or modification of any indenture; curing or waiving of any default; extension of a maturity date or change in an interest rate or other term of outstanding securities; amendment of the Debtors' charter; or the issuance of securities in exchange for cash, property, or existing securities, all in exchange for claims or interests or for any other appropriate purpose. *See* generally *In re Spiegel, Inc.,* No. 03-11540 (BRL), 2005 WL 1278094, at 5 (Bankr. S.D.N.Y. May 25, 2005).

The Plan includes several applicable sections, including the Effective Date, the disbursing agent, post-confirmation management, Debtor's ability to close the case with an interim decree, a section on employing professionals post-confirmation, a section about modifying the Plan, a section about revesting of property, and a section about conversion or dismissal

Section 1123(a)(6) does not apply because Debtor is not subject to a charter.

Section 1123(a)(7) requires that the Plan be consistent with public policy and the interests of creditors. Public policy dictates supporting the rehabilitation of this Debtor, maintaining its presence as a stone retailer in Fountain Valley, continuing employing people and impacting the economy with the purchase and sale of materials and goods. The alternative, conversion or dismissal, leads to the demise of the entity, and eliminates any return to creditors.

The Plan pledges all of Debtor's projected disposable income which also meets the requirements of Section 1123(a)(8) that requires an individual to provide for the payment of future earnings for the execution of the Plan.

### b. Debtor Complied with Applicable Provisions of Title 11 (§1129(a)(2))

Section 1129(a)(2) requires that "[t]he proponent of the plan complies with the applicable provisions of this title." A court in the Ninth Circuit emphasized that §1129(a)(2) is satisfied where the debtor has adhered to the procedural framework of Title 11. See, e.g., *In re Bashas' Inc.*, 437 B.R. 874, 906 (Bankr. D. Ariz. 2010). The *In re Bashas' Inc* court provided that, "The section requires that the plan and plan proponent (here, the Debtors) have complied with applicable bankruptcy law. This means that the law has been followed throughout the administrative portion of the case, appropriate fees and reports have been tendered, that the court and creditors have been privy to financial information, that in all respects a debtor has been transparent and candid in its communications, and that it has materially complied with the substantive bankruptcy statutes and rules. *In re Bashas' Inc*., 437 B.R. 874, 904 (Bkrtcy.D.Ariz., 2010)

Here, Debtor complied with all applicable provisions of Title 11, including but not limited to:

Timely Filing of the Plan: Debtor filed its Plan within the 120-day deadline exclusivity period imposed by §1121(b).

Disclosure Requirements: Debtor's Plan includes the disclosures required under §1125, including a brief history of operations, a liquidation analysis, and financial projections demonstrating feasibility.

Solicitation and Notice: Debtor provided adequate notice of the plan and confirmation hearing pursuant to Bankruptcy Rule 2002 and local rules. The Plan includes a proof of service with mail notice to the entire mailing matrix plus NEF notice.

Compliance with Reporting Obligations: Debtor filed all required schedules, statements, and monthly operating reports, and has cooperated with the U.S. Trustee's Office throughout the case.

### c. Debtor's Plan is Proposed in Good Faith (§1129(a)(3))

Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law.  A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code. *Ryan v. Loui* (*In re Corey* ), 892 F.2d 829, 835 (9th Cir.1989); *see also, Madison Hotel,* 749 F.2d at 425 ("[F]or purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."). The requisite good faith determination is based on the totality of the circumstances. *Stolrow v. Stolrow's, Inc.* (*In re Stolrow's, Inc.),* 84 B.R. 167, 172 (9th Cir.BAP 1988). *In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (C.A.9,2002).*

Debtor's Plan was submitted in good faith and includes evidence and supporting exhibits as follows:

| Exhibit Number | Description |
|---|---|
| 1 | Declaration of Ryan Morris |
| 2 | Projected Income and Expenses |
| 3 | Claims Against the Bankruptcy Estate |
| 4 | Projected Disbursement Schedule |
| 5 | Ballot |
| 6 | Scheduling Order |
| 7 | Definitions |
| 8 | Liquidation Analysis |

The Plan is designed to preserve Debtor's business operations, maximize recoveries for creditors, and comply with the objectives of Chapter 11.  It reflects a legitimate effort to reorganize. Debtor provided full financial disclosures under §1125, including historical performance, liquidation analysis, and projections.

The Plan treats similarly situated creditors equitably and does not engage in unfair discrimination. Impaired classes receive claim treatment consistent with the requirements of §1129(b). There is no evidence of fraud, manipulation, or abuse of the bankruptcy process with no

objections to anything Debtor has done to date and with the deadline to object to Debtor's discharge already passing on August 8, 2025.

### d. Debtor's Plan Provides for Court Supervision of Compensation of Professionals (§1129(a)(4))

Section 1129(a)(4) of the Bankruptcy Code requires that all fees promised or received from the estate in connection with or in contemplation of a chapter 11 case must be disclosed and subject to the court's review.   The Plan, on pages 7-9, addresses administrative expenses.   The Plan provides that the fees are subject to court approval before payment.

### e. Debtor's Plan Discloses the Identity of All Post Confirmation Management (§1129)(a)(5))

Section 1129(a)(5) of the Bankruptcy Code provides that a plan of reorganization may be confirmed if the proponent discloses the identity of those individuals who will serve as management of the reorganized debtor, the identify of any insider to be employed or retained by the reorganized debtor and the compensation proposed to be paid to such insider.

The Plan provides a discussion of Post-Confirmation Management starting on page 19. Debtor shall remain in possession and perform all functions necessary to consummate the Plan.

### f. Debtor Is Not Subject to any Regulatory Commission (§1129(a)(6))

Section 1129(a)(6) of the Bankruptcy Code requires that the appropriate regulatory commission must approve any changes in the rates provided in the plan. This provision applies where a debtor is subject to post-confirmation rate regulation by a governmental authority, typically in industries such as utilities, telecommunications, or transportation. This is inapplicable here. Debtor is not subject to any governmental regulatory commission with authority over its pricing or rates. The Plan does not propose any rate changes requiring regulatory approval, nor does the Debtor operate in a regulated industry.

### g. Debtor's Plan Meets the Best Interest Test (§1129(a)(7))

The best interests of creditors test, as set forth in section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or

interest has accepted the plan or will receive property of a value not less than what such holder would receive if the debtor were liquidated under chapter 7.

The Plan dedicates an exhibit to the liquidation analysis, which goes through each asset and exemption. The summary provides that nothing would be available to the general unsecured class in a Chapter 7 while Debtor's Plan provides $110,000 to the general unsecured class.

**h. Acceptance of Plan by Creditors and Interest Holders (§1129(a)(8))**

Section 1129(a)(8) generally requires that each impaired class of claims or interests accept the plan.  A summary of ballots received by Debtor from claims eligible to vote is provided in Chart B.

| Chart B | | | | |
|---|---|---|---|---|
| | Accepting | | Rejecting | |
| Class | Number of Ballots Received | Amount Per Ballot / Amount per Proof of Claim | Number of Ballots Received | Amount Per Ballot / Amount per Proof of Claim |
| Class 2-**I**-Impaired, Secured Claims | 0 | $0 / $0 | 1[1] | $60,511.53 / $60,511.53 |
| Class 2-**V**-Impaired, Secured Claims | 1[2] | $441,634.40 / $441,634.40 | 0 | $0 / $0 |

**i.  Debtor's Plan Properly Treats Claims in sections 507(a)(1) and 507(a)(4) through (7) (§1129(a)(9))**

Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in sections 507(a)(1) and 507(a)(4) through (7) of the Bankruptcy Code – generally, wage, employee benefit and deposit claims entitled to priority – must receive deferred cash payments of a value equal to the allowed amount of such claim or cash equal to the allowed amount of such claim

---

[1] Debtor is currently in the process of amending the plan to either provide for creditor Ally Bank's claims and obtain a ballot in support or to surrender collateral to Ally Bank which will remove Ally Bank from one or more secured voting classes.  Debtor's potential surrender of collateral reflects that certain vehicles in Debtor's fleet secured by Ally Bank's claims are aging and with increased future maintenance cost may not warrant retention in the fleet.  Releasing these vehicles will reduce certain costs and improve long-term feasibility of operations and fiscal responsibility.

[2] Creditor The Huntington National Bank submitted a conditional ballot accepting the Plan based on terms Debtor shall amend the plan to provide for.

on the effective date of the plan, depending upon whether the class has accepted the plan. *See* 11 U.S.C. §1129(a)(9)(B).  There are no claims of this type in this case.

Section 1129(a)(9)(C) provides that the holder of a claim of a specified in section 507(a)(8) of the Bankruptcy Code –i.e. priority tax claims – must receive deferred cash payments over a period not to exceed five years after the petition date, the present value of which equals the allowed amount of the claim.  *See* 11 U.S.C. § 1129(a)(9)(C).  Here, the Franchise Tax Board ("FTB") and the Employment Development Department ("EDD") are scheduled to be paid over five years during the term of the plan and receiving statutory interest on their priority claims.  The Internal Revenue Service's ("IRS") proof of claim no. 2 was recently partially amended but remains in need of further amendment by the IRS as it does not appear to take into account an amended 2023 corporate income tax return and lists numerous estimated amounts for tax claims that may be reduced or eliminated entirely upon submission of audit findings by the Debtor's CPA employed in the case Penny M. Fox.[3]  Once Debtor is able to verify a finalized IRS claim, Debtor shall amend the Plan to provide for this amount over the five year term with statutory interest on priority amounts owed, unless the IRS affirmatively agrees otherwise to a longer term.

While the CPA's work is still in progress, attached as Exhibit C as a Declaration in support by CPA Penny M. Fox accompanied by sub-exhibits of 2025 Q4 Cash Flow Projection and an internal work product copy of an Estimate of Revised Proofs of Claim tracking sheet.

### j.   Acceptance by Impaired Class (§1129(a)(10))

Section 1129(a)(10) ordinarily requires that at least one impaired class of claims accept the plan, excluding insider votes.

Here, Debtor has the tentative support of the largest non-governmental secured creditor in the case, The Huntington National Bank who has submitted a conditional ballot based on Debtor's commitment to amend the Plan.  *See* fn.2.

---

[3] The 2023 corporate income tax assessment and estimated taxes and interest subject to reduction total $1,148,364.59. Of this total, $811,829 is currently assessed as income tax while Debtor amended 2023 corporate income tax return recalculates this amount to $381,918.

### k.  Debtor's Plan is Feasible (§1129(a)(11))

Section 1129(a)(11) requires that the Court find that "confirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of Debtor…"  To demonstrate that a plan is feasible, a debtor need only show a reasonable probability of success. *Acequia,* 787 F.2d at 1364. The Code does not require the debtor to prove that success is inevitable, *In re WCI Cable, Inc.,* 282 B.R. 457, 486 (Bankr.D.Or.2002), and a relatively low threshold of proof will satisfy § 1129(a)(11), *In re Sagewood Manor Assocs. Ltd.,* 223 B.R. 756, 762 (Bankr.D.Nev.1998), so long as adequate evidence supports a finding of feasibility. *See In re Pizza of Hawaii, Inc.,* 761 F.2d at 1382 *192 (reversing where feasibility determination excluded consideration of major claim). In re Brotby*, 303 B.R. 177, 191–92 (B.A.P. 9th Cir. 2003).

Debtor's ability to fund the Plan is provided is analyzed in <u>Exhibit 2</u> of the Plan with claims provided in <u>Exhibit 3</u> and a disbursement schedule in <u>Exhibit 4</u>.  <u>Exhibit 2</u> provides a summary of calculations, including growth rate projections and how data was analyzed for projection purposes.

### l.  U.S. Trustee Fees (§1129(a)(12))

Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of the plan, be paid or that provisions be made for their payment. 11 U.S.C. § 1129(a)(12).

All fees payable under 28 U.S.C. §1930 have been paid to date and will be paid in full for any subsequent administrative claims, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

### m.  Debtor Has No Obligations for Retiree Benefits (§1129(a)(13))

Section 1129(a)(13) requires that a plan provides for the continued payment of all retiree benefits for the duration of the period that the Debtor has obligated itself to provide such benefits. Debtor does not have any obligations for retiree benefits as defined in §1114 of the Bankruptcy Code. Therefore, §1129(a)(13) does not apply.

**n. Debtor Is Not Required by a Judicial or Administrative Order, or by Statute, to Pay a Domestic Support Obligation (§1129(a)(14))**

Section 1129(a)(14) of the Bankruptcy Code provides that:

If the debtor is required by a judicial or administrative order or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. §1129(a)(14).

Debtor does not owe any court ordered, or non-court ordered, domestic support payments.

**o. Debtor's Plan Pays Projected Disposable Income for Twenty Quarters (§1129(a)(15))**

Section 1129(a)(15) of the Bankruptcy Code provides that:

a) The value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or b) The value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15)

As shown in Exhibits 2, 3, and 4 of the Plan, Debtor's projected disposable income for the next five years will be disbursed to creditors.

**p. Transfers of Property Under Plan Will be Made in Accordance with Non-Bankruptcy Law (§1129(a)(16))**

11 U.S.C. § 1129(a)(16) requires that transfers made under the plan be in accordance with nonbankruptcy law. The only transfer of property in the Plan is the quarterly disbursements to creditors as provided in Exhibit 4 of the Plan.

**q.  The Plan Satisfies the "Cramdown" Requirements of 11 U.S.C. 1129(b)**

Because not all impaired classes have accepted the Plan, confirmation must proceed under the nonconsensual confirmation provisions of 11 U.S.C. § 1129(b).  The Plan satisfies all applicable criteria and once amended will be confirmable as follows:

*A.  At Least One Impaired Class Will Have Accepted the Amended Plan (§ 1129(a)(10))*

Creditor The Huntington National Bank's conditional ballot indicates it will accept the plan once the requested terms are provided for.  Additionally, Debtor expects to obtain the support of Ally Bank should Debtor decide to retain Ally Bank's collateral and provide for Ally Bank's requested terms that are currently being negotiated.  This will result in the only two currently voting impaired creditors in the case both accepting estimated Amended Plan.

*B.  The Plan Does Not Discriminate Unfairly (And Neither Will The Amended Plan)*

Section 1129(b)(1) requires that the Plan "does not discriminate unfairly" against any dissenting impaired class. Courts assess unfair discrimination by comparing the treatment of similarly situated creditors and evaluating whether any disparity is supported by a legitimate reorganization purpose. See *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 859 (Bankr. S.D. Tex. 2001).

Here, the Plan classifies claims based on their legal rights and priorities under the Bankruptcy Code. The treatment of Class 3 is proportionate and justified by the debtor's cash flow constraints. No similarly situated class receives materially better treatment. Accordingly, the Plan does not discriminate unfairly.

*C.  The Plan  Is (And The Amended Plan Shall Be) Fair and Equitable with Respect to Each Dissenting Impaired Class (§ 1129(b)(2)))*

Regarding each class that has not accepted the Plan:

*1.* Secured Claims: The Plan provides for retention of liens and deferred cash payments with present value equal to the allowed amount of the claim, or otherwise provides the indubitable equivalent. (§ 1129(b)(2)(A)).

*2.* Unsecured Claims: No junior class receives or retains any property under the Plan unless and until allowed unsecured claims are paid in full in order to comply with the absolute priority rule. (§ 1129(b)(2)(B)).  As indicated in the Plan, Debtor in this case submits it will provide new value in order to receive an exception from § 1129(b)(2)(B). *See* pages 36 to 38 of ECF No. 265.

*3.* Equity Interests: No junior interest receives or retains any property unless senior interests are satisfied in accordance with the Bankruptcy Code. (§ 1129(b)(2)(C)).

## III.    EVIDENCE IN SUPPORT OF MOTION

The following declarations and exhibits are filed as evidence to support this Motion to Confirm Plan.

Declarations: Signed under Penalty of Perjury [LBR 9013-1(i)]

☒ Exhibit A: Declaration of Debtor's Responsible Individual Ryan Morris

☒ Exhibit B: Declaration of Debtor's Counsel with Sub-Exhibits of Ballots

☒ Exhibit C: Declaration of CPA Penny M. Fox with Sub-Exhibits of Financial Analysis

## IV.    PENDING PLAN AMENDMENTS

Debtor's counsel has maintained constant contact with Debtor's creditors and following the initial filing and proposal of the Plan, has negotiated amendments to portions of the Plan to garner the support of impaired creditors.  Creditors The Huntington National Bank and Ally Bank are the only two creditors who have submitted voting ballots.  Debtor's counsel has come to agreements with each creditor that will either gain their support or treat their claim in a manner where it may be no longer impaired. *See* fn.1 and 2.

Further, Debtor shall also be amending the Plan to provide amortization terms to the SBA in an amount that complies with Congressional authorization.[4]  Lastly, finalization of the IRS' claim and amendment of the Plan to provide for it will be the final piece of the creditor puzzle that Debtor

---

[4] Debtor's original Plan proposed a re-amortization of note terms to a thirty-year term.  While the SBA is not strictly opposed to reamortization, Congressional authority sets the maturity date of all pandemic era loans to around June 2050.

must address to demonstrate confirmation is warranted.  Debtor's business operations, restructuring, and cash flow continue to improve as Debtor takes on additional service contracts and identifies areas where costs may be reduced while increasing net income without sacrificing marginal profitability.

## V.    RELIEF SOUGHT.

Based on the foregoing, the Plan includes adequate information under 11 U.S.C. § 1125(f)(1), meets the elements of 11 U.S.C. 1129(b).  The Debtor respectfully requests that the Court continue confirmation of the Plan for the remaining purpose of amendment of the Plan to at minimum provide for The Huntington National Bank, the SBA, Ally Bank, and the IRS appropriately as discussed in this brief and address any other issues that these amendments may give rise to.

Date:  October 8, 2025

/s/ Andy C. Warshaw
Attorney for the Debtor in Possession
and Plan Proponent

**Exhibit A**

Andy C. Warshaw, CA SBN No. 263880
Direct Phone: (949) 345-1455
Email: andy@dimarcowarshaw.com
**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674

General Bankruptcy Counsel
for the Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re<br><br>R2 Marketing and Consulting, LLC,<br><br>Debtor in Possession. | Case No.:  8:25-bk-10631-SC<br><br>Chapter 11<br><br>**DECLARATION OF RYAN MORRIS SUPPORTING CONFIRMATION BRIEF FOR DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION WITH BALLOT SUMMARY**<br><br>**Plan Confirmation Hearing**<br>Date: October 29, 2025<br>Time: 1:30 p.m.<br>Place: U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street<br>Santa Ana, CA 92701<br>Courtroom: 5C in person or via Zoom/Gov |

## DECLARATION OF RYAN MORRIS[1]

I, Ryan Morris, being first duly sworn, state as follows:

1.     I am over eighteen (18) years of age and live in Orange County, California.  I make this Declaration based upon the following facts, all of which are within my personal knowledge or belief.

---

[1] Any capital term otherwise undefined in this declaration shall take on the definition as described in the Debtor's Plan of Reorganization filed on September 5, 2025, as ECF No. 265.

1

As to all matters alleged regarding information and belief, I believe them to be true.  If called upon as a witness, I could and would competently testify thereto.

2.    I am the sole shareholder and owner of R2 Marketing and Consulting, LLC. ("Debtor").

3.    On March 12, 2025 (the "Petition Date"),Debtor filed the voluntary petition for relief under Chapter 11 of Title 11 of the United State Bankruptcy Code.  I signed the voluntary petition on behalf of Debtor, as its representative.

4.    Debtor filed the Chapter 11 Plan of Reorganization ("Plan") on September 5, 2025, as ECF No. 265.

5.    Debtor's Plan is an operating plan.

6.    The Plan has been proposed in good faith.

7.    I reviewed the Plan and its assertions about sources of money to satisfy claims and interests and its supporting documents and exhibits with projected income, expenses, and payments.  All information contained therein is true and correct and the information establishes that the Plan is feasible.

8.    I am informed and believe that as a part of its reorganization, Debtor must provide a "liquidation analysis," which I understand to be an inquiry as to what creditors of the Debtor would receive from the orderly liquidation of the Debtor in Chapter 7 of the bankruptcy code.  The Plan includes a liquidation analysis. All property of the bankruptcy estate, along with a liquidation analysis, are included as Exhibit 8 of the Plan.

9.    I worked with Debtor's bankruptcy counsel to prepare Debtor's budget and projections of income and expenses included as Exhibit 2 of the Plan. Based on my personal observations and with a colleague that I work with at the showroom, Debtor made assumptions for income and expenses to project what funds will be available to make Plan payments.

10.    The projections in Exhibit 2 of the Plan are my best estimate of Debtor's future income and expenses in next five years.

11.    The Plan defines the Effective Date as the first day, which is a) at least 15 days after an order confirming the Plan is entered and assuming that there is no order in effect staying the Confirmation Order; and b) is the first day of the following month after the Confirmation Order is

2

entered.

12.   The Plan requires Effective Date payments of $67,479.59 with no funds held in trust by Debtor's Counsel.

13.   The August 2025 debtor in possession bank statements for Debtor indicate that the total available cash balance as of the last day in August 2025 was $51,925.

14.   I project that Debtor's DIP account balances will increase each month until Plan confirmation.

15.   Debtor will act as the disbursing agent under the Plan.  I reviewed and understood Exhibit 4 of the Plan with how monthly installments are to be made upon the Effective Date until payments are complete.

I declare, under penalty of perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct, and I could and would testify to the contents of this declaration in a court of law.

Executed this ___8___ th day of October in the year 2025 in Orange County, CA.

Signed by: Ryan Morris

3

**Exhibit B**

Andy C. Warshaw, CA SBN No. 263880
Direct Phone: (949) 345-1455
Email: andy@dimarcowarshaw.com
**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674

General Bankruptcy Counsel
for the Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In Re<br><br>R2 Marketing and Consulting, LLC,<br><br>    Debtor in Possession. | Case No.:  8:25-bk-10631-SC<br><br>Chapter 11<br><br>**BALLOT SUMMARY DECLARATION SUPPORTING CONFIRMATION BRIEF FOR DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION WITH BALLOT SUMMARY**<br><br>**Plan Confirmation Hearing**<br>Date: October 29, 2025<br>Time: 1:30 p.m.<br>Place: U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street<br>Santa Ana, CA 92701<br>Courtroom: 5C in person or via Zoom/Gov |

I, Andy C. Warshaw, declare as follows:

1.  I am an attorney admitted to practice law in the State of California and before this Court.  I make this declaration about the ballots that my office received in the above-captioned case for Debtor's Chapter 11 Plan of Reorganization ("Plan") filed as ECF No. 265 in the case of R2 Marketing and Consulting, LLC. ("Debtor").

2.  I have personal knowledge of the matter stated herein and if called as a witness, I could and would competently testify to the following:

3.  The ballots that I received relating to Debtor's Plan are as follows:

    a.  I received an email ballot from counsel for The Huntington National Bank.  A true and correct copy of the ballot that I received from counsel for The Huntington National Bank is attached to my declaration as <u>Exhibit 1</u>.

    b.  I received an email ballot from counsel for Ally Bank. A true and correct copy of the ballot that I received from counsel for Ally Bank is attached to my declaration as <u>Exhibit 2</u>.

Executed this 7th day of October 2025 at Irvine, California

<u>/s/ Andy C. Warshaw</u>
Andy C. Warshaw

**Exhibit 1**

The Huntington National Bank ballot

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC

**Please return both pages of this ballot**

**Class [     ] Ballot for Accepting or Rejecting Plan by R2 Marketing and Consulting, LLC**

**R2 Marketing and Consulting, LLC filed a plan of reorganization (the Plan). You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class [ 2-V] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Andy C. Warshaw by email to andy@dimarcowarshaw.com or before October 1¦, 2025, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Acceptance or Rejection of the Plan**

If the voter is the holder of a secured, priority, or unsecured nonpriority claim:

The undersigned, the holder of a Class [ 2-V] claim against the Debtor in the unpaid amount of Dollars ($441,634.40)

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC

*Check one box only*

**Accepts the plan [X]** *Conditional—See Exhibit A***

**Rejects the plan  [   ]**

Dated:          9/29/2025

Print or type name:  Eudora F. S. Arthur on behalf of The Huntington National Bank

Signature: _____          Title (if corporation or partnership) _____

Address:        The Huntington National Bank C/O Eudora Arthur
                555 Fayetteville Street, Suite 1100
                Raleigh, NC 27601

**Return this ballot to:**

**Ballots will be accepted by email to andy@dimarcowarshaw.com.
Electronic transmission is the only way permitted to submit ballots.**

**Please take notice that the Court issued a scheduling order on May 21,
2025, as ECF No. 126.  Please refer to that document for additional
scheduling deadlines in this case. A copy of the order is included as
Exhibit 6 of the Plan.**

**EXHIBIT A:**

**REVISED AND RESTATED TREATMENT OF
THE HUNTINGTON NATIONAL BANK**
Case No.: 8:25-bk-10631-SC

**CLASS 2-V – THE HUNTINGTON NATIONAL BANK**

1. **Description of Debt.**  Class 2-V - Secured Claim of The Huntington Bank (Claim No. 4-1)
2. **Impairment.**            Impaired.
3. **Treatment.**             Debtor will treat this Claim as a secured obligation in the amount of $249,885.00. Huntington shall retain its lien(s) on the three (3) 2022 Ram Promaster Braun Ability Vans with the following vehicle identification numbers: 3C6MRVUG4NE138805;3C6MRVUG4NE138806; 3C6MRVUG6PE527643 with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code. Debtor proposes to begin making monthly payments on this debt beginning the month following the Effective Date over a period of 60 months with a fixed interest rate of 14.91% per annum until the secured portion of this debt is paid in full. The balance of the claim will be treated as a general unsecured debt in Class 11.

**Exhibit 2**

Ally Bank ballot

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC

**Please return both pages of this ballot**

**Class [2-I] Ballot for Accepting or Rejecting Plan by R2 Marketing and Consulting, LLC**

**R2 Marketing and Consulting, LLC filed a plan of reorganization (the Plan). You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class [ 2-I ] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Andy C. Warshaw by email to andy@dimarcowarshaw.com or before October 1, 2025, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Acceptance or Rejection of the Plan**

If the voter is the holder of a secured, priority, or unsecured nonpriority claim: The undersigned, the holder of a Class [ 2-I ]

claim against the Debtor in the unpaid amount of Dollars $60,511.53 (Proof of Claim #34)

)

Official Form 314  (02/20)                                                                                                    page 2

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC

*Check one box only*

Accepts the plan  [   ]

Rejects the plan  [ X ]

Dated:                   09/30/2025

Print or type name:   Jennifer C. Wong, Esq.,  Attorney for Ally Bank

Signature: _____   Title (if corporation or partnership) Attorney for Ally Bank

Address:        McCarthy & Holthus, LLP
                     2763 Camino Del Rio South, Suite 100

                     San Diego, CA 92108

---

Return this ballot to:

Ballots will be accepted by email to andy@dimarcowarshaw.com.
Electronic transmission is the only way permitted to submit ballots.

Please take notice that the Court issued a scheduling order on May 21, 2025, as ECF No. 126.  Please refer to that document for additional scheduling deadlines in this case. A copy of the order is included as Exhibit 6 of the Plan.

**Exhibit C**

Andy C. Warshaw, CA SBN No. 263880
Direct Phone: (949) 345-1455
Email: andy@dimarcowarshaw.com
**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674

General Bankruptcy Counsel
for the Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No.: 8:25-bk-10631-SC |
| R2 Marketing and Consulting, LLC, | Chapter 11 |
| Debtor in Possession. | **DECLARATION OF PENNY M. FOX** |
| | **Plan Confirmation Hearing**<br>Date: October 29, 2025<br>Time: 1:30 p.m.<br>Place: 411 W. Fourth St., Santa Ana, CA 92701<br>Courtroom: 5C in person or via Zoom/Gov |

I, Penny M. Fox, declare as follows:

1. I am the CPA authorized for employment by R2 Marketing and Consulting, LLC ("Debtor") before this Court.

2. I have personal knowledge of the matter stated herein and if called as a witness, I could and would competently testify to the following:

3. Attached as Exhibit 1 hereto is a 3-Month Cash Flow Projection for Debtor that I prepared.

4. Attached as Exhibit 2 hereto is an Estimate of Revised Proofs of Claim that I prepared.

Executed this ____8th day of October 2025 at Orange County, California

/s/ *Penny M. Fox*
Penny M. Fox

**Exhibit 1**

R2 Marketing & Consulting, LLC
3-Month Cash Flow Projection
October 1, 2025 - December 31, 2025

| | October | November | December | Total |
|---|---|---|---|---|
| REVENUE | $ 380,000 | $ 380,000 | $ 380,000 | $ 1,140,000 |
| | | | | |
| COST OF SALES | | | | |
| Contract Labor | 10,000 | 10,000 | 10,000 | 30,000 |
| Salaries & Wages | 45,000 | 45,000 | 45,000 | 135,000 |
| Payroll Taxes | 4,000 | 4,000 | 4,000 | 12,000 |
| Employee Benefits | 3,500 | 3,500 | 3,500 | 10,500 |
| Vehicle Fuel | 50,000 | 50,000 | 50,000 | 150,000 |
| Vehicle Rental | 600 | 600 | 600 | 1,800 |
| Vehicle Payments | 30,000 | 30,000 | 30,000 | 90,000 |
| Vehicle Repairs & Maintenance | 15,000 | 15,000 | 15,000 | 45,000 |
| Parking & Tolls | 3,800 | 3,800 | 3,800 | 11,400 |
| | 161,900 | 161,900 | 161,900 | 485,700 |
| | | | | |
| GROSS PROFIT | 218,100 | 218,100 | 218,100 | 654,300 |
| | | | | |
| EXPENSES | | | | |
| Accounting | 18,000 | 18,000 | 36,000 | 72,000 |
| Advertising & marketing | 2,500 | 2,500 | 2,500 | 7,500 |
| Bank charges | 1,700 | 1,700 | 1,700 | 5,100 |
| Insurance | 4,200 | 4,200 | 4,200 | 12,600 |
| Interest on SBA loan | 2,515 | 2,515 | 2,515 | 7,545 |
| Legal | - | - | 90,000 | 90,000 |
| Management Salaries | 5,000 | 5,000 | 5,000 | 15,000 |
| Payroll Processing Fees | 1,400 | 1,400 | 1,400 | 4,200 |
| Rent | 4,700 | 4,700 | 4,700 | 14,100 |
| Software | 5,600 | 5,600 | 5,600 | 16,800 |
| Supplies | 1,500 | 1,500 | 1,500 | 4,500 |
| Telephone | 100 | 100 | 100 | 300 |
| Travel | 500 | 500 | 500 | 1,500 |
| Trustee Fees | 1,000 | 1,000 | 1,000 | 3,000 |
| Total Expenses | 48,715 | 48,715 | 156,715 | 179,145 |
| | | | | |
| Net Cash Flow From Operations | $ 169,385 | $ 169,385 | $ 61,385 | $ 475,155 |

**Exhibit 2**

**R2 Marketing & Consulting, LLC**
**Estimate of Revised Proofs of Claim**
**As of 10/03/25**

|  | IRS | | FTB | EDD |
|---|---|---|---|---|
| **Corporate tax:** | | | | |
| 2019 | 95,875.16 | | | |
| 2021 | 51,443.52 | | 52,189.97 | |
| 2022 | 269,405.49 | | 227,771.73 | |
| 2023 | 369,521.00 | | 160,114.00 | |
| 2024 | 249,398.00 | | 74,011.00 | |
| **Total corporate** | **1,035,643.17** | | **514,086.70** | |
| **Payroll taxes:** | | | | |
| 2019-Q1 | 3,728.79 | * | | |
| 2020 | 9,857.62 | | | |
| 2020-Q2 | | | | 1,971.12 |
| 2020-Q3 | | | | 1,946.02 |
| 2020-Q4 | | | | 1,925.35 |
| 2021 | 161.34 | | | |
| 2021-Q1 | | | | 1,381.33 |
| 2021-Q2 | | | | 1,436.67 |
| 2021-Q3 | | | | 1,271.63 |
| 2021-Q4 | | | | 1,310.96 |
| 2022-Q1 | | | | 11,364.24 |
| 2022-Q2 | | | | 11,408.11 |
| 2022-Q3 | | | | 11,326.71 |
| 2022-Q4 | | | | 11,222.30 |
| 2023-Q1 | | | | 10,882.01 |
| 2024-Q2 | 53,077.27 | | | |
| 2024-Q3 | 25,844.89 | | | |
| 2024-Q4 | 100.00 | * | | |
| **Total payroll** | **92,769.91** | | **-** | **67,446.45** |
| **Grand Total** | **1,128,413.08** | | **514,086.70** | **67,446.45** |

**\*Estimated by IRS**
**The excise taxes should all be abated.  R2 is not subject to Excise Tax.**