**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674
Andy C. Warshaw, CA SBN No. 263880
Jay K. Chien, CA SBN No. 251343
Direct Phone: (949) 345-1455
Email: andy@dimarcowarshaw.com

General Bankruptcy Counsel
for the Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re<br><br>R2 MARKETING AND CONSULTING, LLC,<br><br>    Debtor in Possession. | Case No.:  8:25-bk-10631C<br><br>Chapter 11<br><br>**CONFIRMATION BRIEF FOR DEBTOR'S FIRST AMENDED COMBINED CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT WITH BALLOT SUMMARY AND EXHIBITS**<br><br>**Plan Confirmation Hearing**<br>Date:    April 8, 2026<br>Time:    1:30 p.m.<br>Place:    5C<br>            411 West Fourth Street<br>            Santa Ana, CA 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

R2 Marketing and Consulting, LLC, the debtor and debtor in possession ("Debtor"), respectfully submits this confirmation brief ("Confirmation Brief") in support of its First Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement ("Amended Plan"), filed March 18, 2026. The Plan satisfies all applicable requirements under 11 U.S.C. § 1129 and should be confirmed.

The Court's Order Continuing Hearing on Plan Confirmation and Status Conference instructs that the Amended Plan must be accompanied by a redline and new confirmation brief. The confirmation brief must address whether the amended plan requires re-solicitation. Any opposition to the Amended Plan or Confirmation Brief must be filed by no later than March 25, 2026, with replies filed by no later than April 1, 2026. *See* ECF No. 388.

The Plan is a Chapter 11 operating plan that provides for sixty months' distributions totaling $3,526,276.88 including Quarterly UST Fees. It reflects a good-faith effort to preserve business operations, maximize creditor recoveries, and comply with the objectives of Chapter 11.

## I. Introduction

Debtor filed for Chapter 11 bankruptcy protection on March 12, 2025 ("Petition Date"). Debtor continues to manage affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A summary of certain docket events is summarized below:

## II. The Plan Satisfies the Elements of 11 U.S.C. §1129 and Should be Confirmed

### a. The Debtor's Plan Complies with Applicable Provisions of Chapter 11 (§1129(a)(1))

The Plan complies with all applicable provisions of Title 11, including §§ 1122 and 1123. Claims are properly classified, and the Plan includes adequate means for implementation.

### b. Classification of Claims and Interests Under 11 U.S.C. § 1122

Section 1122 of the Bankruptcy Code provides:

> **(a)** Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

> **(b)** A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Debtor's Plan separates creditors into classes that are illustrated below in **Chart 1**.

| Chart 1 | |
|---|---|
| **Type of claim** | Classification |
| Unclassified Claims | Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment |

|  |  |
|---|---|
|  | provided for them in the Bankruptcy Code. These claims include the Debtor's CPA, Debtor's bankruptcy counsel, the Office of the United States Trustee, the California Franchise Tax Board, the Employment Development Department, and the Internal Revenue Service. |
| Class 1- Unimpaired, Secured Claims | Unimpaired, secured claims do not exist in this case and the class indicates that there are none. |
| Class 2-A thru 2-V - Impaired, Secured Claims | Impaired, secured claim of the U.S. Small Business Administration and secured claims of NEMT vehicle lenders Ally Bank, American National Bank, Santander Consumer USA, and The Huntington National Bank (together, "Vehicle Lenders"). |
| Class 3 | All general unsecured claims that are not administrative convenience claims or are otherwise contingent or unliquidated are treated in Class 3. |
| Class 4 | This class consists of leases and executory contracts. The only creditor in this class is Regus Management Group. |
| Class 5 | This class consists of interest holds of Debtor. |
| Class 6 | This class is for unfiled claims subject to discharge that were originally listed as disputed, contingent, or unliquidated. |

General unsecured creditors are classified together in Class 3, while secured creditors are separately classified in Classes 2-A through 2-V based on their distinct collateral, contractual rights, and claim treatment. The classification set forth in the Plan allows each class of impaired creditors the opportunity to cast meaningful votes on Debtor's Plan, satisfying the basic purposes of classification under section 1122 of the Bankruptcy Code.

**c.    Contents of the Plan Under 11 U.S.C. § 1123**

Section 1123(a) of the Bankruptcy Code identifies requirements for the contents of a plan of reorganization. Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (administrative expense claims), section 507(a)(3) of the Bankruptcy Code (claims arising during the "gap" period in an involuntary bankruptcy case), and section 507(a)(8) of the Bankruptcy Code (priority tax claims). 11 U.S.C. § 1123(a)(1).

The Plan complies with this requirement by expressly classifying all claims and equity interests, other than administrative claims and priority tax claims.

Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." The Plan describes how each class and specific

3

claim is treated. Each class in the Plan indicates whether the claim is impaired or unimpaired.  For example, the classification in Class 1 indicates that it is unimpaired while Classes 2 and 3 indicate that they are impaired classes.

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan."  The Plan provides a plan treatment column for each class. The Plan includes section on voting with a title, "Who May Vote or Object to Confirmation of the Plan."  There is a chart below the title with a summary of impairment and voting rights, as follows:

| Class | Impairment | Creditor and Proof of Claim #  ("POC")[1] | Class Voting Right |
|---|---|---|---|
| **Unclassified** | Yes | Unsecured Priority Tax Claims of Governmental Entities | Yes |
| **1** | - | - | - |
| **2-A** | Yes | US Small Business Administration POC #25 | Yes |
| **2-B** | Yes | Santander Consumer USA Inc. POC #15 | Yes |
| **2-C** | Yes | Santander Consumer USA Inc. POC #9 | Yes |
| **2-G** | Yes | Santander Consumer USA Inc. POC #5 | Yes |
| **2-G** | Yes | Santander Consumer USA Inc. POC #7 | Yes |
| **2-G** | Yes | Santander Consumer USA Inc. POC #17 | Yes |
| **2-H** | Yes | Santander Consumer USA Inc. POC #18 | Yes |
| **2-I** | Yes | Ally Bank POC #34 | Yes |
| **2-J** | Yes | American National Bank POC #11 | Yes |
| **2-J** | Yes | American National Bank POC #12 | Yes |
| **2-K** | Yes | Ally Bank POC #30 | Yes |
| **2-L** | Yes | American National Bank POC #10 | Yes |
| **2-M** | Yes | American National Bank POC #13 | Yes |
| **2-M** | Yes | American National Bank POC #14 | Yes |
| **2-N** | Yes | Ally Bank POC #33 | Yes |
| **2-O** | Yes | Ally Bank POC #31 | Yes |
| **2-P** | Yes | Ally Bank POC #32 | Yes |
| **2-Q** | Yes | Santander Consumer USA Inc. POC #6 | Yes |
| **2-R** | Yes | Santander Consumer USA Inc. POC #16 | Yes |
| **2-V** | Yes | The Huntington National Bank POC #4 | Yes |
| **3** | Yes | General Unsecured | Yes |
| **4** | Yes | Lease Assumptions: Regus Capital Management POC #39 | Yes |

---

[1] American National Bank's POC #'s 19 thru 23 ("Claims 19-23") were previously identified in Debtor's original plan as Class 2-C, 2-D, and 2-E respectively.  However, on their face, Claims 19-23 are out-of-date duplicates of POC #'s 10 thru 14 ("Claims 10-14").  While filed later, Claims 19-23 were signed by creditor earlier than Claims 10-14 which were signed by creditor's counsel of record.  Claims 19-23 generally put forth less favorable terms. Also, Debtor has surrendered the collateral of CIT Bank (formerly Class 2-U, POC #3), Ford Motor Credit Company (formerly Classes 2-S and 2-T, POC #'s 24, and 28), and Ally Bank (formerly Class 2-F, POC #29) and those creditors no longer have secured proof of claims.  Ally Bank has filed an amended POC #29 for its general unsecured deficiency claim.

| 5 | - | Interest Holder | - |
| 6 | Yes | Disputed, Contingent, and Unliquidated Claims | No |

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provides the same treatment for each claim or interest of a particular class." The U.S. Small Business Administration and the Vehicle Lenders are each generally placed in their own secured classes while general unsecured creditors are placed in the same class. Each general unsecured claim receives the same pro-rata distribution from the pot Plan.

Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provides "adequate means" for implementation. 11 U.S.C. § 1123(a)(5). Adequate means for implementation of a plan may include retention by the debtor of all or part of its property; the transfer of property of the estate to one or more entities; cancelation or modification of any indenture; curing or waiving of any default; extension of a maturity date or change in an interest rate or other term of outstanding securities; amendment of the Debtors' charter; or the issuance of securities in exchange for cash, property, or existing securities, all in exchange for claims or interests or for any other appropriate purpose. *See generally In re Spiegel, Inc.,* No. 03-11540 (BRL), 2005 WL 1278094, at 5 (Bankr. S.D.N.Y. May 25, 2005).

The Plan includes several applicable sections, including the Effective Date, the disbursing agent, post-confirmation management, Debtor's ability to close the case with an interim decree, a section on employing professionals post-confirmation, a section about modifying the Plan, a section about revesting of property, and a section about conversion or dismissal

Section 1123(a)(6) does not apply because Debtor is not subject to a charter.

Section 1123(a)(7) requires that the Plan be consistent with public policy and the interests of creditors. Public policy dictates supporting the rehabilitation of this Debtor, maintaining its presence as a critical NEMT service provider in southern California, continuing employment and ongoing economic activity through providing necessary medical transportation services to vulnerable patients. The alternative, conversion or dismissal, leads to the demise of the entity, and eliminates any return to creditors.

**d. Debtor Complied with Applicable Provisions of Title 11 (§1129(a)(2))**

Section 1129(a)(2) requires that "[t]he proponent of the plan complies with the applicable provisions of this title." A court in the Ninth Circuit emphasized that §1129(a)(2) is satisfied where the debtor has adhered to the procedural framework of Title 11. See, e.g., *In re Bashas' Inc.*, 437 B.R. 874, 906 (Bankr. D. Ariz. 2010). The *In re Bashas' Inc* court provided that, "The section requires that the plan and plan proponent (here, the Debtors) have complied with applicable bankruptcy law. This means that the law has been followed throughout the administrative portion of the case, appropriate fees and reports have been tendered, that the court and creditors have been privy to financial information, that in all respects a debtor has been transparent and candid in its communications, and that it has materially complied with the substantive bankruptcy statutes and rules. *In re Bashas' Inc*., 437 B.R. 874, 904 (Bkrtcy.D.Ariz., 2010)

Here, Debtor complied with all applicable provisions of Title 11, including but not limited to:

Timely Filing of the Plan: Debtor filed its original chapter 11 plan within the 120-day exclusivity period provided by § 1121(b), and no extension of exclusivity was required or requested.

Disclosure Requirements: Debtor's Plan includes the disclosures required under §1125, including a brief history of operations, a liquidation analysis, and financial projections demonstrating feasibility.

Solicitation and Notice: Debtor provided adequate notice of the original plan and confirmation hearing pursuant to Bankruptcy Rule 2002 and local rules. The Plan includes a proof of service with mail notice to the entire mailing matrix plus NEF notice.

Compliance with Reporting Obligations: Debtor filed all required schedules, statements, and monthly operating reports, and has cooperated with the U.S. Trustee's Office throughout the case.

### e.  Debtor's Plan is Proposed in Good Faith (§1129(a)(3))

Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law.  A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code. *Ryan v. Loui* (*In re Corey* ), 892 F.2d 829, 835 (9th Cir.1989); *see also, Madison Hotel,* 749 F.2d at 425 ("[F]or purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."). The requisite good faith determination is based on the totality of the circumstances. *Stolrow v. Stolrow's, Inc.* (*In re Stolrow's, Inc.),* 84 B.R. 167, 172 (9th Cir.BAP 1988). *In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (C.A.9,2002).*

Debtor's Plan was submitted in good faith and includes evidence and supporting exhibits as follows:

| Exhibit Number | Description |
|---|---|
| 1 | Declaration of Ryan Morris |
| 2 | Projected Income and Expenses |
| 3 | Claims Against the Bankruptcy Estate |
| 4 | Projected Disbursement Schedule |
| 5 | Original Chapter 11 Ballot |
| 6 | Order Continuing Hearing on Plan Confirmation and Status Conference |
| 7 | Definitions |
| 8 | Liquidation Analysis |

The Plan is designed to preserve Debtor's business operations, maximize recoveries for creditors, and achieve a result consistent with the objectives and purposes of Chapter 11. It reflects a legitimate effort to reorganize. Debtor provided adequate financial disclosures in connection with the Plan, including historical performance, a liquidation analysis, and projections bearing on feasibility. The Plan treats similarly situated creditors equitably and does not engage in unfair discrimination. There is no evidence of fraud, manipulation, or abuse of the bankruptcy process, and no party has objected to the Debtor's conduct in administering this case.

**f.   Debtor's Plan Provides for Court Supervision of Compensation of Professionals (§1129(a)(4))**

Section 1129(a)(4) of the Bankruptcy Code requires that all fees promised or received from the estate in connection with or in contemplation of a chapter 11 case must be disclosed and subject to the court's review.  The Plan, on pages 7 thru 9, addresses administrative expenses.  The Plan provides that the fees are subject to court approval before payment.

**g.   Debtor's Plan Discloses the Identity of All Post Confirmation Management (§1129)(a)(5))**

Section 1129(a)(5) of the Bankruptcy Code provides that a plan of reorganization may be confirmed if the proponent discloses the identity of those individuals who will serve as management of the reorganized debtor, the identify of any insider to be employed or retained by the reorganized debtor and the compensation proposed to be paid to such insider.

The Plan provides a discussion of Post-Confirmation Management starting on page 14. Debtor shall remain in possession and perform all functions necessary to consummate the Plan.

**h.   Debtor Is Not Subject to any Regulatory Commission (§1129(a)(6))**

Section 1129(a)(6) of the Bankruptcy Code requires that the appropriate regulatory commission must approve any changes in the rates provided in the plan. This provision applies where a debtor is subject to post-confirmation rate regulation by a governmental authority, typically in industries such as utilities, telecommunications, or transportation. This is inapplicable here. Debtor is not subject to any governmental regulatory commission with authority over its pricing or rates. The Plan does not propose any rate changes requiring regulatory approval, nor does the Debtor operate in a regulated industry.

**i.   Debtor's Plan Meets the Best Interest Test (§1129(a)(7))**

The best interests of creditors test, as set forth in section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the plan or will receive property of a value not less than what such holder would receive if the debtor were liquidated under chapter 7.

8

The Plan dedicates an exhibit to the liquidation analysis, which goes through each asset and exemption. The summary provides that nothing would be available to the general unsecured class in a Chapter 7 while Debtor's Plan provides $110,000 to the general unsecured class.

### j.    Acceptance of Plan by Creditors and Interest Holders (§1129(a)(8))

Section 1129(a)(8) is not satisfied because not all impaired classes have accepted the Plan. Accordingly, Debtor seeks confirmation under the cramdown provisions of § 1129(b).

| Chart 2: Summary of Received Ballots | | | | |
|---|---|---|---|---|
| Class | Accepting | | Rejecting | |
| | Number of Ballots Received | Amount Per Ballot / Amount per Proof of Claim | Number of Ballots Received | Amount Per Ballot / Amount per Proof of Claim |
| Class 2-I Impaired, Secured Claims | 0 | $0 / $0 | 1 | $60,511.53 / $60511.53 |
| Class 2-V Impaired, Secured Claims | 1 | $441,634.40 / $441,634.40 | 0 | $0 / $0 |

The Plan satisfies the cramdown requirements because it does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the Plan.

### k.    No Re-Solicitation Required

Re-solicitation of votes is not required where modifications to a chapter 11 plan do not materially and adversely affect the treatment of creditors who have already voted. *See* Fed. R. Bankr. P. 3019(a). Courts routinely hold that re-solicitation is unnecessary where amendments clarify treatment, resolve objections, or improve recoveries without altering the fundamental economic terms of the plan in a manner adverse to creditors.

The amendments reflected in the Amended Plan are non-material and, in all respects, either clarify treatment or improve creditor recoveries. Specifically:

First, the Amended Plan adjusts the treatment of certain secured claims to reflect values previously requested by those secured creditors in response to the original plan. These changes conform the Plan to creditor positions and do not adversely affect any creditor.

Second, the Amended Plan increases the value attributed to certain collateral securing an objecting creditor's claim by utilizing a valuation consistent with the same make and model of vehicle collateral associated with another claim held by that creditor, which was not objected to. This change results in more favorable treatment to that creditor and does not adversely affect any other class.

Third, the Amended Plan revises the treatment of priority tax claims to conform with the requirements of 11 U.S.C. § 1129(a)(9)(C). This modification ensures compliance with the Bankruptcy Code and does not alter creditor recoveries in a manner requiring re-solicitation.

Fourth, provisions relating to duplicate claims have been removed for clarity and administrative efficiency, without affecting the allowed amount or treatment of any valid claim.

Finally, the Amended Plan modifies the timing of distributions to general unsecured creditors by providing for quarterly distributions after the first year, rather than monthly distributions. This change does not reduce the aggregate recovery to general unsecured creditors and, in fact, results in more meaningful distributions by avoiding de minimis payments, thereby improving administrative efficiency and creditor recovery experience.

None of these modifications materially and adversely affect the treatment of any creditor or class of creditors. Accordingly, Debtor submits re-solicitation is not needed, and previously cast ballots should be counted for purposes of confirmation.

**l.  Debtor's Plan Properly Treats Claims in sections 507(a)(1) and 507(a)(4) through (7) (§1129(a)(9))**

Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in sections 507(a)(1) and 507(a)(4) through (7) of the Bankruptcy Code – generally, wage, employee benefit and deposit claims entitled to priority – must receive deferred cash payments of a value equal to the allowed amount of such claim or cash equal to the allowed amount of such claim on the effective date of the plan, depending upon whether the class has accepted the plan. *See* 11 U.S.C. §1129(a)(9)(B).  There are no claims of this type in this case.

Section 1129(a)(9)(C) provides that the holder of a claim of a specified in section 507(a)(8) of the Bankruptcy Code –i.e. priority tax claims – must receive deferred cash payments over a period

not to exceed five years after the petition date, the present value of which equals the allowed amount of the claim. *See* 11 U.S.C. § 1129(a)(9)(C). allowed amount of the claim. *See* 11 U.S.C. § 1129(a)(9)(C).

### m. Acceptance by Impaired Class (§1129(a)(10))

Section 1129(a)(10) ordinarily requires that at least one impaired class of claims accept the plan, excluding insider votes.

Here, at least one impaired non-insider class, Class 2-V, has voted to accept the Plan.

### n. Debtor's Plan is Feasible (§1129(a)(11))

Section 1129(a)(11) requires that the Court find that "confirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of Debtor…" To demonstrate that a plan is feasible, a debtor need only show a reasonable probability of success. *Acequia,* 787 F.2d at 1364. The Code does not require the debtor to prove that success is inevitable, *In re WCI Cable, Inc.,* 282 B.R. 457, 486 (Bankr.D.Or.2002), and a relatively low threshold of proof will satisfy § 1129(a)(11), *In re Sagewood Manor Assocs. Ltd.,* 223 B.R. 756, 762 (Bankr.D.Nev.1998), so long as adequate evidence supports a finding of feasibility. *See In re Pizza of Hawaii, Inc.,* 761 F.2d at 1382 \*192 (reversing where feasibility determination excluded consideration of major claim*). In re Brotby*, 303 B.R. 177, 191–92 (B.A.P. 9th Cir. 2003)

Debtor's ability to fund the Plan is analyzed in Exhibit 2 of the Plan with claims provided in Exhibit 3 and a disbursement schedule in Exhibit 4. Exhibit 2 provides a summary of calculations, including growth rate projections and how data was analyzed for projection purposes. These projections are grounded in Debtor's historical operating performance and reflect a reasonable probability of success under the Plan.

### o. Debtor Has No Obligations for Retiree Benefits (§1129(a)(13))

Section 1129(a)(13) requires that a plan provides for the continued payment of all retiree benefits for the duration of the period that the Debtor has obligated itself to provide such benefits. Debtor does not have any obligations for retiree benefits as defined in §1114 of the Bankruptcy Code. Therefore, §1129(a)(13) does not apply.

11

**p. Debtor Is Not Required by a Judicial or Administrative Order, or by Statute, to Pay a Domestic Support Obligation (§1129(a)(14))**

Section 1129(a)(14) of the Bankruptcy Code provides that:

If the debtor is required by a judicial or administrative order or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first becomes payable after the date of the filing of the petition. 11 U.S.C. §1129(a)(14).

Debtor does not owe any court ordered, or non-court ordered, domestic support payments.

**q. Transfers of Property Under Plan Will be Made in Accordance with Non-Bankruptcy Law (§1129(a)(16))**

11 U.S.C. § 1129(a)(16) requires that transfers made under the plan be in accordance with nonbankruptcy law. The only transfer of property in the Plan is the quarterly disbursements to creditors as provided in Exhibit 4 of the Plan.

**r. The Plan Satisfies the "Cramdown" Requirements of 11 U.S.C. 1129(b)**

Because not all impaired classes have accepted the Plan, confirmation must proceed under the nonconsensual confirmation provisions of 11 U.S.C. § 1129(b). The Plan satisfies all applicable requirements of 11 U.S.C. § 1129(a), except § 1129(a)(8), and is confirmable notwithstanding the rejection of one or more impaired classes because it does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the Plan.

**s. The Plan Does Not Discriminate Unfairly**

Section 1129(b)(1) requires that the Plan not discriminate unfairly with respect to any impaired class that has not accepted the Plan. Courts assess unfair discrimination by comparing the treatment of similarly situated creditors and evaluating whether any disparity is supported by a legitimate reorganization purpose. See *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 859 (Bankr. S.D. Tex. 2001).

Here, the Plan classifies claims based on their legal rights and priorities under the Bankruptcy Code. The treatment of Class 3 is proportionate and justified by the debtor's cash flow

constraints. No similarly situated class receives materially better treatment. Accordingly, the Plan does not discriminate unfairly.

### t.    The Plan Is Fair and Equitable

Under 11 U.S.C. § 1129(b)(1), a plan is "fair and equitable" with respect to dissenting classes if it does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the Plan. For unsecured claims, the "fair and equitable" requirement incorporates the absolute priority rule, under which a holder of any claim or interest junior to such class may not receive or retain any property under the Plan on account of such junior claim or interest unless the dissenting class is paid in full. See 11 U.S.C. § 1129(b)(2)(B).

The Plan complies with the absolute priority rule. Although equity interests are retained, no value is being distributed to equity holders on account of such interests. The Debtor is balance-sheet insolvent, and equity is out of the money. Even upon completion of the Plan, the Debtor's secured indebtedness, including the obligation to the Small Business Administration, will continue to exceed the value of the Debtor's assets, leaving no realizable value available to equity.

All projected value generated by the Debtor is being devoted to creditor repayment under the Plan. The Plan is funded from post-petition operations and cash flow, and not from any prepetition equity value. General unsecured creditors are projected to receive approximately $110,000 under the Plan, which substantially exceeds the recovery available in a chapter 7 liquidation.

Accordingly, equity holders are not receiving or retaining any property of value under the Plan on account of their prepetition interests, and the Plan satisfies § 1129(b)(2)(B)(ii).

## III.    EVIDENCE IN SUPPORT OF MOTION

The following declarations and exhibits are filed as evidence to support this Motion to Confirm Plan:

Exhibit A – Declaration of Ryan Morris

Exhibit B – Declaration of Attorney with Ballots Attached

Exhibit C – Redline Copy of Original Plan

## IV.    RELIEF SOUGHT.

Based on the foregoing, the Plan satisfies all applicable requirements under 11 U.S.C. §§ 1129. The Debtor respectfully requests that the Court confirm the Plan.

Date:   March 18, 2026

/s/ Andy C. Warshaw
Attorney for the Debtor in Possession
and Plan Proponent

14

# EXHIBIT A
# Declaration of Ryan Morris

**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674
Andy C. Warshaw SBN 263880
Jay K. Chien SBN 251343
Direct Phone: (949) 345-1455
Facsimile: (949) 417-9412
Email: andy@dimarcowarshaw.com

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No.  8:25-bk-10631-SC |
| R2 Marketing and Consulting, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | **DECLARATION OF RYAN MORRIS** |
| | **Plan Confirmation Hearing**<br>Date:  April 8, 2026<br>Time:  1:30 p.m.<br>Place:  5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

I, Ryan Morris, do hereby declare and say as follows:

1. I am an individual over 18 years of age and competent to make this Declaration.

2. I am the owner of debtor R2 Marketing and Consulting, LLC ("Debtor") and I am authorized to speak on its behalf. I am one of the custodians of the books, records and files of the Debtor that pertain to loans, extensions of credit, and the Debtor's financials. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Debtor on behalf of Debtor, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Debtor's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Debtor by a person who had personal knowledge of

the event being recorded and had or has a business duty to record accurately such event. Except when based on information and belief, I make this declaration based on facts within my personal knowledge and if called as a witness, could and would testify thereto.

3. I submit this declaration in support of the Confirmation Brief and in further support of confirmation of the Debtor's First Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the "Amended Plan" or "Plan").

**Background and Operations**

4. The Debtor operates a non-emergency medical transportation ("NEMT") business in Southern California. The business provides essential transportation services to patients requiring access to medical care, including vulnerable populations who rely on consistent and reliable transportation.

5. Since the Petition Date, the Debtor has continued to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Debtor's operations have stabilized during the pendency of this case. The Debtor continues to generate revenue and maintain ongoing business relationships necessary to support continued operations and Plan performance.

**Feasibility of the Plan**

7. I have reviewed the financial projections attached as Exhibit 2 to the Plan. Those projections were prepared based on the Debtor's historical performance, current operations, and anticipated future business.

8. Based on my knowledge of the Debtor's business and operations, I believe the projections are reasonable and achievable.

9. The Debtor will fund the Plan through ongoing business operations. The projected revenues are sufficient to cover operating expenses and to make the required Plan payments.

10. In my judgment, there is a reasonable probability that the Debtor will be able to perform all obligations under the Plan, and confirmation of the Plan is not likely to be followed by liquidation or further financial reorganization.

**Treatment of Creditors**

11. The Plan provides for payments to secured creditors based on the value of their collateral and includes interest sufficient to provide present value consistent with the Bankruptcy Code.

12. The Plan also provides for a distribution to general unsecured creditors totaling approximately $110,000, which exceeds the amount such creditors would receive in a chapter 7 liquidation.

13. Based on my understanding of the Debtor's assets and liabilities, there would be little to no recovery for unsecured creditors in a liquidation scenario.

14. The Plan reflects a fair allocation of the Debtor's projected income and maximizes recoveries to creditors under the circumstances.

**Good Faith**

15. The Plan has been proposed in good faith and with the intent to reorganize the Debtor's business, preserve operations, and maximize creditor recoveries.

16. The Debtor has worked to address creditor concerns during the course of this case, including modifying treatment of secured claims to reflect creditor input and resolving issues raised in connection with the original plan.

17. The Plan is not the result of fraud, manipulation, or any improper purpose, but rather represents a legitimate effort to reorganize.

**Equity and Insolvency**

18. The Debtor is balance-sheet insolvent. The Debtor's secured debt, including the obligation to the U.S. Small Business Administration, exceeds the value of the Debtor's assets.

19. Even upon completion of the Plan, there will be no realizable value available to equity holders.

20. All projected value of the Debtor is being devoted to creditor repayment under the Plan.

**Conclusion**

21. Based on the foregoing, I believe the Plan satisfies the requirements of 11 U.S.C. § 1129 and is feasible, fair, and proposed in good faith.

3

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 18th day of March 2026 in Orange County, California.

_____
Ryan Morris
Responsible Individual for
R2 Marketing and Consulting, LLC,
Debtor in Possession

4

# EXHIBIT B
## Declaration of Attorney with Ballots Attached

Andy C. Warshaw SBN 263880
**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674
Direct Phone: (949) 345-1455
Facsimile: (949) 417-9412
Email: andy@dimarcowarshaw.com

Attorneys for Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re<br><br>R2 MARKETING AND CONSULTING, LLC,<br><br>Debtor-in-Possession. | Case No.: 8:25-bk-11348-SC<br><br>Chapter 11<br><br>**DECLARATION OF ANDY C. WARSHAW RE AUTHENTICATION OF PLAN BALLOT SUMMARY** |

## <u>DECLARATION OF ANDY C. WARSHAW</u>

I, <u>Andy C. Warshaw</u>, being first duly sworn, declare and allege as follows:

1.    I am an attorney duly licensed to practice before this Court and a member of DiMarco Warshaw, APLC, counsel for the Debtor-in-Possession in this chapter 11 case, In re R2 Marketing and Consulting, LLC, Case No. 8:25-bk-11348-SC.  I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify thereto.

2.    I received and tabulated all timely submitted ballots.

3.    The results of voting were as follows:

  a.  Class 2-I

      i.   Total Ballots Cast: 1

      ii.   Total Dollar Amount Voting: $60,511.53

      iii.   Ballots Voting to Accept: 0

      iv.   Dollar Amount Voting to Accept: $0

      v.   Ballots Voting to Reject: 1

        vi.  Dollar Amount Voting to Reject: $60,511.53

    b.  Class 2-V

        i.  Total Ballots Cast: 1

        ii.  Total Dollar Amount Voting: $441,634.40

        iii.  Ballots Voting to Accept: 1

        iv.  Dollar Amount Voting to Accept: $441,634.40[1]

        v.  Ballots Voting to Reject: 0

        vi.  Dollar Amount Voting to Reject: $0

4.    True and correct copies of the received and tabulated ballots are attached following this Declaration.

I declare, under penalty of perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct, and I could and would testify to the contents of this declaration in a court of law.

Executed this 18th day of March 2026 in Orange County, CA.

/s/ Andy C. Warshaw
Andy C. Warshaw

---

[1] The ballot indicates $441,634.40 accepts the Plan but it includes its own Exhibit A as an addendum that the secured portion is $249,885.

2

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC


**Please return both pages of this ballot**


**Class [2-I] Ballot for Accepting or Rejecting Plan by R2 Marketing and Consulting, LLC**

**R2 Marketing and Consulting, LLC filed a plan of reorganization (the Plan). You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class [ 2-I ] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Andy C. Warshaw by email to andy@dimarcowarshaw.com or before October 1, 2025, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**


**Acceptance or Rejection of the Plan**

If the voter is the holder of a secured, priority, or unsecured nonpriority claim: The undersigned, the holder of a Class [ 2-I ]

claim against the Debtor in the unpaid amount of Dollars $60,511.53 (Proof of Claim #34)

)

Official Form 314  (02/20)                                                        page 2

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC

*Check one box only*

Accepts the plan [   ]

Rejects the plan [ X ]


Dated:                __09/30/2025__


Print or type name:  __Jennifer C. Wong, Esq.,  Attorney for Ally Bank__

                                                                       Attorney for Ally
Signature:  _____   Title (if corporation or partnership) Bank___


Address:    __McCarthy & Holthus, LLP_____
            2763 Camino Del Rio South, Suite 100
            _____

            San Diego, CA 92108     _____


Return this ballot to:


Ballots will be accepted by email to andy@dimarcowarshaw.com.
Electronic transmission is the only way permitted to submit ballots.

Please take notice that the Court issued a scheduling order on May
21, 2025, as ECF No. 126.  Please refer to that document for additional
scheduling deadlines in this case. A copy of the order is included as
Exhibit 6 of the Plan.

<u>Bankruptcy Case of R2 Marketing and Consulting, LLC</u>
Case No. 8:25-bk-10631-SC

**Please return both pages of this ballot**

**Class [     ] Ballot for Accepting or Rejecting Plan by R2 Marketing and Consulting, LLC**

---

**R2 Marketing and Consulting, LLC filed a plan of reorganization (the Plan). You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class [ 2-V] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Andy C. Warshaw by email to andy@dimarcowarshaw.com or before October 1, 2025, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Acceptance or Rejection of the Plan**

If the voter is the holder of a secured, priority, or unsecured nonpriority claim:

The undersigned, the holder of a Class [ 2-V] claim against the Debtor in the unpaid amount of Dollars ($441,634.40)

Bankruptcy Case of R2 Marketing and Consulting, LLC
Case No. 8:25-bk-10631-SC

*Check one box only*

**Accepts the plan [X]** *Conditional—See Exhibit A**

**Rejects the plan  [   ]**

Dated:         9/29/2025

Print or type name:  Eudora F. S. Arthur on behalf of The Huntington National Bank

Signature: _____  Title (if corporation or partnership) _____

Address:         The Huntington National Bank C/O Eudora Arthur
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601

**Return this ballot to:**

**Ballots will be accepted by email to andy@dimarcowarshaw.com.
Electronic transmission is the only way permitted to submit ballots.**

**Please take notice that the Court issued a scheduling order on May 21,
2025, as ECF No. 126.   Please refer to that document for additional
scheduling deadlines in this case. A copy of the order is included as
Exhibit 6 of the Plan.**

**EXHIBIT A:**

**REVISED AND RESTATED TREATMENT OF
THE HUNTINGTON NATIONAL BANK**
Case No.: 8:25-bk-10631-SC

**CLASS 2-V – THE HUNTINGTON NATIONAL BANK**

1. **Description of Debt.**  Class 2-V - Secured Claim of The Huntington Bank (Claim No. 4-1)
2. **Impairment.**        Impaired.
3. **Treatment.**         Debtor will treat this Claim as a secured obligation in the amount of $249,885.00. Huntington shall retain its lien(s) on the three (3) 2022 Ram Promaster Braun Ability Vans with the following vehicle identification numbers: 3C6MRVUG4NE138805;3C6MRVUG4NE138806; 3C6MRVUG6PE527643 with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code. Debtor proposes to begin making monthly payments on this debt beginning the month following the Effective Date over a period of 60 months with a fixed interest rate of 14.91% per annum until the secured portion of this debt is paid in full. The balance of the claim will be treated as a general unsecured debt in Class 11.

# EXHIBIT C
# Redline Copy of Original Plan

**DiMarco Warshaw, APLC**
PO Box 704
San Clemente, CA 92674
Andy C.  Warshaw, CA SBN 263880
Jay K. Chien, CA SBN 251343
Direct Phone: (949) 345-1455
Facsimile: (949) 417-9412
Email: andy@dimarcowarshaw.com



Attorneys General Bankruptcy Counsel
for Debtor and Debtor in Possession


## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.  8:25-bk-10631-SC |
| R2 Marketing and Consulting, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | **ORIGINAL FIRST AMENDED COMBINED CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT** |
| | **Plan Confirmation Hearing** |
| | Date:    April 8, 2026October 29, 2025 |
| | Time:    1:30 p.m. |
| | Place:    5C |
| |          411 West Fourth Street |
| |          Santa Ana, CA 92701 |

        This Original First Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement ("Plan" or "Amended Plan")[1], filed by R2 Marketing and Consulting, LLC, the debtor and debtor-in-possession ("Debtor"), proposes to restructure the Debtor's obligations and to pay certain claims over a 60-month term.  In the same envelope, you will find instructions relating to confirmation of the Plan and a Ballot for voting to accept or reject the Plan.  You should carefully review all of these

---

[1] The Original Combined Chapter 11 Plan of Reorganization and Disclosure Statement is hereafter referred to as the "Original Plan".

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

documents.

#

#

#

Chapter 11, Combined Chapter 11 Plan                                        R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                          Case # 8:25-bk-10631-SC

2

# Table of Contents

I.      **INTRODUCTION** ..................................................................................................................... 6

    A.   Purpose of This Document ............................................................................................... 6

    B.   Background ...................................................................................................................... 6

    C.   Confirmation Procedures ................................................................................................. 8

II.     **THE PLAN** ............................................................................................................................ 8

    A.   Unclassified Claims ........................................................................................................ 9

    B.   Classified Claims and Interests ..................................................................................... 13

    C.   Effective Date ............................................................................................................... 22

    D.   Means of Performing and Effectuating the Plan ........................................................... 22

    E.   Post-Confirmation Management .................................................................................... 22

    F.   Disbursing Agent .......................................................................................................... 22

    G.   Payments to Creditors ................................................................................................... 23

    H.   Other Provisions of the Plan ......................................................................................... 24

    I.   **EFFECT OF CONFIRMATION OF THE PLAN** ...................................................... 26

    J.   Modification of Plan ..................................................................................................... 28

    K.   Quarterly Fees .............................................................................................................. 28

    L.   Post-Confirmation Conversion/Dismissal .................................................................... 29

    M.   Reorganized Employment and Compensation of Professionals ..................................... 29

III.    **DISCLOSURE STATEMENT** ............................................................................................ 30

    A.   Chapter 11 Requirements .............................................................................................. 32

    B.   Voting .......................................................................................................................... 33

    C.   Treatment of Non-Accepting Classes ........................................................................... 38

    D.   Revocation of Plan/No Admissions. ............................................................................. 38

    E.   Description and History of Debtor and Its Business Interests ........................................ 38

    F.   Claims Bar Date ........................................................................................................... 39

    G.   Actual and Projected Recovery of Preferential or Fraudulent Transfers ....................... 39

Chapter 11, Combined Chapter 11 Plan           R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement        Case # 8:25-bk-10631-SC

3

H.   Employment of Professionals ..................................................................................39

I.   Liquidation Analysis ...............................................................................................40

J.   The Absolute Priority Rule and its Impact on the Case: 11 U.S.C. 1129(b)(2)(B)(ii) ...............41

K.   Feasibility..............................................................................................................43

L.   Tax Consequences of Plan ......................................................................................46

M.   Risk Factors ...........................................................................................................46

N.   Post-Confirmation Status Report ............................................................................47

O.   Final Decree ...........................................................................................................48

I.   INTRODUCTION ........................................................................................................4

A.   Purpose of This Document........................................................................................4

B.   Background ...............................................................................................................4

C.   Confirmation Procedures ..........................................................................................6

II.   THE PLAN ....................................................................................................................6

A.   Unclassified Claims ..................................................................................................7

B.   Classified Claims and Interests...............................................................................11

C.   Effective Date .........................................................................................................18

D.   Means of Performing and Effectuating the Plan .....................................................18

E.   Post-Confirmation Management..............................................................................19

F.   Disbursing Agent ....................................................................................................19

G.   Payments to Creditors .............................................................................................20

H.   Other Provisions of the Plan ...................................................................................20

I.   EFFECT OF CONFIRMATION OF THE PLAN .....................................................22

J.   Modification of Plan ...............................................................................................24

K.   Quarterly Fees.........................................................................................................25

L.   Post-Confirmation Conversion/Dismissal ..............................................................25

M.   Reorganized Employment and Compensation of Professionals ..............................25

III.   DISCLOSURE STATEMENT ....................................................................................27

Chapter 11, Combined Chapter 11 Plan                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                    Case # 8:25-bk-10631-SC

4

A.    Chapter 11 Requirements .......................................................................................28

B.    Voting ...................................................................................................................30

C.    Treatment of Non-Accepting Classes ...................................................................33

D.    Revocation of Plan/No Admissions. .....................................................................33

E.    Description and History of Debtor and Its Business Interests ...............................33

F.    Claims Bar Date ...................................................................................................34

G.    Actual and Projected Recovery of Preferential or Fraudulent Transfers ...............34

H.    Employment of Professionals ...............................................................................34

I.    Liquidation Analysis .............................................................................................35

J.    The Absolute Priority Rule and its Impact on the Case: 11 U.S.C. 1129(b)(2)(B)(ii) ...............36

K.    Feasibility .............................................................................................................38

L.    Tax Consequences of Plan ...................................................................................39

M.    Risk Factors .........................................................................................................40

N.    Post-Confirmation Status Report ..........................................................................41

O.    Final Decree .........................................................................................................42

# I.    **INTRODUCTION**

### A.  Purpose of This Document

The Debtor is the plan proponent (the "Proponent") of the Chapter 11 Plan of Reorganization (the "Plan").  Section 1125 of the Bankruptcy Code requires that creditors receive "adequate information" about the debtor and the proposed plan of reorganization before creditors are asked to vote to accept or reject the plan.  Here, the Court ~~has~~ ordered that a combined Chapter 11 Plan and Disclosure Statement be filed and served by September 8, 2025.  *See* ECF No. 126. On January 26, 2026, the Court ordered that "[a]ny amended plan must be filed by no later than March 18, 2026, with a redline and new confirmation brief. The confirmation brief must address whether the amended plan requires re-solicitation." *See* ECF No. 388.

### B.  Background

On March 12, 2025 (the "Petition Date"), R2 Marketing and Consulting, LLC, the debtor and debtor in possession ("Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The catalyst for filing this bankruptcy case was Debtor's inability to meet business obligations due to severe cash flow constraints stemming from repayment of pandemic era loans and increased competition from newly established restaurants nearby.  Debtor is a California limited liability company formed in 2016 doing business as a non-emergency medical transportation ("NEMT") company. The business is dedicated to assisting individuals in the Los Angeles/Orange County area who are in need of safe and caring transportation to all types of medical appointments such as dialysis, various infusions including chemotherapy, radiation, physical therapy, hospice, etc. In addition, it is approved to transport patients in recovery for Methadone treatment. Most of the Debtor's services are for those in assisted living facilities and through contracts with health care companies; however, they also do public and private transport for the U.S. Department of Veterans Affairs, Kaiser Permanente, and other companies and individuals.

Debtor is in the process of beginning a supplemental contract with AltaMed PACE to provide NEMT services.  These funds are expected to up to double Debtor's monthly revenue, which currently ranges about $300,000.  Therefore, this would be an increase up to $600,000.

Chapter 11, Combined Chapter 11 Plan                                          R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                    Case # 8:25-bk-10631-SC

This is an operating Chapter 11 Plan of Reorganization (the "Plan") where proceeds from at least three NEMT service provider contracts will provide the Plan funding. The respective Sponsors[2] of these contracts are AltaMed PACE, AltaMed Healthcare Network, and Call the Car.

The financial information used in drafting the Plan was prepared by Debtor's Responsible Individual, Ryan Morris, ("Morris") with the assistance of Debtor's advisors, from information in Debtor's books and records. A description of fundamental assumptions made by Debtor is included in the Declaration of Debtor's Responsible Individual ("Declaration of Ryan Morris" or "Morris Declaration") that accompanies this Plan. The statements and information contained in the Plan do not constitute financial or legal advice. You should consult your own advisors about the impact of the Plan on your claims. Any interested party desiring further information about the Plan should contact Debtor's counsel, Andy C. Warshaw. The best telephone number to reach Debtor's counsel is (949) 345-1455 or by email to andy@dimarcowarshaw.com.

Unless another time is expressly specified in the Plan, all statements contained in the document are made as of September 8, 2025. The following Exhibits, which are attached to the Morris Declaration, provide additional information in support of the Plan:

| Exhibit Number | Description |
|---|---|
| 1 | Declaration of Ryan Morris |
| 2 | Projected Income and Expenses |
| 3 | Claims Against the Bankruptcy Estate |
| 4 | Projected Disbursement Schedule |
| 5 | ~~Ballot~~Original Chapter 11 Ballot |
| 6 | ~~Scheduling~~ Order Continuing Hearing on Plan Confirmation and Status Conference |
| 7 | Definitions |
| 8 | Liquidation Analysis |

---

[2] Sponsor as used here is defined as a signatory entity that is the Sponsor is: 1) not the transportation provider, 2) not the party receiving rides, and 3) the entity assuming financial and/or administrative responsibility.

C.  Confirmation Procedures

Debtor believes that the proposed Plan is in the best interest of creditors and the bankruptcy estate. Debtor recommends that all eligible creditors entitled to vote on the Plan cast their Ballots accepting the Plan.

1.  Time and Place of the Confirmation Hearing

The continued hearing at which the Court will determine whether to confirm the Plan will take place on April 8, 2026October 29, 2025, at 1:30 p.m., in Courtroom 5C, 411 West Fourth Street, Santa Ana, CA 92701.

2.  Deadline for Voting for or Against the Plan

If you are entitled to vote, it is your sole responsibility to timely vote on the enclosed ballot and return the ballot by email to: andy@dimarcowarshaw.com.  Your ballot must be received by October 1, 2025, or it will not be counted.

3.  Deadline for Objecting to the Confirmation of the Plan

Any opposition Objections to confirmation of the Plan must be filed with the Court and served upon Debtor's counsel and all other parties by no later than March 25, 2026.  Replies may be filed no later than April 1, 2026. *See* ECF No. 388.  Debtor submits the Amended Plan requires no re-solicitation. This will be further addressed in Debtor's concurrently filed Confirmation Brief.The following is the current briefing schedule:

Confirmation Brief and Ballot Summary are due by October 8, 2025

Opposition, if any, to confirmation of Debtor's Chapter 11 Plan are due by October 15, 2025

Any reply by Debtor to Chapter 11 Plan objections is due by October 22, 2025

Confirmation Hearing & Continued Status Conference – October 29, 2025, at 1:30 p.m. Debtor shall submit a status report 14 days in advance.

## II.  **THE PLAN**

### **Classification and Treatment of Claims**

The Plan describes how creditors will be paid.  Certain claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purposes of payment.  For example,

Chapter 11, Combined Chapter 11 Plan                                                   R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                        Case # 8:25-bk-10631-SC

administrative expenses and priority tax claims are not classified.

As required by the bankruptcy code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests. The Plan designates which classes are impaired and which classes are unimpaired. The Plan also describes the treatment each class will receive under the Plan. Debtor pledges its projected disposable income over a period of five years. Debtor anticipates that the funds available to the bankruptcy estate to use as Plan Payments upon the Effective Date will be at least $61,000.

If the Plan is confirmed, each creditor's recovery is limited to the amount provided in the Plan.

### **What Creditors and Interest Holders Will Receive Under the Proposed Plan**

**Allowed Claims and Interests.** Generally, a claim or interest is allowed if it is timely and properly scheduled or filed, and (a) was not objected to; or (b) was objected to or was settled by the parties or otherwise determined by a court order. Allowed claims and interests are treated under the Plan.

A. Unclassified Claims

Certain types of claims are not placed into voting classes. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, Debtor has not placed the following claims in a class:

1. Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1). The Bankruptcy Code requires that all administrative claims are paid upon the Effective Date, absent a particular claimant agreeing to a different treatment. The Court must rule on all administrative fees except Clerk's Office fees and U.S. Trustee fees, before they are paid. The professional seeking compensation must file and serve a properly noticed fee application, and the Court must rule on the application. Administrative expenses include claims under §503(b)(2) for fees and expenses of the trustee and of professionals employed by a debtor and the trustee under §330(a). Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan.

The following is an estimate of the § 507(a)(1) administrative claims that will be incurred and

Chapter 11, Combined Chapter 11 Plan                                          R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                   Case # 8:25-bk-10631-SC

unpaid through the Effective Date[3] of the Plan, including the treatment under the Plan.  Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, § 1129(a)(9) generally requires that such claims be paid in full on the plan's Effective Date.  Here, the plan provides for the payment of administrative claims through the Plan.  The attorney fees requested may be different depending on several factors that are not possible to determine with certainty at this time.  It is anticipated that an interim or a final fee application will be filed after approval of the disclosure statement or after plan confirmation.

| Name | Payment on Eff.  Date | *Treatment* |
|---|---|---|
| DiMarco Warshaw, APLC | $90,000.00 | An estimated minimum of $90,000.00 will be paid from cash on hand on the Effective Date.  In addition to amounts paid on the Effective Date, the balance of approved fees and costs will be paid in monthly installments over the first six months of the Plan or less. |
| Penny Fox | $60~~45~~,000.00 | An estimated minimum of $60~~45~~,000.00, be paid from cash on hand on the Effective Date.  In addition to amounts paid on the Effective Date, the balance of approved fees and costs will be paid in monthly installments over the first six months of the Plan or less. |
| **Total** | $1~~3~~50,000.00 | |

Except as otherwise provided in the Plan, requests for payment of administrative claims (other than professional fees and expenses) must be filed and served on Debtor (or the Reorganized Debtor), its counsel, and the U.S. Trustee no later than thirty (30) days after the Effective Date.  All such requests for payment of administrative claims and applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

---

[3] The term "Effective Date" is defined in section III.D.4.  of this Plan.

Chapter 11, Combined Chapter 11 Plan                                 R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                          Case # 8:25-bk-10631-SC

Holders of administrative claims (except for professionals) requesting compensation or reimbursement of expenses that do not file such requests by the administrative claims bar dates noted above will be forever barred from asserting such claims. No further notice of the administrative claims bar dates noted above will be given.

In the event of a default in payments of Debtor for administrative fees, including those owed to DiMarco Warshaw, APLC ("the Firm"), the Firm will give Debtor notice of the default by electronic mail and advise Debtor that it has ten days to cure the default. If Debtor does not cure within the time period, the Firm will be permitted to accelerate the balance due and enforce the order of this Court approving fees by whatever means are available, including the costs and expenses related to the recording of the order and costs of collection. The Firm shall not be required to get further approval of this Court related to outstanding fees owed by Debtor. Debtor and the Firm are permitted to communicate and agree to payment of the Firm's administrative claim without an automatic stay violation.

#

#

#

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                    Case # 8:25-bk-10631-SC

11

##### 2.    Priority Claims Consisting of Amounts Owed to Governmental Units

Priority claims consist of taxes and debts owed to governmental units and certain unsecured taxes, custom duties, and penalties owing to federal, state, and local governmental units involved in the proceeding as set forth by 11 U.S.C. Section 507(a)(8).  The Code requires that each holder of Section 507(a)(8) priority claims receives the present value of such a claim in deferred cash payments, over a period not exceeding five years from the date of filing of the Order for Relief (the Petition Date).  Debtor provides for Section 507(a)(8) priority tax claims as summarized below per filed proof of claims ("POC"):

| Name / Claim Information | Treatment |
|---|---|
| Internal Revenue Service POC 2: $1,976,446.21~~2,584,238.82~~, treated under the Plan as a disputed claim that is paid $1,268,532.95, plus interest in accordance with Section 511. | Debtor ~~has recently~~ previously filed prepetition income tax returns and believes the IRS' estimated claim amount does not reflect these filed tax returns.  For purposes of plan estimation, Debtor applies the amount of the filed return against IRS' POC's estimated amounts for prior years.  On October 10, 2025 the IRS amended its claim to reflect one of Debtor's recently filed returns.  The IRS verified to Debtor's CPA that it has not finished processing the other prepetition income tax return filed by the Debtor.<br><br>The allowed priority claim of the Internal Revenue Service will be paid, at the appropriate interest rate (currently 7%), in accordance with Section 511.  Payments will be made monthly, starting with interest-only payments for months 1 to 5 then interest and principal payments from months 6 onward.  *See* Exhibit 4.  Debtor will likely file an objection to the IRS' claim if the remaining prepetition income tax return received by the IRS is not processed and the claim amended by Confirmation. |
| Employment Development Department POC 40: $67,446.49 | The allowed priority unsecured claim of the Employment Development Department will be paid monthly, with the appropriate interest rate (currently 7%), starting with interest-only payments for months 1 to 5 then interest and principal payments from months 6 onward.  *See* Exhibit 4. |

Chapter 11, Combined Chapter 11 Plan                                                            R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                                    Case # 8:25-bk-10631-SC

| California Franchise Tax Board POC 35: $991.549.73, treated under the Plan as a disputed claim that is paid $471,257.75, plus interest in accordance with Section 511. | Debtor previously ~~has recently~~ filed prepetition income tax returns and believes the FTB's estimated claim amount does not reflect these filed tax returns.  For purposes of plan estimation, Debtor applies the amount of the filed return against FTB's POC's estimated amounts for prior years.  On August 15, 2025 the FTB amended its claim to reflect one of Debtor's recently filed returns.  However, the FTB is not likely to amend the remainder of its claim until the IRS processes the other prepetition income tax return filed by the Debtor is identified above.<br><br>The allowed priority unsecured claim of the California Franchise Tax Board will be paid monthly, with the appropriate interest rate (currently 7%), starting with interest-only payments for months 1 to 5 then interest and principal payments from months 6 onward. *See* Exhibit 4.  Debtor will likely file an objection to the FTB's claim if the remaining prepetition income tax return received by the IRS is not processed and the claim amended by Confirmation as the FTB often relies on updating its tax information based on shared information with the IRS. |

B.   Classified Claims and Interests

**Class 1: Unimpaired Secured Claims of Debtor**

None.[4]

**Class 2: Impaired, Secured Claims of Debtor**

There are no insiders in this class and each of the secured claims is impaired.

| CLASS | CREDITOR | AMOUNT | TREATMENT |
|---|---|---|---|
| 2-A | U.S. Small Business Administration ("SBA") | $522,970.37 per POC[5] #25 | ~~Debtor will request the SBA to re-amortize its entire claim balance over thirty-years.  If accepted by the SBA, Debtor will pay the SBA's allowed secured claim in full, amortized over thirty-years.  This obligation will be repaid at an interest rate of 3.75%.~~<br>The U.S. Small Business Administration ("SBA")'s claim will be reamortized to a term period ending on June 30, 2050 ("Payment Term"). The Debtor shall timely remit the monthly contractual payments to the SBA during the Payment Term in the amount of $2,748.24 per month, with interest at the contract rate |

---

[4] While there are no Class 1 creditors expected, this could be subject to change should the proposed plan be amended. Therefore, Class 1 is included here to maintain a static plan structure in the event of later amendment, so that an addition or removal of class creditors will not change class definitions.

[5] Proof of Claim

Chapter 11, Combined Chapter 11 Plan                                        R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                           Case # 8:25-bk-10631-SC

| | | | |
|---|---|---|---|
| | | | of 3.75%, paid on the first business day of every month. Payments shall include the Debtor's SBA Loan number and shall be sent via the MySBA Loan Portal at https://lending.sba.gov, pursuant to the autopay function. Unless as otherwise set forth herein, the terms of the SBA loan documents and agreements entered into by the Debtor and the SBA shall govern, as included in SBA's Proof of Claim #25.<br><br>To the extent that any deficiency remains as of the final month of the Payment Term, or June 2050, the Debtor shall pay any remaining balance that month as a balloon payment. The SBA shall retain its lien on the collateral securing its claim until its allowed secured claim has been paid in full, as provided under the terms of the plan. Upon full satisfaction of the secured claim, the SBA shall release its lien and take all necessary steps to effectuate such release. |
| 2-B | Santander Consumer USA Inc. | $13,416.53 per POC #15 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $10,975.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-C | Santander Consumer USA Inc. | $13,092.58 per POC #9 | Debtor will pay the full value of Creditor's allowed claim in the amount of $13,092.58, amortized over the 60-month plan term at the interest rate set forth in Creditor's POC. According to the POC, the collateral value exceeds the claim amount, and the underlying note is scheduled to mature in April 2026. Under the Plan, Debtor will extend the maturity date to align with the Plan's duration and will capitalize any prepetition arrears into the allowed claim to be paid in full over the life of the Plan. |
| 2-C | American National Bank | $40,220.96 per POC #19 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $19,250.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-D | American National Bank | $40,403.61 per POC #20 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $19,250.00, which shall be paid over the 60-month plan term at the interest rate |

Chapter 11, Combined Chapter 11 Plan     R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement    Case # 8:25-bk-10631-SC

| | | | |
|---|---|---|---|
| | | | stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-E | American National Bank | $48,804.81 per POC #21 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $19,250.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-E | American National Bank | $48,804.81 per POC #22 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $19,250.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-E | American National Bank | $48,804.17 per POC #23 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $19,250.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-F | Ally Bank | $37,590.37 per POC #29 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $19,434.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-G | Santander Consumer USA Inc. | $43,092.98 per POC #5 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $21,625.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-G | Santander Consumer USA Inc. | $43,905.70 per POC #7 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $21,625.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                        Case # 8:25-bk-10631-SC

15

| | | | |
|---|---|---|---|
| 2-G | Santander Consumer USA Inc. | $43,092.03 per POC #17 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $21,625.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-H | Santander Consumer USA Inc. | $56,413.21 per POC #18 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $25,750.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-I | Ally Bank | $60,511.53 per POC #34 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $2~~6~~5,7~~88~~50.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. _Creditor previously submitted a ballot rejecting Debtor's plan treatment of Class 2-I. Debtor has increased the proposed secured value to Creditor's Proof of Claim No. 34 to an amount matching the same Creditor's Proof of Claim No. 33. The vehicles in Creditor's Proof of Claims No's. 33 and 34 appear to be identical year, make, and model._ |
| 2-J | American National Bank | $40,371.02 per POC #11 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $25,875.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-J | American National Bank | $38,451.43 per POC #12 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $25,875.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-K | Ally Bank | $60,511.53 _per POC #30_ | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $26,393.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the |

Chapter 11, Combined Chapter 11 Plan                R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement              Case # 8:25-bk-10631-SC

16

| | | | |
|---|---|---|---|
| | | | allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-L | American National Bank | $40,188.40 per POC #10 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $26,425.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-M | American National Bank | $48,749.95 per POC #13 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $26,425.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-M | American National Bank | $48,749.31 per POC #14 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $26,425.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-N | Ally Bank | $60,511.53 per POC #33 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $26,788.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-O | Ally Bank | $45,518.26 per POC #31 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $27,083.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-P | Ally Bank | $45,518.26 per POC #32 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $27,083.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-Q | Santander Consumer USA Inc. | $48,583.93 per POC #6 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by |

Chapter 11, Combined Chapter 11 Plan
of Reorganization and Disclosure Statement

R2 Marketing and Consulting, LLC
Case # 8:25-bk-10631-SC

17

| | | | |
|---|---|---|---|
| | | | motion or stipulation, to $37,350.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-R | Santander Consumer USA Inc. | $48,729.32 per POC #16 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $37,350.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-S | Ford Motor Credit Company LLC | $70,536.80 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $42,525.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-T | Ford Motor Credit Company LLC | $73,882.65 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $42,835.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-U | CIT Bank | $304,193.79 | Debtor intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $103,000.00, which shall be paid over the 60-month plan term at the interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |
| 2-V | The Huntington National Bank | $441,634.40 per POC #4 | After mutual agreement with The Huntington National Bank, Debtor moves intends to value and "cram down" the secured portion of Creditor's claim, either by motion or stipulation, to $249,885.00127,575.00, which shall be paid over the 60-month plan term at the 14.91% interest rate stated in Creditor's POC. Any portion of the allowed claim in excess of the secured amount shall be treated as a GUC and classified accordingly under the Plan. |

**Adjustment of Secured Claims for Pre-Confirmation Payments:**

Notwithstanding any provision of this Plan to the contrary, the allowed secured claim of each

Chapter 11, Combined Chapter 11 Plan
of Reorganization and Disclosure Statement

R2 Marketing and Consulting, LLC
Case # 8:25-bk-10631-SC

18

holder of a secured claim treated under this Plan shall be determined as of the Effective Date in accordance with 11 U.S.C. § 506(a), taking into account the value of the collateral and any payments made to such holder prior to the Effective Date, including, without limitation, adequate protection payments.

To the extent that any pre-confirmation payments were made to compensate such holder for depreciation or diminution in the value of its collateral, such payments shall be credited in determining the amount of such holder's allowed secured claim and the treatment thereof under the Plan.

Following the Effective Date, the Debtor shall confer in good faith with each affected secured creditor to reconcile the amount of such creditor's allowed secured claim consistent with this provision. In the event the parties are unable to agree, the Debtor may seek a determination from the Court, and the Court shall retain jurisdiction to resolve any such dispute.

Any resulting adjustments to the amount of an allowed secured claim shall be reflected in the amortization and payment schedule under the Plan, and shall not constitute a modification of the Plan.

**Class 3: Class of General Unsecured Claims**

Class 3 contains unsecured claims that are not entitled to priority under Code Section 507(a). Each allowed general unsecured claim ("GUC") that is not disputed, contingent, or subject to a claim objection or plan treatment stipulation will receive its pro rata share that is estimated to be 5.26.0 percent of its allowed claim, to be in monthly installments starting in month 6  and concluding at the end of the fifth year following the Effective Date, or upon payment in full, whichever occurs sooner.  This is a pot-plan, meaning that the distribution to the general unsecured class is subject to adjust.  The table below provides a summary of the Class 3 claimants, the amount of monthly payment, and the percentage paid during the 60-month period of the plan.  A list of disbursements to Class 3 GUCs is included in Exhibit 4.

| Description | Class 3 TREATMENT for GUCs | - |
|---|---|---|
| GUCs | Payment Interval: | Monthly |

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                         Case # 8:25-bk-10631-SC

| Total Current Amount of claims excluding contingent, unliquidated, and disputed claims: $2,109,923.691,606,917.94 | Payment Amount per quarter: | Monthly Quarterly payments of at least $26,000 per quarter beginning in month 815. Funds will accumulate and be held before month 15 for gross disbursement. See the Disbursement Schedule in Exhibit 4. |
|---|---|---|
| Impaired: Yes | Interest Rate: | 0% |
| Insiders: No | Total Payout in $: | $110,000.00 |
| | Total Payout in %: | 5.26.8% |

## Class 4: Lease Assumptions and Rejections

On the Effective Date, the following executory contracts, unexpired leases, or personal guarantees of leases or contracts will be treated as obligations of the Reorganized Debtor, as follows under this Chapter 11 Plan:

| Lessor / Lessee | AMOUNT | DESCRIPTION / INTENTION / TREATMENT |
|---|---|---|
| Regus Management Group LLC | $330,03358.4700 | Description: Lease on commercial property located at 19800 MacArthur Boulevard, Suite 360, Irvine, CA 92612.<br><br>Intention: Assume.<br><br>Treatment: Lease arrears shall be paid in increasing monthly payments commencing in Month 1 and completing by month 56. |

On the Effective Date, any lease or unexpired executory contract that is not specifically assumed is rejected under the Plan. The order confirming this Plan shall constitute an Order approving the rejection of any other leases or contracts. If you are a party to a lease or contract to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan.

The bar date for filing a POC based on a claim arising from the rejection of a lease or contract is thirty (30) days after entry of the order confirming the Plan. Any claim based on rejection of a contract or lease will be barred if the POC is not timely filed unless the Court later orders otherwise.

## Class 5: Interest Holders

Chapter 11, Combined Chapter 11 Plan                                      R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                           Case # 8:25-bk-10631-SC

20

Debtor is an individual and is the interest holder.  Its interests shall not be impaired under the Plan.

### Class 6: Disputed, Contingent, and Unliquidated Claims

**Disallowed Claims and Interests.**  A claim or interest is disallowed if it was timely objected to by the Debtor and the court made a ruling that the claim or interest is disallowed in part or entirely. Disallowed claims are not treated under the Plan.

**Disputed Claims and Interests.**  A claim or interest is disputed if a ruling on allowance has yet to be made and (a) a POC or interest has been filed or deemed filed and the Debtor or a party in interest has filed an objection; or (b) a POC or interest has not been filed and the Debtor scheduled such claim or interest as disputed, contingent, unliquidated or unknown.

Creditors and interest holders in Class 6 are subject to having their debts and interests discharged under 11 U.S.C. Section 1141 without receiving any distribution under the Chapter 11 plan.  The claims of Class 6 members were listed in Debtor's Schedules as disputed.  None of the members of Class 6 filed proofs of claim by the Claims Bar Date of August 5, 2025.  Accordingly, the holders of Class 6 claims do not have allowed claims in this bankruptcy proceeding and will not receive any distribution under the Plan.

| Creditor | Amount of Claim | Basis of Objection to Claim or Interest |
|---|---|---|
| ADLI Law Group | $35,578.70 | Legal Services |
| CB Charge | $35,471.99 | Charge Account |
| Enterprise Mobility | $216,697.00 | Services |
| Model 1 Commercial Vehicles | $38,344.99 | N/A |
| Motive Card | $18,204.00 | Charge Account |
| Ryan Morris | $150,000.00 | Services |
| Verizon Wireless | $71,673.09 | Utility |

Parties in Class 6 shall be enjoined from demanding, pursuing, or obtaining payment from Debtor on their alleged debt for a period of sixty-two months following the Effective Date, conditioned upon Debtor making payments as required under the terms of the Chapter 11 plan.  This injunction ensures

Chapter 11, Combined Chapter 11 Plan                                R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                          Case # 8:25-bk-10631-SC

21

that Debtor can perform under the terms of the Chapter 11 plan in funding sixty months of payments for the benefit of the allowed claims belonging to secured and unsecured creditors in this case, without having to defend against claims that were not filed in Debtor's bankruptcy case.

C. Effective Date

The Effective Date of the Plan shall be the first day of the month following the entry of the order confirming the plan that is at least fifteen days after the date an order confirming Debtor's plan is entered, assuming that there has been no order staying the effectiveness of the Confirmation Order.

D. Means of Performing and Effectuating the Plan

This section is intended to explain how Debtor intends to effectuate the Plan, and how Debtor intends to fund the obligations to holders of allowed claims as provided for under the Plan.  The section provides information regarding the funding sources for Plan obligations and other material issues bearing upon the performance of the plan.

1.    Funding the Plan

Debtor will fund the Plan from the following sources: (a) projected disposable income as set forth in Exhibit 2 over the term of the Plan; (b) cash on hand on the Effective Date, in an amount estimated at $61,000.

2.    Early Payment

Debtor is permitted to prepay any obligation under the Plan without any penalty or added costs, including, but not limited to, payment of any interest that would have accrued if the obligation had been paid under the interval terms of the Plan.  When all obligations under the Plan have been paid, Debtor may apply for a discharge.

E. Post-Confirmation Management

Debtor will continue to operate its business interests and manage the bankruptcy estate, pursuant to the terms of the Plan, as the Reorganized Debtor. *See* Section VII G for additional information.

F. Disbursing Agent

Debtor will act as the disbursing agent for making distributions required under the Plan.  The disbursing agent shall serve without bond and shall be compensated for distribution services rendered

Chapter 11, Combined Chapter 11 Plan                                R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                          Case # 8:25-bk-10631-SC

22

and expenses incurred pursuant to her approved employment terms with the bankruptcy estate.

Distributions shall be made by Debtor according to the confirmed Plan. The distributions to be made under the Plan shall be made by check drawn on a domestic bank or by wire transfer. The Debtor may, at its own discretion, set up electronic payments to creditors who agree to be paid electronically rather than per the proof of claim address.

Except as otherwise agreed to in writing by the Reorganized Debtor, and the affected claimant, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, then to such address. Checks issued by the Reorganized Debtor to pay allowed claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Any claim holder which fails to timely negotiate its check(s) shall be deemed to have forfeited such unclaimed property. After such date, the unclaimed property held on account of such voided check, or such claim shall be revested in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

G.  Payments to Creditors

The Projected Disbursement Schedule is attached as Exhibit 4.  Based on the cash on hand on the Effective Date, a portion of the administrative claims will be paid on the Effective Date.  Monthly payments from Debtor's projected disposable income shall begin in Month 1 of the Chapter 11 Plan. Class 1 and 2 secured claims will be paid monthly, in accordance with their terms or as modified by this Plan.  Priority tax claims will be paid monthly.  The final payment disbursed by Debtor shall occur with the 60th monthly payment, or when priority tax claims, administrative expenses, and Class 3 unsecured claims have been paid under the Plan [or less should there be a termination of obligation from unprocessed payments], and all continuing secured obligations are current.

Chapter 11, Combined Chapter 11 Plan                          R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                        Case # 8:25-bk-10631-SC

23

These amounts will come from a total of cash on hand on the Effective Date and Debtor's projected disposable income over the 60-month term of the Plan.

H.  Other Provisions of the Plan

1.     Procedures for Resolving Disputed Claims

A Disputed Claim is a Claim that has not been allowed or disallowed and to which either: (i) a POC has been filed or deemed filed and Debtor or another party in interest filed an objection; (ii) no POC has been filed and the Claim was not scheduled, or Debtor scheduled the claim as disputed, contingent, unliquidated, or unknown. In this instance, a single holder of claims listed in schedule E/F, Wexinc.com has filed a POC prior to the applicable Claims Bar Date. However, the claim is deminimus and Debtor therefore does not anticipate filing any objection to the claim as the cost would outweigh any benefit.

After the Effective Date, the Reorganized Debtor shall be vested with the right to object to claims, except those claims that have been objected to, settled, compromised, or otherwise resolved prior to Confirmation. After the Effective Date, the Reorganized Debtor will have the right and standing to object to any claims, whether or not such claims are listed as disputed in Exhibit 3.

As provided by 11 U.S.C. § 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan if impaired claims are found to exist by the Court. The Court shall retain jurisdiction over Debtor, the Reorganized Debtor, and the Bankruptcy Case (until entry of a final decree and order closing the case) to resolve such objections to claims following the confirmation of the Plan, if necessary.

Nothing contained in the Plan shall constitute a waiver or release by Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim.

2.     Adversary Proceedings

Upon entry of the Confirmation Order, the Reorganized Debtor shall be vested with the right and standing to commence any adversary proceedings under Bankruptcy Code sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 (collectively, "avoidance actions"), except such adversary proceedings as have been commenced and/or resolved by the debtor prior to entry of the confirmation order. The Reorganized Debtor shall be required to commence any avoidance actions or other adversary

Chapter 11, Combined Chapter 11 Plan                                     R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

24

proceedings by no later than 2 years after the petition date (or, if such day falls on a weekend or holiday, the next business day thereafter). The Reorganized Debtor and Debtor shall have the right to settle or compromise any avoidance actions and other adversary proceedings pursuant to the procedure established in LBR 9013-1(g), except that notice of the proposed settlement or compromise shall be provided to the twenty largest unsecured creditors, those parties requesting special notice, the Reorganized Debtor, and the Office of the U.S. Trustee.

### 3. Plaintiff Claims

None.

### 4. Retention of Jurisdiction

The Court may exercise jurisdiction over proceedings concerning: (a) whether Debtor is in material default of any Plan obligation; (b) whether the time for performing any Plan obligation should be extended; (c) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in the Plan to be filed I this Court; (d) whether the case should be dismissed or converted to one under Chapter 7; any objections to claims; (f) compromises of controversies under Federal Rule of Bankruptcy Procedure 9019; (g) compensation of professionals; and (h) other questions regarding the interpretation and enforcement of the Plan.

### 5. Potential § 1111(b) Elections

Section 1111(b) permits a secured creditor to make an election under certain circumstances for allowance or disallowance of its claim the same as if it had recourse against the debtor on account of such claim, whether it has recourse. The § 1111(b)(2) election comes into play when a secured creditor is under secured in that its claim exceeds the value of the property in which it has a lien.

If the election is made, the claim is allowed as secured to the extent it is allowed. The election may be made at any time prior to the conclusion of the hearing on the disclosure statement. Alternatively, if the disclosure statement is conditionally approved under Bankruptcy Rule 3017.1 and a final hearing on the disclosure statement is not held, the election must be made within the date fixed for objections to the disclosure statement under Bankruptcy Rule 3017.1(a)(2) or another date fixed by the court.

If the court does not establish a deadline for making the § 1111(b) election, a creditor may

Chapter 11, Combined Chapter 11 Plan                     R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement               Case # 8:25-bk-10631-SC

nevertheless decide to make the election in response to the filing of the Plan.

## I. **EFFECT OF CONFIRMATION OF THE PLAN**

### 1. Discharge

This Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. Section 1141, upon Substantial Consummation of the Plan. Substantial Consummation of a plan occurs in an individual case at the end of the plan when the Debtor completes plan payments and applies for a discharge. The rights afforded in the Plan and the treatment of all claims shall be in exchange for and in complete satisfaction and discharge with a release of all claims of any nature whatsoever arising prior to the Effective Date against the Debtor and the Estate, including any interest accrued on such claims after the Petition Date. However, the discharge will not discharge any further liability imposed by the Plan.

Except as otherwise provided in the Plan or Confirmation Order, upon Substantial Consummation of the Plan, the Debtor, the Estate, the Reorganized Debtor and its respective property are discharged and released hereunder to the fullest extent permitted by the Bankruptcy Code from all claims and rights against them that arose before the Effective Date, including all debts, obligations, demands, liabilities, and all debts of the kind specified in Bankruptcy Code section 502(g), 502(h), or 502(i), regardless of whether or not a proof of claim based on such debt is filed or deemed filed, regardless of whether a claim based on such debt is allowed pursuant to Bankruptcy Code Section 502, or regardless of whether the holder of a claim based on such debt has or has not accepted the plan. Any judgment underlying a claim discharged hereunder is void. All entities are precluded from asserting against the Debtor, the Estate, and the Reorganized Debtor and their respective property, any claims or rights based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a claim against the Debtor, the Estate, or the Reorganized Debtor, that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose or occurred prior to the Effective Date, or that otherwise is discharged pursuant to the Plan, are permanently enjoined from taking any of

Chapter 11, Combined Chapter 11 Plan                                  R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                            Case # 8:25-bk-10631-SC

the following actions on account of any such discharged Claim (the "Permanent Injunction"): (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, the Reorganized Debtor, or their respective property, that is inconsistent with the Plan or the Confirmation Order; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, the Reorganized Debtor or their respective property, other than as expressly permitted under the Plan; (c) creating, perfecting, or enforcing any lien or encumbrance against property of the Debtor, the Estate or the Reorganized Debtor, other than what is expressly permitted under the Plan; and (d) commencing or continuing any action in any manner or in any place that does not comply with or may be inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of Bankruptcy Code Section 1141. Any person or entity injured by any willful violation of such Permanent Injunction shall recover actual damages, including costs and attorney fees, and may recover punitive damages from the willful violator.

### 2.   Revesting of Property in Debtor

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all property of the bankruptcy estate in the Debtor or the Reorganized Debtor. From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and is free of any questions of the Bankruptcy Court or Bankruptcy Rules of Federal Procedure.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

### 4.   Injunctions

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively, or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released or terminated pursuant to the Plan. Except as provided in the Plan or the Confirmation Order,

Chapter 11, Combined Chapter 11 Plan                                     R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

27

as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability, or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against Debtor, the Estate, the Reorganized Debtor, or their property on account of any such claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, including adversary proceedings in this bankruptcy case. By accepting distribution pursuant to the Plan, each holder of an allowed claim or allowed interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

### J. Modification of Plan

The Proponent may modify the Plan pursuant to 11 U.S.C. § 1127 (West 2004 & Supp. 2006). Debtor may modify the Plan pursuant to § 1127 of the Bankruptcy Code. Debtor, with the consent of the Court, may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Reorganized Debtor, with consent of the Court, may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing. Nothing herein should be construed to limit Debtor's rights, including to borrow or seek salary advances, seek debt forgiveness, or agree to a payment with a creditor such that all claimants receive at least their treatment under this Plan.

### K. Quarterly Fees

Quarterly fees accruing under 28 U.S.C. Section 1930(a)(6) to the date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the plan. Quarterly fees accruing under 28 U.S.C. Section 1930(a)(6) after confirmation shall be paid to the United States Trustee in

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

accordance with 28 U.S.C. section 1930(a)(6) until entry of an interim or final decree closing the case, or entry of an order of dismissal or conversion to Chapter 7.

L. Post-Confirmation Conversion/Dismissal

Except as otherwise provided herein or in the Confirmation Order, in the event that the Reorganized Debtor shall default in the performance of any of its obligations under the Plan and shall not have cured such a default within thirty (30) days after receipt of written notice of default from the creditor to whom the performance is due, then the entity or individual to whom the performance is due may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one claim shall not be any event of default with respect to any other claim.

M. Reorganized Employment and Compensation of Professionals

After an order confirming the Plan is entered (the "Confirmation Date"), the Reorganized Debtor may employ, without notice, hearing, or order from the Bankruptcy Court, such attorneys, accountants, and other professionals as it desires to render services on such terms as it deems reasonable, and the Reorganized Debtor shall be authorized to pay for such services related costs, and expenses without notice, hearing, or order from the Bankruptcy Court.

As Responsible Individual, Morris will continue to manage the Reorganized Debtor's financial affairs under the plan. Morris employment at R2 Marketing and Consulting, LLC will continue post-confirmation of the Plan.

The Reorganized Debtor shall remain in possession of its assets and shall perform all functions necessary to consummate the Plan, including the operation of Reorganized Debtor's business activities, post-confirmation. Business at R2 Marketing and Consulting, LLC will continue to operate as it did pre-petition with Ryan Morris as the principal and chief managing member.

The Reorganized Debtor's retained professionals shall be deemed employed by the Reorganized Debtor post-confirmation without the need for further order of the Court and shall be paid in the ordinary course. Any professional for the Reorganized Debtor seeking compensation and reimbursement of expenses for services rendered after entry of the Confirmation Order shall be paid as billed in the ordinary course of the Reorganized Debtor's post-petition activities. If for any reason a professional's billing

Chapter 11, Combined Chapter 11 Plan                                        R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                        Case # 8:25-bk-10631-SC

remains unpaid for 21 days after service on Debtor, he/she may apply to the Court for an order directing payment.

The Reorganized Debtor shall have the exclusive right to investigate and prosecute any and all claims of the Estate, including but not limited to any Avoidance Actions, any Post-Confirmation Estate Claims, and any net recoveries shall be additional distributions to unsecured creditors. Debtor shall have exclusive authority to oversee the Disbursement of the Cash in the Disbursement Fund pursuant to the terms of the Plan. The Reorganized Debtor shall have sole and absolute discretion over whether to prosecute, settle or act with respect to any and all claims of the Estate, including but not limited to Avoidance Actions or, any Post-Confirmation Estate Claims. The Reorganized Debtor shall exercise its reasonable business judgment in determining whether to prosecute, settle or act regarding any and all claims of the Estate, including but not limited to Avoidance Actions and the Post-Confirmation Estate Claims. The Disbursing Agent may compromise or settle any all claims of the Estate, including but not limited to Avoidance Actions and Post-Confirmation Estate Claims without further notice, hearing, or Court order. The Reorganized Debtor shall be entitled to retain and pay counsel to prosecute, settle, investigate any objections to claims, avoidance actions or Post-Confirmation Estate Claims without further notice, hearing or Court order. Additionally, nothing herein should be construed to exclude Reorganized Debtor's and a creditor's option to pay a creditor off early if mutually agreed upon by the creditor and the Reorganized Debtor.

III.    **DISCLOSURE STATEMENT**

**READ THE DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    **(1) WHO CAN VOTE OR OBJECT?**

    **(2) HOW IS YOUR CLAIM TREATED (i.e., what your claim will receive if the Plan is confirmed), AND HOW THE TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN CHAPTER 7 LIQUIDATION.**

    **(3) THE HISTORY OF DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY.**

**(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN.**

**(5) WHAT IS THE EFFECT OF CONFIRMATION; AND**

**(6) WHETHER THE PLAN IS FEASIBLE.**

The Disclosure Statement cannot tell you everything about your rights. You should consider consulting with your own attorney to obtain specific advice regarding your treatment in the Plan. Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan governs.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. In other words, it must contain enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can solicit votes for or against the Plan once the Court approves the Disclosure Statement.

Disclaimer: Pursuant to 11 U.S.C. § 1187(c), the Court has not required approval of this Disclosure Statement. Please read this document and the Exhibits to the Morris Declaration carefully. It explains who may object to confirmation of the Plan, who is entitled to vote to accept or reject the Plan, and the treatment that creditors can expect to receive if the Court confirms the Plan and if it becomes effective. The Disclosure Statement also describes the history of Debtor, the events precipitating the Case, certain events in the Case, the effect of Plan confirmation, and some of the things the Court may consider in deciding whether to confirm the Plan. It addresses the Plan's feasibility and how your treatment under the Plan compares to the hypothetical treatment you would receive in a liquidation under chapter 7. The statements and information contained in the Plan and Disclosure Statement, however, do not constitute financial or legal advice. You should consult your own advisors about the impact of the Plan on your claims.

You may not rely on the Plan and Disclosure Statement for any purpose other than to determine whether to vote to accept or reject the Plan. The statements and information set forth in the document constitute the only statements and information that the Court approved for soliciting votes to accept or reject the Plan. Therefore, no statements or information inconsistent with anything contained in the

Chapter 11, Combined Chapter 11 Plan                                            R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                     Case # 8:25-bk-10631-SC

31

Disclosure Statement are authorized unless otherwise ordered by the Court.  Nothing contained in the Plan or Disclosure Statement constitutes an admission of any fact or liability or may be deemed to constitute evidence of the tax or other legal effects that the reorganization set forth in the Plan may have on entities holding Claims.

## **CONFIRMATION REQUIREMENTS AND PROCEDURES**

A. Chapter 11 Requirements

The Plan will not be binding or operative unless it is confirmed by the Court after notice and a hearing. Section 1129 of the Bankruptcy Code sets forth the specific requirements for confirmation. Several of those involve the classification of Claims and Interests.[6]

All Creditors and Interest-holders are asked to vote to accept or reject the Plan. The Court will examine whether each Class has accepted the Plan by the requisite majority. If all Classes vote to accept the Plan, the Plan will be confirmed if the Court determines the Plan meets certain legal requirements. See, generally, Bankruptcy Code Section 1129(a). If at least one Class of Creditors, but fewer than all Classes, has voted to accept the Plan without considering the vote of any insiders, the Debtor will seek confirmation of the Plan pursuant to the "cram down" provisions of Bankruptcy Code Section 1129(b). The Debtor reserves the right to assert that the Plan, as drafted, meets the requirements of Section 1129(b) and to modify the Plan prior to confirmation.

Under such circumstances, the Court must also find that each Creditor and each Interest-holder that rejected the Plan will receive at least as much under the Plan as it would in a liquidation case under Chapter 7 of the Bankruptcy Code.  (These matters are explained in greater detail below.)

Persons or entities concerned with confirmation of the Plan should consult with their own

---

[6] The Debtor believes that the Plan meets the classification requirements of the Bankruptcy code, which mandates that all Claims comprising a Class be "substantially similar." Disputes regarding the proper classification of Claims not specifically classified in the Plan will be resolved pursuant to the procedures established by the Bankruptcy code, the Federal Rules of Bankruptcy Procedure and other applicable law, the Court and the Plan. Such resolution shall not be a condition precedent to confirmation or consummation of the Plan. For example, although one class is comprised of a specifically named Creditor, others are defined generally. It is not a condition precedent to confirmation or consummation of the Plan that a determination be made as to whether a specific Creditor is or is not a member of any particular Class of Claims. You may have the opportunity to request such a determination at various points in the confirmation process.

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

attorneys because the law on confirming a plan of reorganization is very complex. The following discussion is intended solely for alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. Debtor cannot and does not represent that the discussion contained within is a complete summary of law on the topic.

The Plan proposes that Debtor will use its projected disposable income over a 60-month period to fund the plan. *See* Exhibit 2.

Section 1129(a)(7)(A)(ii) also requires that a plan provide payments to unsecured creditors that are at least equal to what such creditors would receive in a chapter 7 liquidation. As set forth in more detail in section V below, and in the Liquidation Analysis attached as Exhibit 8, the liquidation value of Debtor's non-exempt assets, after deducting costs of sale, capital gains taxes and chapter 7 administrative expenses, is not more than $0.00.

In total, in addition to making regular monthly payments to secured creditors, Debtor proposes to provide approximately $3,526,276.88059,858.30 to fund the Plan (including an estimated $6158,000 in cash on hand on the Effective Date and 60 months of its net disposable income, thus protecting the assets of the bankruptcy estate. Because the funds available to pay creditors exceed the liquidation value of its non-exempt assets, Debtor believes that the Plan meets all the requirements under §§ 1129(a)(7)(A)(ii).

B. Voting

1. Who May Vote or Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class. At this time, the Court has not ordered re-solicitation of votes for consideration of the Amended Plan.

a. *What Is an Allowed Claim?*

A claim is deemed allowed if (1) it is scheduled on Debtor's schedules and such claim is not

Chapter 11, Combined Chapter 11 Plan                                R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                          Case # 8:25-bk-10631-SC

scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

b.    *What Is an Impaired Claim/Interest?*

A claim is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim, plus interest.  In this case, as is set forth in the following table, Debtor provides that Classes 2, 3, and 4 are impaired and that holders of claims in these classes may vote to accept or reject the Plan.  Parties who dispute Debtor's characterization of their claim or interest as impaired may file an objection to the Plan.

| Class | Impairment | Claim or Creditor | Class Voting Right |
|---|---|---|---|
| Unclassified | Yes | Unsecured Priority Tax Claims of Governmental Entities | Yes |
| 2-A | Yes | U.S. Small Business Administration | Yes |
| 2-B | Yes | Santander Consumer USA Inc. | Yes |
| 2-C | Yes | Santander Consumer USA Inc. | Yes |
| 2-C | Yes | American National Bank | Yes |
| 2-D | Yes | American National Bank | Yes |
| 2-E | Yes | American National Bank | Yes |
| 2-E | Yes | American National Bank | Yes |
| 2-E | Yes | American National Bank | Yes |
| 2-F | Yes | Ally Bank | Yes |
| 2-G | Yes | Santander Consumer USA Inc. | Yes |
| 2-G | Yes | Santander Consumer USA Inc. | Yes |
| 2-G | Yes | Santander Consumer USA Inc. | Yes |
| 2-H | Yes | Santander Consumer USA Inc. | Yes |
| 2-I | Yes | Ally Bank | Yes |
| 2-J | Yes | American National Bank | Yes |
| 2-J | Yes | American National Bank | Yes |
| 2-K | Yes | Ally Bank | Yes |
| 2-L | Yes | American National Bank | Yes |
| 2-M | Yes | American National Bank | Yes |
| 2-M | Yes | American National Bank | Yes |
| 2-N | Yes | Ally Bank | Yes |
| 2-O | Yes | Ally Bank | Yes |
| 2-P | Yes | Ally Bank | Yes |
| 2-Q | Yes | Santander Consumer USA Inc. | Yes |
| 2-R | Yes | Santander Consumer USA Inc. | Yes |
| 2-S | Yes | Ford Motor Credit Company LLC | Yes |
| 2-T | Yes | Ford Motor Credit Company LLC | Yes |
| 2-U | Yes | CIT Bank | Yes |
| 2-V | Yes | The Huntington National Bank | Yes |
| 3 | Yes | UnitedHealthcare Insurance Company | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |

Chapter 11, Combined Chapter 11 Plan                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                    Case # 8:25-bk-10631-SC

34

| 3 | Yes | U.S. Small Business Administration | Yes |
|---|---|---|---|
| 3 | Yes | Wexinc.com | Yes |
| 3 | Yes | InstaFunding LLC | Yes |
| 3 | Yes | JPMorgan Chase Bank, N.A. | Yes |
| 3 | Yes | Netradyne Inc. | Yes |
| 3 | Yes | U.S. Small Business Administration | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | Ally Bank | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Ally Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | Ally Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | American National Bank | Yes |
| 3 | Yes | Ally Bank | Yes |
| 3 | Yes | Ally Bank | Yes |
| 3 | Yes | Ally Bank | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Santander Consumer USA Inc. | Yes |
| 3 | Yes | Ford Motor Credit Company LLC | Yes |
| 3 | Yes | Ford Motor Credit Company LLC | Yes |
| 3 | Yes | CIT Bank | Yes |
| 3 | Yes | The Huntington National Bank | Yes |
| 4 | Yes | Regus Management Group LLC | Yes |

| Class | Impairment | Creditor and Proof of Claim #  ("POC") [7] | Class Voting Right |
|---|---|---|---|
| Unclassified | Yes | Unsecured Priority Tax Claims of Governmental Entities | Yes |
| 1 | - | - | - |
| 2-A | Yes | US Small Business Administration POC #25 | Yes |
| 2-B | Yes | Santander Consumer USA Inc. POC #15 | Yes |

[7] American National Bank's POC #19 thru 23 ("Claims 19-23") were previously identified in Debtor's original plan as Class 2-C, 2-D, and 2-E respectively.  However, on their face, Claims 19-23 are out-of-date duplicates of POC #10 thru 14 ("Claims 10-14").  While filed later, Claims 19-23 were signed by creditor earlier than Claims 10-14 which were signed by creditor's

Chapter 11, Combined Chapter 11 Plan                           R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                     Case # 8:25-bk-10631-SC

35

| | | | |
|---|---|---|---|
| **2-C** | Yes | Santander Consumer USA Inc. POC #9 | Yes |
| **2-G** | Yes | Santander Consumer USA Inc. POC #5 | Yes |
| **2-G** | Yes | Santander Consumer USA Inc. POC #7 | Yes |
| **2-G** | Yes | Santander Consumer USA Inc. POC #17 | Yes |
| **2-H** | Yes | Santander Consumer USA Inc. POC #18 | Yes |
| **2-I** | Yes | Ally Bank POC #34 | Yes |
| **2-J** | Yes | American National Bank POC #11 | Yes |
| **2-J** | Yes | American National Bank POC #12 | Yes |
| **2-K** | Yes | Ally Bank POC #30 | Yes |
| **2-L** | Yes | American National Bank POC #10 | Yes |
| **2-M** | Yes | American National Bank POC #13 | Yes |
| **2-M** | Yes | American National Bank POC #14 | Yes |
| **2-N** | Yes | Ally Bank POC #33 | Yes |
| **2-O** | Yes | Ally Bank POC #31 | Yes |
| **2-P** | Yes | Ally Bank POC #32 | Yes |
| **2-Q** | Yes | Santander Consumer USA Inc. POC #6 | Yes |
| **2-R** | Yes | Santander Consumer USA Inc. POC #16 | Yes |
| **2-V** | Yes | The Huntington National Bank POC #4 | Yes |
| **3** | Yes | General Unsecured | Yes |
| **4** | Yes | Lease Assumptions: Regus Capital Management POC #39 | Yes |
| **5** | - | Interest Holder | - |
| **6** | Yes | Disputed, Contingent, and Unliquidated Claims | No |

counsel of record.  Claims 19-23 generally put forth less favorable terms.  Also, Debtor has surrendered the collateral of CIT Bank (formerly Class 2-U, POC #3), Ford Motor Credit Company (formerly Classes 2-S and 2-T, POC #'s 24, and 28), and Ally Bank (formerly Class 2-F, POC #29) and those creditors no longer have secured proof of claims.  Ally Bank has filed an amended POC #29 for its general unsecured deficiency claim.

Chapter 11, Combined Chapter 11 Plan                      R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                Case # 8:25-bk-10631-SC

36

### 3.    Who Is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes, and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to reject the Plan.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary for a Class to Accept the Plan

The Court cannot confirm the Plan unless (1) at least one impaired class accepts the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "craw down" on non-accepting classes.

If the claims (or interests) in a class are impaired, the debtor needs to rely on §1129(a)(8)(A) and solicit votes of the class members. The plan can be confirmed with respect to a voting class with a majority in number and two-thirds in amount.  The numbers are of those voting (not "of all creditors"). So, if there are fifty creditors in a class and only ten cast ballots, the majority requirement is met with six ballots in favor of the Plan.  For the dollar amount requirement, the requirement is met based not on total claims in the class but on an analysis of the ballots returned.  For example, if claims total $1 million and only claims aggregating $50,000 return ballots, then you have two-thirds in amount if you get the votes of claims aggregating $34,000. *See* 11 USC §1126.

Chapter 11, Combined Chapter 11 Plan
of Reorganization and Disclosure Statement

R2 Marketing and Consulting, LLC
Case # 8:25-bk-10631-SC

C.  Treatment of Non-Accepting Classes

The Court may confirm the Plan if the non-accepting classes are treated in the manner required by the Code. If the Debtor does not achieve an accepting class from all possible voting classes, the Debtor will ask the Court to confirm the Plan by cram down on the impaired class or classes so long as a single class votes in favor of the Plan.

The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all the consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. Section 1129(b).

D.  Revocation of Plan/No Admissions.

Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing date. Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will be deemed an admission by Debtor with respect to any matter set forth in the Plan, constitute a waiver, acknowledgement, or release of any claims against Debtor, or prejudice in any manner the rights of any party in any further proceedings.  Even if the plan is not confirmed, nothing shall be construed as an admission of liability.

E.  Description and History of Debtor and Its Business Interests

Debtor has no interests in other business entities.

1.      Significant Events Leading to the Bankruptcy

In March 2024 Debtor lost a large contract with Modivicare. Around the same time, Debtor lost one of the locations in its contract with AltaMed. The combination decreased Debtor's business and caused substantial hardship, reducing Debtor's overall income. For a time, Debtor only had two contracts, which did not provide sufficient income to meet its monthly expenses. To meet its weekly payroll and other operating obligations, Debtor entered several Merchant Cash Advance Agreements ("MCAs"), which led to filing the prior bankruptcy case, as well as this one. Debtor's initial bankruptcy case was dismissed. Debtor filed this bankruptcy case on March 12, 2025. The OSC re dismissal was discharged

Chapter 11, Combined Chapter 11 Plan                                              R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                      Case # 8:25-bk-10631-SC

after Debtor filed a pleading that explained the circumstances.

After the prior case was dismissed, Spartan Business Funding, LLC ("Spartan"), an MCA, levied Debtor's funds. Another MCA contacted Debtor's main provider and caused the provider to put a hold on over $70,000.00. The funds have since been released back to Debtor, but the daily withdrawals impeded Debtor's ability to operate effectively, even after Debtor obtained a new contract that provides a steady stream of income.

### 2. Current and Historical Financial Condition

The main source of revenue for Debtor is at least three contracts for services as a NEMT provider.

### F. Claims Bar Date

The general bar date for creditors of Debtor to file proofs of claim was August 5, 2025, with the exceptions set forth in Form F3003-1.NOTICE.BARDATE.  With respect to governmental units, the claims bar deadline is September 8, 2025.  Forty proofs of claim were timely filed.

A claim is deemed allowed if (1) it is scheduled on a debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.  Under 11 U.S.C.  Section 1111(a), those claims or interests that were scheduled as disputed, contingent, or unliquidated by Debtor in its petition and schedules are treated as unfiled claims unless the creditor filed a proof of claim in the case on or before the claims bar date.

### G. Actual and Projected Recovery of Preferential or Fraudulent Transfers

Debtor is not aware of any preferential or fraudulent transfers.

### H. Employment of Professionals

Debtor employed DiMarco Warshaw, APLC, as counsel for Debtor in Possession.  Debtor also employed the CPA firm of Penny Fox to assist with case administration.

No other professional has been employed or is now anticipated to be employed by the bankruptcy estate.

Debtor may retain a tax professional post-confirmation to prepare tax returns on behalf of the bankruptcy estate, which would be a direct payment by the Reorganized Debtor as explained in this

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                    Case # 8:25-bk-10631-SC

39

document for post-confirmation engagement of professionals.

I.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such creditors and equity interest holders would receive in a chapter 7 liquidation.  Debtor's Liquidation Analysis is attached as Exhibit 8 and sets forth estimated recovery values for each class of claims and interests upon distribution of assets under a hypothetical chapter 7 liquidation.

The liquidation analysis demonstrates that, in a chapter 7 liquidation, secured claims would be not be paid in full in accordance with their terms as the majority of all major collateral is overencumbered. Further, absent revision by the IRS and FTB, priority tax claims far exceed any cash or assets available to Debtor and as a result, allowed unsecured claimants would receive $0.

Therefore, the Plan meets the requirement of the Bankruptcy Code by paying GUCs more than what they would receive in a hypothetical chapter 7 liquidation if the assets were liquidated in Chapter 7.  Here, the GUC's are proposed to receive $110,000, an estimated 5.26.8% dividend.

Debtor's Liquidation Analysis was prepared by Debtor and his professionals for the sole purpose of generating a good faith estimate of the proceeds that would be generated if Debtor's assets were liquidated in accordance with chapter 7 of the Bankruptcy Code.  The Liquidation Analysis is not intended and should not be used for any other purpose.  Neither Debtor nor its advisors make any representation or warranty that the actual results would or would not approximate the estimates and assumptions reflected in the liquidation analysis.

Under the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of an allowed claim or interest that does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if Debtor were liquidated under chapter 7 of the Bankruptcy Code.  In Chapter 7, a trustee (the "Chapter 7 Trustee") is appointed to manage a debtor's affairs and conduct a liquidation.  This Liquidation Analysis assumes Debtor would be forced to liquidate and would do so on an expedited, but orderly basis

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

under the supervision of a Chapter 7 Trustee.  Debtor would be forced to cease all operations and use its cash position to liquidate its assets and pay claims in the order of their priority.

Debtor's assets are listed in Debtor's originally filed Schedules A/B.  The assets, values, and encumbrances are illustrated in Exhibit 8.  As set forth in Exhibit 8, the net proceeds from such a hypothetical liquidation of the assets, after costs of sale and payment of secured claims, are estimated to be $0.  After payment of administrative claims and costs of a chapter 7 administration, the net amount available for unsecured creditors would be an estimated $0.

J.   The Absolute Priority Rule and its Impact on the Case: 11 U.S.C. 1129(b)(2)(B)(ii)

The absolute priority rule requires that all unsecured creditors be paid in full before equity security holders can retain any ownership interest in the debtor. *See Liberty Nat'l Enters. V. Ambank La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 654 (9th Cir. 1997); *In re Bonner Mall P'ship*, 2 F.3d 899, 906-07 (9th Cir. 1993). The Absolute Priority Rule is incorporated in § 1129(b)(2)(B) of the Bankruptcy Code, which requires that: "… (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."

There is an exception to the rule, *see Bonner Mall*, 2 F.3d at 906-07, known as the "new value exception." *See also In re Shin*, 306 B.R. 397, 404 n. 17 (Bankr. D.C. 2004) relying on West's Bankruptcy Law Letter (October 2002) "to apply the absolute priority rule to an individual debtor's wholly exempt property stands the absolute priority rule on its head—affording to unsecured creditors an artificial 'priority' in exempt property that unsecured creditors simply do not otherwise possess"); *In re Brotby*, 303 B.R. 177, 195-96 (9th Cir. BAP 2003) (a contribution from an exempt pension would constitute new value). And see Colliers on Bankruptcy ¶ 1129.03[4][c].

New Value

The new value exception to the absolute priority rule allows junior interest holders (*e.g.* shareholders of a corporate debtor or here the debtor himself) to receive a distribution of property

Chapter 11, Combined Chapter 11 Plan                         R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                         Case # 8:25-bk-10631-SC

under a plan if he offers "value" to the reorganized debtor that is: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value or interest received. *Bonner Mall,* 2 F.3d at 909.

The case of *In re Bumgardner*, No. 10-09785-8-SWH provides a reference and a common example of how Debtors address the concept of new value. The Debtor in *In re Bumgardner* proposed a $15,000 lump sum contribution from the Debtor's wife on the date of confirmation to satisfy the new value rule. The Court agreed that the funds satisfied the exception.

> *In re Bumgardner*, No. 10-09785-8-SWH, at *15-16 (Ban Lastly, the court agrees with the debtor's contention that because the new value will go to unsecured creditors, it will ensure compliance with the projected disposable income provision of § 1129(a)(15)(B), and therefore is necessary for an effective reorganization. Additionally, the contribution will provide the debtor with enough capital to ensure that administrative expenses are paid. See RTJJ, Inc., 2013 Bankr. LEXIS 481. For the reasons explained above, the court finds that the proposed $15,000 contribution from the debtor's wife on the date of confirmation satisfies the applicable standards of new value.

In re Bumgardner, No. 10-09785-8-SWH, at *17 (Bankr. E.D.N.C. Feb. 28, 2013)

The Debtor in this case submits it should be able to meet the new value exception using outside funds that are approximate to the threshold approved in *In re Bumgardner*. Debtor will seek outside funding from a non-insider to infuse additional funds into the bankruptcy estate. Such a lump sum infusion of cash into the plan would satisfy the five elements of *Bonner Mall*'s new value test.

(1) new: Only the Debtor's income is required to come into the bankruptcy estate so that the infusion of the SRIT's contribution is new to the bankruptcy estate.

(2) substantial: it is substantial because it vastly exceeds anything creditors would get in a Chapter 7. The liquidation analysis provides that the value of a liquidation is $0. For example, an infusion of $10,000 alone exceeds the Debtor's liquidation analysis result.

(3) money or money's worth: it is in the form of available funds which is money or money's worth.

(4) necessary for a successful reorganization: the funds are necessary for a reorganization because it provides living expenses so that other resources are available for plan payments.

(5) reasonably equivalent to the value or interest received: Because the liquidation analysis shows a return value of $0, there are no unexempt funds held by the Debtor, and any contribution exceeding $0 exceeds funds creditors would get in a liquidation. The liquidation analysis, which is examined below and in Exhibit 8, also shows that the Debtor is not retaining unexempt property in this case that would produce a return for creditors.

As a threshold matter, the Debtor is balance-sheet insolvent and equity is out of the money. The Debtor's secured indebtedness, including the obligation to the Small Business Administration, exceeds the value of the Debtor's assets and will continue to do so even upon completion of the Plan. Accordingly, no holder of an equity interest is receiving or retaining any property of value under the Plan on account of such interest.

The Plan is funded exclusively from the Debtor's post-petition operations and projected disposable income. All value generated by the Debtor is committed to creditor repayment under the Plan. The Debtor is not retaining any non-exempt or realizable value that would otherwise be available for distribution to creditors in a liquidation.

Because unsecured creditors are receiving all economic value available under the Plan, and equity is not receiving or retaining any property of value on account of its interests, the Plan complies with 11 U.S.C. § 1129(b)(2)(B)(ii).

K. Feasibility

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan.

Debtor will make the Plan Payments, as set forth in Exhibit 4, monthly to creditors. Debtor expects that it will have projected disposable income sufficient to make each of the Plan Payments required to be made on each of the proposed payment dates by using its income along with cash reserves. Cash on hand in Debtor's bank account expected thru the end of August is approximately $61,000. *See* Morris Declaration.

As indicated in Exhibit 2, Debtor's projected net cash flow exceeds $48,000 per month. The first

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                             Case # 8:25-bk-10631-SC

month of disbursement in Exhibit 4 following the Effective Date of the Plan will require total plan payments of over $59,686.9167,479.59 due primarily to accumulated administrative expenses. Subsequent months will require payments on average of approximately f at least $62,450.9074,910.45 on average.

The first month is expected to receive funding from cash on hand.  Afterwards, each following month may be funded from regular monthly net profits.  Further, certain operational expenses will shift from the general operations budget to the Plan administration.  Therefore, the Plan remains feasible so long as Debtor has available cash to cover each monthly payment in the event net profits fluctuate.

//

//

//

Debtor anticipates on the projected Effective Date the following amounts will need to be paid:

| Estimated Amount of Available Cash on hand on Effective Date | Source |
| --- | --- |
| $61,000 | Estimated DIP account balance as of July 31, 2025. |

| Disbursement Recipient | Disbursement Amount |
| --- | --- |
| Penny Fox | $4560,000.00 |
| DiMarco Warshaw, APLC | $90,000.00 |
| Total Remaining After Effective Date Payments | $1350,000.00 (or more) remaining after Effective Date payments. |

In order to establish that a proposed plan is feasible, a debtor must also show that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *See* 11 USC § 1129(a)(11).

The Projected Income and Expenses of Debtor that accompanied the Original Plan isare attached as Exhibit 2.  A Projected Schedule of Disbursements is attached as Exhibit 4.

The Debtor's revenue is derived primarily from non-emergency medical transportation

Chapter 11, Combined Chapter 11 Plan                                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                              Case # 8:25-bk-10631-SC

("NEMT") services provided pursuant to contractual arrangements with third-party transportation brokers administering Medicaid-funded programs. These arrangements involve recurring ride volumes tied to ongoing patient care needs.

Due to the administrative structure of such programs, there is an inherent delay between the time transportation services are rendered and when payment is received and/or fully processed. Payments are subject to verification, approval, and batching procedures by the applicable broker or payor. As a result, reimbursement for services rendered in a given period may be received or reflected in subsequent reporting periods. These timing differences may commonly range from approximately 30 to 60 days, and in some instances may extend beyond that range depending on processing and reconciliation requirements.

This Amended Plan is being filed during a period that already exceeds the projection period provided in Exhibit 2.  Accordingly, the Debtor's Monthly Operating Reports ("MORs") may not fully reflect contemporaneous service volume for any single reporting period. The financial projections attached as Exhibit 2 reflect normalized operations and assume stabilized payment cycles consistent with historical experience in the industry.  For the period covered in Exhibit 2, the November and December 2025 MORs reflect increased transaction volume and operational activity relative to September 2025, consistent with the Debtor's transition from early-period volatility toward stabilized operations. To the extent reported revenues do not fully reflect this trend, such variance is attributable in part to delayed reimbursement cycles inherent in the Debtor's industry.  See ECF No.'s 298, 344, 346, and 374.

As part of the Plan, Debtor will continue to operate and generate income.  Over the course of the Plan, Debtor will use its projected disposable income to fund the Plan, along with accumulated cash. *See* Exhibit 2.

Debtor will make the Plan Payments, as set forth in Exhibit 4, to creditors, on a monthly or quarterly basis, depending on claim classification.

The Plan uses all available projected disposable income, plus the liquidation of personal property, and refinancing or sale of real property, to meet plan payment requirements.  The projections, in combination with the Disbursement Schedule set forth in Exhibit 4, demonstrate that the Plan is feasible

Chapter 11, Combined Chapter 11 Plan                                              R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                    Case # 8:25-bk-10631-SC

45

and that the funds necessary to make the Plan Payments required under the Plan will be available.

L.  Tax Consequences of Plan

Creditors and interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.  The following disclosure of tax consequences is intended solely to alert readers about tax issues the Plan may present to Debtor in the case.

Pursuant to 26 U.S.C. §108, amounts that are discharged in bankruptcy are not considered taxable income to the debtor.

Debtor makes no representations regarding the potential tax consequences to creditors and claimants in this bankruptcy case.  Debtor cannot and does not represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies complicated rules that make it difficult to discuss all the possible tax implications.  With that being said, the Plan does not liquidate real property, abandon real or personal property, or otherwise dispose of property of the estate that triggers tax liability.  There is no anticipated capital gain or net investment tax.  Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on either the principal's tax liability or that of the bankruptcy estate, other than as may result from the sale of real or personal property.  The tax consequences of such a sale are set forth in the Liquidation Analysis in Exhibit 8.

M.  Risk Factors

The Combined Plan and Disclosure Statement contain certain forward-looking statements and assumptions.  These forward-looking statements are subject to known and unknown risks and factors.  Uncertainties and other factors may cause results, performance, or achievements to be materially different from those expressed or implied by the forward-looking statements.

Factors that could cause actual results to differ materially from these forward-looking statements include, but are not limited to, the following general factors, such as: (i) there can be no assurance that Debtor's business activities will produce the gross revenue projected, (ii) there can be no assurance that the actual monthly income will continue at the amounts stated, (iii) the Plan may fail if the restaurant

Chapter 11, Combined Chapter 11 Plan                                          R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                    Case # 8:25-bk-10631-SC

fails or its operations fail to provide the necessary income to Debtor; (iv) Debtor may be unable to confirm and consummate the Chapter 11 plan of reorganization, (v) the risks associated with operating businesses under Chapter 11 protection, (vi) Debtor may be unable to implement and fund new business strategies based on current liquidity, (vii) Debtor's substantial debt and debt service requirements may restrict Debtor's operational and financial flexibility, (viii) there may be future litigation proceedings currently unknown to Debtor that could materially and adversely impact Debtor and its business, (vix) competitiveness of Debtor's business industries, (x) general economic conditions including the current economic downturn that are unforeseeable or impossible to predict both the length and depth of the impact on Debtor, (xi) the risk that the future disposable earnings of Debtor are less than anticipated, including the risk that business growth doesn't occur as projected, and therefore the net disposable monthly income may be insufficient to service the monthly payments to creditors, and (xii) licensing, insurance, or regulatory risks and uncertainties could affect Debtor's business revenue.

N.  Post-Confirmation Status Report

Within 180 days of the entry of the order confirming the Plan, Plan Proponents shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served upon all CM/ECF parties who requested notice.  No mailed copies will be sent absent specific requests on the docket by a creditor or claimant.  Further status reports shall be filed every 180 days.  The requirement will be waived or mooted if the case is closed on an interim or final basis.

//

//

//

Chapter 11, Combined Chapter 11 Plan                                          R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                                    Case # 8:25-bk-10631-SC

O.  <u>Final Decree</u>

Once the Plan has been substantially consummated, the Debtor may file a motion with the Court for an interim or final order or decree to close the case.  Once the Debtor fulfills her obligations under the Plan, she may then file a motion to reopen the case and seek entry of a discharge order.

Dated: ~~September~~ March ~~5~~18, 202~~5~~6                Respectfully Submitted,

DIMARCO WARSHAW, APLC

/s/ Andy C. Warshaw
Andy C. Warshaw, Esq.
Attorneys for Debtor in Possession

Date: _____

_____
**Ryan Morris**, Responsible Individual for
**R2 Marketing and Consulting, LLC**,
Debtor in Possession

Chapter 11, Combined Chapter 11 Plan                    R2 Marketing and Consulting, LLC
of Reorganization and Disclosure Statement                    Case # 8:25-bk-10631-SC

48